UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| Ryan Gould,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Bethany Guerriero and Joseph Strzelecki, each individually,<br><br>　　　　Defendants. | Case No.<br><br>Jury Trial Demanded<br>Fed. R. Civ. P. 38(b) |

# COMPLAINT

For his Complaint, Plaintiff Ryan Gould ("Gould") states and alleges as follows:

## PARTIES, VENUE, AND JURISDICTION

1. This is an action for damages for injuries suffered by Plaintiff Ryan Gould caused by the defendants' conduct in violation of Gould's civil rights under the United States Constitution and Florida law.

2. Plaintiff Ryan Gould is a resident of Illinois.

3. Defendant Bethany Guerriero ("Guerriero") is, upon information and belief, a citizen of Florida. Guerriero served as a Palm Beach Gardens police officer on May 9, 2023. The Palm Beach Gardens Police Department is an agency of the City of Palm Beach Gardens. Guerriero acted under color of state law at all material times. She is sued in her individual capacity.

1

4.      Defendant Joseph Strzelecki ("Strzelecki") is, upon information and belief, a citizen of Florida. Strzelecki served as a Palm Beach Gardens police officer on May 9, 2023. Strzelecki acted under color of state law at all material times. He is sued in his individual capacity.

5.      Gould brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

6.      The events giving rise to this action occurred in Palm Beach Gardens, Florida. Venue is proper under 28 U.S.C. § 1391(b)(2).

7.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state-law claims alleged herein.

8.      All conditions precedent to the filing of this action have occurred, accrued, or have been waived.

9.      Specifically, Gould has timely complied with all applicable presuit notice provisions of section 768.28, Florida Statutes.

10.     Gould has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## FACTUAL ALLEGATIONS

11.     On May 9, 2023, Gould went for a swim at the communal pool at his apartment complex.

12. While swimming, a dispute arose between Gould and another swimmer. The other swimmer's husband eventually confronted Gould. The husband presented a firearm, putting Gould into fear.

13. Gould called 911 to have law enforcement intervene and protect his safety.

14. Officer Valerio of the Palm Beach Gardens Police Department was the first to arrive. Officer Valerio easily identified Gould as the 911 caller who was unarmed.

15. At the time, Gould was in a bathing suit with no shirt on. Gould did not have any place to conceal a weapon from an officer's perception.

16. Officer Valerio left Gould in the parking lot and went to talk to the other parties. According to a written sworn statement he made on May 9, 2023 in a probable cause affidavit, Officer Valerio informed the defendants over the radio of the information he learned from speaking to Gould and that he was going to speak to the other individuals.

17. The defendant officers were the next to arrive.

18. As the defendant officers exited their vehicles, Gould was using his cell phone, which he then placed in a pocket in his swimsuit. This conduct was visible to Defendant Guerriero.

19. Defendant Guerriero asked how Gould was doing and asked him to keep his hands out of his pockets.

20. Gould replied that he was not the person with the gun.

21. Gould grabbed his cell phone and then held his arms wide out.

22. Defendant Guerriero told Gould to put his phone down.

3

23. Gould's hands remained visible, and it was clear that Gould did not have any weapons on his person.

24. Defendant Guerriero's tone of voice escalated and she drew her gun on Gould.



25. Before Defendant Guerriero drew her weapon, multiple seconds had elapsed from the moment that Gould grabbed his cell phone from his bathing suit. Gould had complied with commands, and it was clear that he did not possess a weapon.

26. Defendant Strzelecki drew his taser and aimed it at Gould.

27. Defendant Guerriero ordered Gould onto the pavement at gunpoint.

28. Gould complied and put his hands out to his sides.

29. The defendants held their weapons on Gould despite Gould complying with commands and keeping his hands visible while he got on the ground.

30. It was a warm day, and Gould was shirtless. He was forced to lie on the hot pavement at gunpoint.

31. The defendants observed that there was no safety threat justifying use of force and neither defendant intervened to stop the other's unjustified use of force.

32. Defendant Guerriero put her gun away and handcuffed Gould's hands behind his back.

33. Throughout the encounter, Defendant Guerriero spoke angrily and disrespectfully to Gould, including telling Gould to shut his mouth when Gould objected to how he was being treated.

34. Defendant Guerriero mocked Gould's toenail coloring and personally insulted Gould during the encounter.

35. Throughout the encounter, Gould tried to get up from the hot pavement. The defendant officers refused to permit Gould to get up from the pavement.

36. Gould suffered physical pain and mental anguish due to the stop, seizure, and arrest by the defendants.

37. Other officers came and observed that Gould was in handcuffs. The other officers asked the defendant officers why Gould was arrested.

38. Defendant Guerriero falsely claimed that the arrest was justified due to Gould's actions. Specifically, she claimed that Gould repeatedly put his hands in his pockets several times, produced his phone in a manner intended to incite the officers, and refused to comply with instructions. These claims were false.

