UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80022-DMM

Ryan Gould,

    Plaintiff,

v.

Bethany Guerriero, *et ano.*,

    Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BETHANY GUERRIERO'S MOTION TO DISMISS**

Plaintiff Ryan Gould ("Gould"), through his undersigned counsel, files this response in opposition to Defendant Bethany Guerriero's ("Guerriero") Motion to Dismiss the Complaint. (Doc. 15.) As grounds, Plaintiff states:

**INTRODUCTION**

In May 2023, Gould faced a scary situation: while trying to swim at his residential complex, the husband of another swimmer brandished a gun toward Gould in a threatening manner. Gould called the police to protect him and resolve the situation. However, when the defendants arrived, they engaged in similar conduct—brandishing a gun and taser toward Gould—and arrested Gould based on fabricated obstruction claims.

Defendant Bethany Guerriero brings a motion to dismiss based on arguments that she is entitled to qualified immunity and Gould failed to plead his claims adequately. Because Guerriero violated Gould's clearly-established Fourth Amendment rights by holding him at gunpoint and effecting an unlawful arrest, Guerriero's motion to dismiss the claims based on qualified immunity

should be denied. Guerreiero's motion to dismiss based on inadequate pleadings should similarly be denied. Gould's Complaint specifically identified the conduct at issue, attributed each action to the appropriate officer, and stated claims based on discrete legal bases. Guerriero has sufficient notice of the allegations and claims as required by the Federal Rules, and her request to dismiss the pleadings based on lack of adequate notice should be denied. Finally, because no jurisdictional amount in controversy is required for this Court to exercise jurisdiction over the claims, Guerriero's third basis for dismissal should be denied, which relies on Florida circuit court jurisdictional requirements.

## FACTUAL ALLEGATIONS

On May 9, 2023, Gould went for a swim at the communal pool at the apartment complex where he lived. (Doc. 1, Compl. ¶ 11.) While he was swimming, another person started a dispute that escalated to her husband arriving and brandishing a gun at Gould. (*Id*. at ¶ 12.) Gould was frightened and call law enforcement to intervene and deescalate the situation. (*Id*. at ¶ 13.) One officer arrived, talked to Gould, and then went to another area to talk to the others. (*Id*. at ¶¶ 14, 16.) That officer had no issue identifying that Gould was the one who called law enforcement and was unarmed. (*Id*. at ¶¶ 14-15.) Gould was wearing only a bathing suit without any place to conceal a firearm. (*Id*. at ¶ 15.)

The defendants arrived shortly after the initial encounter. (*Id*. at ¶ 17.) The defendants knew what the first officer had learned from speaking to Gould. (*Id.* at ¶ 16.) When the defendants pulled up, Gould was using a cell phone, which he put into his swimsuit pocket. (*Id*. at ¶ 18.) Guerriero asked Gould to keep his hands out of his pockets. (*Id*. at ¶ 19.) Gould told Guerriero that he was not the person with the gun. (*Id*. at ¶ 20.) Gould grabbed his cell phone from his swimsuit pocket and then held his arms out wide. (*Id*. at ¶ 21.) Guerriero told Gould to put his cell phone down.

2

(*Id*. at ¶ 22.) Gould kept his hands visible to the defendants. (*Id*. at ¶ 23.) With his arms out wide and wearing only a swimsuit, Gould could not have concealed a weapon on his person. (*Id*.)

At this point, Guerriero drew her gun and pointed it at Gould. (*Id*. at ¶ 24.) Strzelecki drew his taser and aimed it at Gould. (*Id*. at ¶ 26.) Guerriero ordered Gould to the pavement at gunpoint. (*Id*. at ¶ 27.) Gould complied. (*Id*. at ¶ 28.) The officers continued pointing their weapons at Gould. (*Id*. at ¶ 29.)