39. Defendant Strzelecki had observed Gould's actions and saw that Gould was in handcuffs. Defendant Strzelecki failed to end the unjustified arrest or correct Defendant Guerriero's false claims.

40. In a disciplinary investigation following the incident, Defendant Strzelecki admitted that Gould gave officers no basis to believe that Gould was armed or presented a safety threat. Defendant Strzelecki admitted that Gould only had a bathing suit on and there were no impressions or outlines in the bathing suit suggesting that Gould was carrying a weapon.

41. Following Gould's arrest, Defendant Guerriero complained of health issues and left the scene.

42. Defendant Strzelecki initially did not provide a basis to support the arrest of Gould. Eventually, however, he signed a document supporting the arrest of Gould based on Defendant Guerriero's false statements. Defendant Strzelecki was present during the incident and knew that the claims were false.

43. Defendant Strzelecki continued with the arrest of Gould. Defendant Strzelecki did so despite not having probable cause that Gould committed a crime.

44. Defendant Strzelecki transported Gould in custody to the jail.

45. Other officers found Defendant Guerriero's demeanor disconcerting. They noted that her description of the incident with Gould did not make sense. Officers suspected something was awry and reviewed surveillance video of the encounter.

46. After reviewing video, other officers confirmed that Defendant Guerriero's claims were false and that Gould did not engage in any criminal activity justifying his arrest.

47. Gould arrived at the jail and stood in line waiting to be processed. Other arrestees commented on Gould's appearance as he was wearing only a bathing suit. Gould was uncomfortable and stigmatized by the process.

48. Moments before Gould was to be processed, an officer released Gould and said that he would not be charged.

49. Following the incident, Defendant Guerriero was investigated following a disciplinary complaint. The complaint was sustained and Defendant Guerriero's employment was terminated due to her actions.

50. Since the incident, Gould has had increased anxiety and fear. He no longer uses the pool and generally avoids public outings. He relocated from Florida to Illinois in part due to the incident. He has experienced continuing mental anguish in addition to the physical pain endured during the incident.

## CAUSES OF ACTION

### Count 1 – 42 U.S.C. § 1983 – Fourth Amendment Violations

51. The allegations in paragraphs 1 through 50 are restated and incorporated as though fully set forth herein.

52. The defendants acted under color of state law while performing the acts described herein.

53. The defendants deprived the plaintiff of his Fourth and Fourteenth Amendment rights through the actions described herein.

54. The defendants conducted a stop and seizure of Gould in an unreasonable manner.

55. The defendants seized Gould without legal basis.

56. The defendants used excessive force including, but not limited to, the brandishing of weapons and use of handcuffs on Gould.

57. The defendants conducted an unjustified arrest of Gould.

58. The defendants made false claims to support the improper arrest of Gould.

59. In addition, Defendant Strzelecki knew that Defendant Guerriero had no probable cause or lawful basis to seize, arrest, or use any force against Gould, yet he failed or refused to intervene.

60. The defendants' actions violated constitutional rights that were clearly established on May 9, 2023.

61. As direct and proximate result of the acts of the defendants, the plaintiff suffered injuries and other harms that entitle him to damages.

62. The defendants acted with evil intent or reckless indifference to Gould's rights.

63. The defendants subjected Gould to these deprivations of rights in such a manner as to render the defendants liable for punitive damages, which are necessary to deter further improper conduct.

64. Gould is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 2 – False Arrest/False Imprisonment Under Florida Law

65. The allegations in paragraphs 1 through 50 are restated and incorporated as though fully set forth herein.

66. At all times material, the defendants were law enforcement officers acting under color of state law.

67. Florida law protects a person from the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty.

68. The defendants unlawfully detained Gould and deprived him of his liberty.

69. The defendants unlawfully detained Gould against his will.

70. The defendants unlawfully detained Gould without legal authority or "color of authority."

71. The defendants detained Gould without legal basis.

72. The detention of Gould was unreasonable and unwarranted under the circumstances.

73. The defendants acted with ill will, hatred, spite, and evil intent to arrest Gould without a warrant or probable cause.

74. A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

75. The defendants knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

76. As a direct and proximate result of defendants' unlawful arrest in violation of Florida law, Gould suffered mental and physical injuries and special damages.

77. These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this violation.

78. As a direct and proximate result of the acts of the defendants, the plaintiff suffered injuries and other harms that entitle him to damages in amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment as follows:

1. For money damages, including compensatory and punitive damages, against the defendants jointly and severally in an amount to be determined at trial;

2. Prejudgment interest, costs, and attorney's fees; and

3. For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 10, 2024.

                        Respectfully submitted,

                        **James M. Slater**
                        James M. Slater (FBN 111779)
                        SLATER LEGAL PLLC
                        113 S. Monroe Street
                        Tallahassee, Florida 32301
                        james@slater.legal
                        Tel. (305) 523-9023

                        *Attorneys for Plaintiff*