Later in the encounter, the defendants falsely claimed that Gould repeatedly put his hands in his pockets, incited officers, and repeatedly refused to comply with instructions. (*Id*. at ¶ 38.) The defendants' false assertions caused Gould to be unjustly arrested. (*Id*. at ¶ 38-40, 42-44.) Other officers found Guerriero's demeanor concerning and reviewed recordings of the situation. (*Id*. at ¶ 45.) After reviewing recordings, other officers determined that the claims supporting Gould's arrest were false. (*Id*. at ¶ 46.) Once the false statements were revealed, Gould was released from custody. (*Id* at ¶ 48.)

**LEGAL STANDARD**

At the pleading stage, a plaintiff need only provide a "short and plain" statement setting forth claims for relief. Fed. R. Civ. P. 8(a)(2). A pleading survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). When considering a defendant's motion to dismiss, a court must take all facts stated in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citation omitted). This threshold "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna*

*Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 679). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil rights claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

## ARGUMENT

Gould has sufficiently stated claims against Guerriero, and the defendant's motion to dismiss should be denied. First, Gould has asserted violations of his constitutional rights that were clearly established on the date of the incident. Second, Gould's allegations meet federal pleading standards and are sufficient to put Guerriero on notice of claims asserted against her. Third, no specific jurisdictional amount is required to be pleaded in this matter. For these reasons, Guerriero's motion is without legal basis and should be denied. Florida pleading rules of procedure do not apply in federal court, even to state claims heard on the basis of diversity or pendent jurisdiction. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015). In federal court, a plaintiff is not subject to heightened pleading standards— a plaintiff merely needs to abide by the "short and plain statement" requirement of the Federal Rules. *Id*.

### I. QUALIFIED IMMUNITY DOES NOT BAR GOULD'S CLAIMS AGAINST GUERRIERO.[1]

The Fourth Amendment protects a person from unreasonable searches and seizures, including the right to be free from excessive force by officers. *Graham v. Conner*, 490 U.S. 386, 394-95 (1989). The analysis of whether force is reasonable is an objective one, done from the perspective of a reasonable officer on the scene. *Id*. at 396. A court should consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Qualified immunity involves a two-part analysis: (1) that the plaintiff suffered violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct. *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019) (citation omitted). A right is clearly established when the government official had fair warning that conduct violated a constitutional right. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). A right may be clearly established in three ways: (1) plaintiffs can point to a similar case that was previously decided; (2) plaintiffs can point to a broad and clearly established principle that applies to the

---

[1] As a threshold issue, Gould asserts that qualified immunity should not apply as contrary to the plain text of the Ku Klux Klan Act of 1871, which was not properly transcribed into the U.S. Code, which itself is only prima facie evidence of the law. *See Sosa v. Martin Cnty*., Fla., 57 F.4th 1297, 1303 (11th Cir. 2023) (Jordan, J., concurring) ("If federal statutes are supposed to be interpreted according to ordinary public meaning and understanding at the time of enactment, and if § 1983 preserved common-law immunities existing at the time of its enactment, the qualified immunity doctrine we have today is regrettable. Hopefully one day soon the Supreme Court will see fit to correct it.") (citations omitted); *Rogers v. Jarrett*, 2023 WL 2706752, at *7 (5th Cir. Mar. 30, 2023) (Willett, J., concurring) ("All to say, the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act *expressly included such language*.") (emphasis in original), cert. denied sub nom. *Rogers v. Jarrett*, 2023 WL 6378558 (U.S. Oct. 2, 2023).

particular facts at issue; and (3) the conduct constitutes an obvious violation of rights. *Id.* (citing *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)).

### A. By pointing her gun at Gould, Guerriero violated Gould's clearly-established Fourth Amendment rights.

It was clearly established that an officer who "point[s] a gun at an unarmed civilian who objectively poses no threat to the officer or the public can certainly sustain a claim of excessive force." *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) (citing, *inter alia*, *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)). There is a robust consensus across circuits that an officer who brandishes a weapon at a bystander or compliant subject is objectively unreasonable under the *Graham* factors. *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *8-9 (W.D. Tex. Jan. 31, 2020) (denying qualified immunity based on collection of precedent clearly establishing that it is excessive force to brandish a gun at a compliant person).

Here, Gould presented no safety threat or resistance that would have justified Guerriero pointing her gun at him. *Cf. Courson v. McMillian*, 939 F.2d 1479, 1494–95 (11th Cir. 1991) (no Fourth Amendment violation for drawing "weapons when approaching and holding individuals for an investigatory stop . . . *when reasonably necessary for protecting an officer or maintaining order*.") (emphasis supplied). When she drew her gun, Gould's arms were out with just a cell phone in his hand. Gould pulling his cell phone out of his pocket, likewise, did not support Guerriero's use of force. Guerriero could have seen Gould put his cell phone into his pocket as officers approached. Gould was wearing only a swimsuit, that could not have surreptitiously concealed a weapon. Guerriero's first request for Gould to keep his hands out of his pockets occurred at approximately the same time that Gould was grabbing his phone. Guerriero saw Gould pull the cell phone out of his pocket and told Gould to put his phone down before drawing her weapon. At the time of Guerriero's use of force, drawing her weapon, Gould had his arms out,

nothing in his pockets, and had complied with further requests to keep his hands out of his pockets. Guerriero ordered Gould to the ground at gunpoint, which Gould did.

Throughout the encounter, Gould was compliant and presented *no* safety threat to Guerriero that would have justified drawing her weapon. With allegations and inferences construed in favor of Gould, Guerriero's actions constitute excessive force in violation of clearly-established law. *Simmons v. Bradshaw*, 879 F.3d 1157, 1163–64 (11th Cir. 2018). Guerriero has not met her burden, and, thus, her motion should be denied.

### B. Guerriero's conduct that caused the unlawful arrest of Gould violated Gould's clearly-established Fourth Amendment rights.

Guerriero unlawfully arrested Gould in violation of his Fourth Amendment rights. An unlawful arrest may be part of the same claim as excessive force. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006). An officer who lacks authority to arrest "does not have the right to use any degree of force in making the arrest." *Id*. at 1332. When unlawful force arises in the context of an unlawful arrest, the claims should be treated as one. *Id*. To effect an arrest, an officer requires at least arguable probable cause that a crime has been committed. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). An arrest without probable cause violates a person's Fourth Amendment rights. *Id*. It is unlawful for an officer to arrest someone merely because they are yelling, cursing, or criticizing an officer. *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1312 (S.D. Fla. 2020). Refusing officer commands that do not obstruct duties, such as refusing to leave an area, do not permit an arrest. *Id*.

Guerriero arrested Gould without lawful basis. Gould's conduct in no way obstructed law enforcement's operations. Guerriero appeared to know that the facts of the encounter did not justify an arrest, so she made false claims about Gould's conduct to justify the arrest to other officers. When officers saw the encounter on recordings, they immediately knew there was no basis for the

7

arrest. Guerriero did not have even arguable probable cause to arrest Gould. As such, the arrest itself was unlawful. Further, all force used during the arrest, such as holding Gould at gunpoint, violated Gould's clearly-established Fourth Amendment rights.

## II.     GOULD'S COMPLAINT DOES NOT CONSIST OF SHOTGUN PLEADINGS.

The Federal Rules require a plaintiff to make a "short and plain statement of the claim showing that the pleader is entitled to relief" in a complaint. Fed. R. Civ. P. 8(a)(2). A plaintiff must also "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Subsequent paragraphs may refer to earlier paragraphs if "doing so would promote clarity[.]" *Id*. Complaints that violate these rules are referred to as "shotgun pleadings." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

A dismissal for shotgun pleadings is appropriate only when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id*. at 1325 (internal quotation omitted) (emphasis in original). When counts are "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted[,]" no remedy is required, even in pleadings in which each count incorporates all prior factual allegations. *Id*.

When a plaintiff has engaged in shotgun pleadings, the appropriate remedy is to permit at least an initial opportunity to replead the matter to correct the issue. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Only when a plaintiff fails to take corrective action after being afforded opportunities to do so should the claims be dismissed with prejudice due to the issue. *Id*.

Here, Guerriero argues that the failure to separate Fourth Amendment violations of excessive force and unlawful arrest renders Count I to be a shotgun pleading. (Doc. 15, Guerriero

8

Mem. at 4.) As discussed above, Gould contends that excessive force occurred in the context of an unlawful arrest. Thus, his claim should be treated as a unified Fourth Amendment claim instead of separate counts. *Bashir*, 445 F.3d at 1331-32. Under *Bashir*, it would be improper to separate the claims, and, regardless, they are pleaded with sufficient clarity that Guerriero and the Court can discern the basis upon which Gould seeks relief.

Similarly, Count II is based on a single cause of action—Gould's unlawful arrest and detention. Florida courts recognize that "[f]alse arrest and false imprisonment are different labels for the same cause of action." *Weissman v. K-Mart Corp.*, 396 So.2d 1164, 1165 n.1 (Fla. 3d DCA 1981). In Count II Gould seeks a single basis of relief from a single set of facts, so a single count is appropriate. Indeed, duplicating the allegations and counts merely due to nomenclature would add burden and confusion to the pleadings, which is contrary to the purpose of the shotgun pleadings doctrine.

Finally, Guerriero argues that the inclusion of both defendants in the same counts constitutes shotgun pleadings. (Guerriero Mem. at 4-5.) Both defendants are included because both engaged in conduct that supports the claims. For example, both Guerriero and her co-defendant used unlawful force in the context of an unlawful arrest. (Compl. at ¶¶ 24, 26.) Both defendants provided a false basis for the arrest. (*Id*. at ¶¶ 38, 42.) Both defendants engaged in the unlawful arrest and imprisonment of Gould. (*Id*. at ¶¶ 32, 43-44.) Each allegation specifically identifies the officer and conduct at issue. The culmination of these allegations is that claims of Fourth Amendment violations and False Imprisonment/Arrest are asserted against *both* defendants. This is not a circumstance where disparate claims are asserted against other defendants who had no involvement. The factual allegations specifically identify each defendant's conduct. The co-defendants jointly contributed to the violations so they are both included in the counts. Guerriero

appears to seek that claims jointly raised against co-defendants be split and broken out in a duplicative and excessive manner. Such an approach would add additional confusion and burden in violation of the shotgun pleadings doctrine. Thus, the relief requested by Guerriero should be denied. In the alternative, Gould must be afforded an opportunity to correct any deficiencies by amending his pleadings.

    **III.    GOULD WAS NOT REQUIRED TO ALLEGE AN AMOUNT TO ESTABLISH JURISDICTION OF FLORIDA CIRCUIT COURTS.**

Guerriero appears to take issue that Gould did not plead a jurisdictional amount sufficient to establish jurisdiction of Florida circuit courts. (Guerriero Mem. at 5.) This matter is not brought in a Florida circuit court, and whether such a circuit court has jurisdiction based on Gould's federal complaint is immaterial in this matter. Gould's claims may be heard in this Court pursuant to federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331 and 1367. Neither federal statute requires a plaintiff to establish an amount in controversy to obtain jurisdiction of this Court for the claims asserted. Thus, Guerriero's argument regarding the amount in controversy should be summarily rejected.

## CONCLUSION

Gould has adequately stated claims against Guerriero in a complaint that satisfies federal rules. This Court has jurisdiction to hear the claims asserted. Accordingly, Guerriero's motion should be denied in its entirety.

Dated: March 4, 2024.　　　　　　　　　　　　　　　Respectfully submitted,

                                                            */s/ James M. Slater*
                                                            James M. Slater (FBN 111779)
                                                           Slater Legal PLLC
                                                           113 S. Monroe Street
                                                           Tallahassee, Florida 32301
                                                          Tel. (305) 523-9023
                                                          james@slater.legal

/s/ Eric Rice
Eric Rice (admitted *pro hac vice*)
Law Office of Eric A. Rice LLC
1 West Water Street, Suite 275
St. Paul, Minnesota 55107
Tel.: (651) 998-9660
eric@ricedefense.com

*Attorneys for Plaintiff*