UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80022-DMM

RYAN GOULD,

    Plaintiff,

vs.

BETHANY GUERRIERO, and
JOSEPH STRZELECKI,

    Defendants.
_____/

## DEFENDANT, JOSEPH STRZELECKI'S MOTION FOR SUMMARY JUDGMENT

Defendant, JOSEPH STRZELECKI, by and through undersigned counsel, pursuant to Rule 56, *Fed.R.Civ.P.* and Local Rule 56.1, *S.D.Fla.L.R.*, moves for the entry of summary judgment, and states in support as follows:

### *Introduction*

1. This is a civil rights action arising out of Plaintiff's brief arrest by Palm Beach Gardens police officer Bethany Guerriero on May 9, 2023. This movant, Joseph Strzelecki, was serving as a backup officer to Officer Guerriero for the very beginning of the encounter with Plaintiff, but departed from the location (where Guerriero had detained Gould) a mere 90 seconds after the detention. Gould was later arrested. It is undisputed, and indeed captured on body worn camera video that Officer Strzelecki left to investigate the underlying incident that led to the police response – a dispute involving brandishing of a firearm – 90 seconds after Gould's detention.

2. With respect to Plaintiff's federal claims brought pursuant to 42 U.S.C. §1983, the undisputed record evidence demonstrates that Officer Strzelecki's interaction was so fleeting and so minimal that Plaintiff cannot possibly support the notion that Strzelecki violated his civil rights

by virtue of his minute and a half presence. Strzelecki did not make any arrest or detention decisions, and certainly did not violate any clearly established rights, thus entitling him to qualified immunity.

3. Plaintiff's state law claims fail as well. Since Strzelecki was not the detaining and/or arresting officer, the false arrest/imprisonment claim fails as a threshold matter. But even if Strzelecki's limited involvement could be deemed tortious, the evidence conclusively shows the absence of any conduct on Strzelecki's part that would overcome his presumptive entitlement to immunity under §768.28(9)(a), *Fla. Stat.*

4. Based upon this record, Strzelecki is entitled to summary judgment.

### *Legal Argument*

### I. STRZELECKI DID NOT VIOLATE GOULD'S CONSTITUTIONAL RIGHTS WITH RESPECT TO THE SUBJECT DETENTION.

**A. Strzelecki's 90-second Presence During Gould's Detention Did Not Rise to the Level of a Constitutional Violation.**

Officer Strzelecki's 90-second on scene interactions with Gould do not subject him to liability for an unreasonable seizure. As the record and video evidence demonstrates, Officer Strzelecki was one of three (3) officers that initially responded to a dispute between participants with a reported gun on scene. Since Gould and the other parties to the underlying dispute had summoned police via 911 calls, and Gould expressly stated that *he wanted police officers to respond* and that *he intended to file charge*s, the initial encounter was one desired and requested by Plaintiff himself. That police response was the result of a high priority police call involving the display of a deadly weapon, a firearm.

Gould arrived with a senior officer, Bethany Guerriero, who directed Plaintiff to keep his hands out of his pockets at least once, and reasonably perceived to be twice where she forcefully

exclaimed the second time, "keep your hands out of your pockets!." From an objective standpoint of an officer in Strzelecki's position, observing these events as they unfolded, Gould was plainly defiant, and elected to place his hand in his pocket after being directed by an officer not to do so. Undeniably Guerriero's request was a reasonable one where the police were informed of a gun on scene. Gould then refused two commands to put his phone down. It was then that Officer Guerriero detained Plaintiff, ordered him to the ground, and handcuffed him, with Officer Strzelecki serving as a backup.

It cannot be disputed that: (1) Plaintiff was on the scene of a call involving a gun; (2) Plaintiff was directly involved in the incident that led to the police being called; (3) based simply upon information from dispatch (which is taken exclusively from citizen callers that are often biased and inaccurate), the officers could not rule out that Plaintiff had a gun on his person or nearby; (4) Plaintiff disobeyed one and possibly two commands concerning reaching in his pocket; and (5) Plaintiff then became defiant and argumentative, and refused two directives to put his phone down. Officer Guerriero directing Plaintiff to the ground and handcuffing him, at this juncture, was an investigative detention in which she was bound to keep within the bounds of necessity to effectuate the purpose of the stop, and employ investigative methods reasonably available to verify or dispel the officer's suspicion. *Florida v. Royer*, 460 U.S. 491, 501 (1983). Importantly, simply because a gun was drawn and handcuffs utilized did not convert this into an arrest ***during the brief time Strzelecki was present***. *U.S. v. Collins*, 2023 WL 5013053, No. 5:23cr9-TKW (N.D. Fla., August 4, 2023), *Order Denying Motion to Compel and to Suppress* ("[A]n investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon [or] handcuffs a suspect." (citing, *U.S. v. Acosta*, 363 F.3d 1141, 1146-47 (11th Cir. 2004); *U.S. v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir. 1989)(use of handcuffs does not convert a

detention to an arrest). Nor does ordering a suspect to lie face down. *Courson v. McMillian*, 939 F.2d 1479, 1492-93 (11th Cir. 1991).

That all said, Strzelecki's actions vis-à-vis Plaintiff must be examined from the standpoint of the conduct he engaged in, without simply imputing the actions of Officer Guerriero to him. While present on a gun call, he observed a defiant individual place his hands in his pockets when told not to do so (arguably twice), and then commenced arguing with Officer Guerriero. Officer Guerriero withdrew her firearm. Strzelecki did not. He took out his Taser for less than 30 seconds to cover with less lethal given the senior officer's decision (based upon observations and vantage point, which was not the same as Strzelecki's) to display her firearm in the event that the subject engaged in conduct which would be worthy of restraining him, albeit without deadly force. Strzelecki provided backup cover for Guerriero and less-lethal options.

Under these unique factual circumstances, it cannot be said as a threshold matter that Officer Strzelecki's actions in backing up Officer Guerriero rose to the level of a constitutional violation against Gould since his actions did not seize, detain or arrest.

**B. Even if Strzelecki's Brief Involvement in Gould's Detention Implicated the Constitution, it was Based Upon Reasonable Suspicion.**

To the extent that Strzelecki's conduct in backing up Officer Guerriero (the officer who effected the detention, and withdrew her firearm) could be deemed a detention by Strzelecki, it was based upon reasonable suspicion. To detain a suspect, the Fourth Amendment requires "some level of objective justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984). Under *Terry v. Ohio*, "law enforcement officers may seize a suspect for a brief, investigatory ... stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.' " *U.S. v. Jordan*, 635 F.3d 1181, 1186 (11th Cir.

2011)(quoting *Terry,* 392 U.S. at 19–20, 30, 88 S.Ct. 1868). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (internal quotation marks omitted). Reasonable suspicion need not involve the observation of illegal conduct, but does require "more than just a hunch." *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir.1995) (citing *United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

Here, the reasonable suspicion to detain Gould stems from, first, the fact that he was on the scene of a gun call, disobeyed commands to keep his hands out of his pockets, and then became combative and argumentative with Officer Guerriero to the point where she detained him. The breadth of §843.02, *Fla. Stat.* is wide. It provides that it is a crime to interfere with the execution of any lawful duty by an officer. *"Whoever shall resist, obstruct or oppose any officer…in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree."* Florida courts have interpreted the crime of obstruction as having two elements: (1) "the officer was engaged in the lawful execution of a legal duty"; and (2) "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *Baxter v. Roberts*, 54 F.4th 1241, 1266 (11th Cir. 2022), citing, *C.E.L. v. State*, 24 So.3d 1181, 1185-86 (Fla. 2009). On these facts, both elements are met. Given the serious nature of the police call, in which Plaintiff was both a caller for a police investigation, and the subject of a call by others, Officer Guerriero's simple request that Plaintiff refrain from going into his pockets (while the location of the on scene weapon had not been determined) constituted the execution of a lawful duty, which Plaintiff obstructed by reaching into

his pocket. Giving a directive for on scene safety falls within executing a legal duty in furtherance of an investigation, and Plaintiff's defiance obstructed that end. *Blackmore v. City of Phoenix*, 126 F.App'x 778, 781-82 (9th Cir. 2005)(deputy justified in using takedown when he perceived other deputy had directed suspect to take his hand out of his pocket, and suspect did not comply); *Edwards v. State*, 253 Ga. App. 837 (Ct. App. Ga. 2002)(offense of obstruction committed where during a detention for questioning suspect failed to comply with officer safety request to take hands out of his pockets); *State v. Beltran*, 48 Kan. App. 857 (Ct. App. Ks. 2013)(an objectively reasonable law officer would have cause to believe crime of obstruction was committed where suspect refused orders to take hand out of his pocket; *State v. Hodges*, 531 N.W.2d 206, 211 (S.D. 2001)(individual's refusal to obey police commands to stop and place hands in sight provided probable cause to arrest for obstruction; *Tyson v. State*, 140 N.E. 3d 374, 378 (Ct. App. Ind. 2020)(obstruction found where suspect refused to take his hands out of his pockets).

Plaintiff, during his deposition testimony, has sought to exonerate himself from having violated §842.02, *Fla. Stat.* by claiming he did not hear or understand what he was being ordered to do, but the proper analysis requires that this court view the facts from the objective standpoint of the officer, not the subjective state of mind of Gould. *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005)(reasonable suspicion is assessed objectively from the standpoint of a reasonable officer on scene, not subjectively from the standpoint of the detained).

Here, again, taking all of the facts facing Strzelecki: he was summoned to a dispute with a gun on scene; Plaintiff in fact was one of the disputants; the on-scene gun had not yet been located; Plaintiff was directed to keep his hands out of his pockets for officer safety; and Plaintiff promptly placed his hands and kept them in his pocket when told by an officer not to do so. Following this, Plaintiff was argumentative, combative and defiant. In the case of Strzelecki, to the extent it can

even be said that he detained Plaintiff (as opposed to Guerriero who ordered Plaintiff to the ground at gunpoint and handcuffed him), Strzelecki's actions were clearly based upon reasonable suspicion to detain Plaintiff. At a minimum, he properly participated in the detention given that a fellow officer with significant police experience saw fit to do so.

### C. Strzelecki is Entitled to Qualified Immunity Based Upon the Lower Bar Threshold of Arguable Probable Cause.

Assuming *arguendo* that Strzelecki detained Gould (by virtue of his limited 90-second involvement) without reasonable suspicion, Strzelecki would still be entitled to judgment as a matter of law based upon his assertion of qualified immunity, and the lower bar threshold of arguable reasonable suspicion. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Dalryumple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2023)(quoting, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In cases involving detentions, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000); *Brent v. Ashley*, 247 F.3d 1294, 1303 (11th Cir. 2001).

The standard to be applied is **not** whether a reasonable officer faced with the same circumstances **would** have believed that reasonable suspicion existed, but merely whether a reasonable officer **could** have so believed. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Whether the officer's suspicion ends up being mistaken is immaterial so long as it was reasonable. *Id.* at 1304. In *Whittier v. Kobayashi*, 581 F.3d 1304 (11th Cir. 2009), the Eleventh Circuit afforded qualified immunity to officers in a fatal shooting case in significant part because the officers believed the suspect had access to a firearm. *Clark v. City of Atlanta, Ga.*, 544 Fed.Appx. 848, 854 (11th Cir. 2013) ("because the officers had arguable reasonable suspicion of possible criminal

activity, they were justified in coming onto the property with their guns drawn to make an investigatory stop in order to determine whether or not the Clarks were engaging in or about to engage in criminal activity"); *Irvin v. Richardson*, 20 F.4th 1199, 1205 (8th Cir. 2021)(officers dispatched to investigate an unlawful firearm display had arguable reasonable suspicion to detain and investigate suspects that arguably may have been involved in incident, even if neither matched the description of the male who displayed the gun).

Based upon the same facts and factors set forth above in Section 'B,' a reasonable officer in Strzelecki's position ***could have believed*** it reasonable to effect a brief investigatory detention of Plaintiff. It is of no consequence that Gould may have not matched the suspect called out over dispatch since, as Strzelecki has affirmed in his Declaration, dispatch is nothing more than information received from citizen callers that are often providing incorrect or biased information. Calls rarely turn out to be as dispatched. What is salient is that officers received a call regarding an argument with a gun on scene, and in fact Gould was one of the participants in the dispute. He had not been searched, or cleared for weapons, and when asked to keep his hands out of his pockets (twice), he went right for his pocket, and then began defiantly arguing with a senior officer, Guerriero, who was concerned about a weapon on scene. Strzelecki did nothing more than offer less-lethal cover by briefly taking out his Taser and backing up Guerriero, who seemed (based upon her vantage point) to have concern about Gould's actions. At an absolute minimum, Strzelecki's minimal involvement was based upon arguable reasonable suspicion.

## II.   STRZELECKI DID NOT UTILIZE CONSTITUTIONALLY IMPERMISSIBLE FORCE

### A. Brief Display of a Taser Does Not Implicate the Fourth Amendment.

As the body worn camera video on file with the Court demonstrates, Officer Guerriero withdrew her firearm and ordered Plaintiff to the ground. When she withdrew her deadly force

option, Strzelecki unholstered his Taser, a less-lethal option as per his training. *Strzelecki Dec.*, ¶¶39-43. The reason for doing so is that if Gould made any sudden or suspicious movements that could be addressed without resorting to deadly force, Strzelecki (not Guerriero) would have been able to address Gould without potentially killing him. *Id.* Gould apparently understood this on scene, and noted when speaking to another officer, "That's a massive responsibility you guys are walking around with…you know, at least the other guy [Strzelecki] pulled out his Taser." *Gould Depo.*, 77:19-25. Strzelecki did not touch Plaintiff, either with his person or Taser. The sum total of his force was unholstering his Taser and having it in a ready position for 23 seconds, until such time as Gould was restrained by Guerriero. *Strzelecki Dec.*, ¶43. Drawing and pointing a Taser does not constitute excessive force. *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(drawing and pointing a Taser not excessive force); *Policky v. City of Seward*, 433 F.Supp.2d 1013 (D. Neb. 2006)(same); *Howell v. Moore*, 2017 WL 9478511, n. 1 (E.D. Va. 2017)(string citations uniformly holding that merely pointing a Taser is not excessive force); *Stricker v. Town of Cambridge*, 710 F.3d 350, 364 (6th Cir. 2013)(pointing a Taser is not excessive force).

### B. Pointing a Taser, Without Physical Contact, Even if Deemed Force is De Minimis Force.

Even if pointing a Taser implicates the Fourth Amendment, it would necessarily fall within what the Eleventh Circuit has deemed de minimis force, which is not actionable. Strzelecki is thus entitled to judgment as a matter of law on the force claim. See, e.g., *Smith v. Secretary, Dep't of Corr.*, 524 F. App'x 511, 512-13 (11th Cir. 2013) (per curiam) (holding that officer who allegedly twisted a prisoner's arms upward in handcuffs while pressing the prisoner against the wall for some minutes used "no more than a de minimis use of force"); *Burke v. Bowns*, 653 F. App'x 683, 697 (11th Cir. 2016) (per curiam) (finding, inter alia, de minimis force where officer slammed the plaintiff face-first to the ground and pinned the plaintiff to the ground using an "arm bar"

hold); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1257, 1259 (11th Cir. 2000) (finding de minimis and not excessive force used by officer where the officer grabbed the plaintiff "from behind by the shoulder and wrist, threw the plaintiff against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him").

### C.  Strzelecki is Also Entitled to Qualified Immunity on the Force Claim.

In order to receive qualified immunity on a force claim, an officer "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting, *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Here, there is no question that Strzelecki was acting in his authority as an officer.  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* "To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). "First, the plaintiff must establish that the defendant violated a constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). Second, "the plaintiff must show that the violation was clearly established." Id. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Corbitt*, 929 F.3d at 1311 (quoting *Pearson*, 555 U.S. at 236).

Defendant has already demonstrated above that there was no underlying constitutional violation by Strzelecki with respect to the detention and use of force.  But even if unholstering and pointing a Taser could be deemed an underlying *Fourth Amendment* violation, Strzelecki would be entitled to qualified immunity since it was not clearly established that merely pointing a Taser

at someone constituted constitutionally excessive force. The defendant must have fair notice of his conduct's unconstitutionality, derived from one of the following sources: (1) "obvious clarity"; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not readily distinguishable. *Vinyard v. Wilson,* 311 F.3d, 1340, 1350–51 (11th Cir. 2002). "The critical inquiry is whether the law provided [the officer] with 'fair warning' that his conduct violated the [the plaintiff's rights]." *McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir. 2007). Moreover, only the "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." Id. at 1237.

In the absence of any binding precedent holding that actions equivalent pointing a Taser constitutes excessive force, Strzelecki must be afforded qualified immunity.

### III. STRZELECKI IS ENTITLED TO SUMMARY JUDGMENT ON THE ARREST CLAIM.

**A. Strzelecki Was Not the Arresting Officer.**

As the Declaration of Strzelecki and Statement of Facts filed herewith demonstrate, the arrest claim must be assessed against this highly unusual, and probably unprecedented fact pattern. Here, the officer that formulated probable cause and made the decision to arrest began experiencing cardiac symptoms on scene, and had to be taken away before she could complete her arrest. After departing from the location where Guerriero detained Plaintiff, a mere 90 seconds after the detention began*, Strzelecki did not see or again encounter Gould until Gould was already at the Palm Beach Gardens Police Department under arrest.* To be certain, and as confirmed by his body worn camera video, Plaintiff had only been detained, not arrested, as of Strzelecki's departure from the scene.

To establish §1983 liability, a plaintiff must prove an affirmative causal connection

between the officer and the alleged violation, which must include personal involvement in the challenged decision. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010); *Zatler v. Wainright*, 802 F.2d 397, 401 (11th Cir. 1986). That Strzelecki arrived with the arresting officer, and that Plaintiff was later told he was under arrest and arrested well after Strzelecki departed from the scene is simply not enough to impose affirmative causation on him. He played no role, and made no decisions to arrest Plaintiff. *Strzelecki Dec.*, ¶¶56-58. Notably, this is not some, after-the-fact, attorney-created theory developed because Strzelecki has been sued. Strzelecki contemporaneously noted in his report that this was Guerriero's probable cause, not his. *"Due to the facts above Ofc. Guerriero found probable cause to charge Mr. Gould with one count of resist officer without violence F.S.S. 842.02. Ofc. Guerriero was unable to complete the call and I was tasked with transporting Mr. Gould to the Palm Beach County Jail."* *Strzelecki Dec.*, ¶63; Appendix, Tab 2.

Clearly, Gould's arrest was by another officer, and there was nothing Strzelecki did that caused the arrest to take place. He just documented Guerriero's probable cause because she fell ill and became incapacitated, noting all long it was not his decision. Moreover, Strzelecki had no authority to unarrest or free Gould once Guerriero had arrested him. Only a sergeant or higher rank could do so. *Strzelecki Dec.*, ¶59.

**B. Arguable Probable Cause Existed to Arrest.**

Assuming it could be said that Strzelecki arrested Plaintiff (even though the undisputed evidence shows he was not present when the arrest decision was made) he would be entitled to qualified immunity, nonetheless. When an officer asserts qualified immunity in the arrest context, no liability exists unless there was an absence of arguable probable cause. Under this standard, the question becomes whether a reasonable officer in the same circumstances and possessing the

same knowledge merely "could have believed" that probable cause to existed to arrest. *Gates v. Khokar,* 884 F.3d 1290, 1298 (11th Cir. 2018). The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

As set forth in Section I(B) above, §843.02, *Fla. Stat.* is a very broad statutory provision, which criminalizes opposition to an officer while executing a lawful duty, without offering or doing violence. Given that investigating a gun crime for which all 3 disputants called 911 and summoned police, Strzelecki was engaged in a lawful duty. Then, the question becomes whether any reasonable officer merely ***could have*** believed that Strzelecki opposed their investigatory efforts through his continued obstinance and decision to defy Guerriero's request on two occasions that he not place his hands in his pocket . See, *Edwards v. State*, 253 Ga. App. 837 (Ct. App. Ga. 2002)(offense of obstruction committed where during a detention for questioning suspect failed to comply with officer safety request to take hands out of his pockets), and other cases set forth in Section I(B) above. A reasonable officer could have believed that Gould's actions interfered with the execution of a lawful duty.

There is no clearly established law in Florida that an individual who reaches for his pockets on a gun call, after being told not to do so by an on scene officer (arguably on two separate occasions here) cannot be deemed to have interfered with the officer's execution of a lawful duty. Consequently, even if Strzelecki is found to have been an arresting officer, he retains qualified immunity based upon arguable probable cause.

**IV STRZELECKI IS IMMUNE FROM SUIT PURSUANT TO §768.28(9)(a)**

Plaintiff names Strzelecki in Count II for False Arrest/Imprisonment. For all of the same reasons argued above, Strzelecki cannot be deemed to have falsely arrested or imprisoned Plaintiff. Succinctly stated, he was not the detaining officer. He was not the arresting officer. He had no authority to unarrest or override the arrest of a fellow officer once Gould was arrested since only a supervisor could do so. He was not even there when Guerriero decided to arrest Plaintiff.

But even taking all of the above aside, there is no evidence, whatsoever, that Strzelecki acted toward Gould in a manner that would deprive him of statutory immunity pursuant to §768.28(9)(a), *Fla. Stat.* Under this law, Strzelecki is immunized on the arrest/detention claim unless Plaintiff demonstrates that Strzelecki's detention and arrest of him were undertaken by Strzelecki in bad faith, malice or in a manner exhibit wanton and will disregard. The Eleventh Circuit has noted that Florida courts equate bad faith with the actual malice standard. *Gurrera v. Palm Beach County Sheriff's Office*, 657 Fed Appx. 886, 892 (11th Cir. 2016)(citing, *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So.2d 163, 167 (Fla. Dist. Ct. App. 1998). The standard has been interpreted as "conduct much more reprehensible than mere intentional conduct" and conduct worse than gross negligence. *Coleman v. Hillsborough County*, 41 F.4th 1319, 1325 (11th Cir. 2022)(granting summary judgment on an arrest claim where no reasonable jury could find that the officers acted with actual malice or wanton and willful disregard in arresting individual, even if they lacked probable cause).

Here, even if Strzelecki arrested Gould, and even if he lacked probable cause, it cannot be said he acted with actual malice toward Gould. Again, Strzelecki was only present for a brief snapshot of Gould's overall encounter with Guerriero (having left 90 seconds after the initial detention), never encountered Gould again until he had already been arrested by Guerriero, and

then only completed paperwork and transport because Guerriero fell ill, expressly noting in said paperwork that it was not his probable cause, but Guerriero's that led to the arrest. Frankly, this is not even close to the actual malice standard, and any assertion otherwise by Plaintiff is simply not in good faith, and stands in contrast to the Eleventh Circuit's high bar to overcome this state law immunity as explained in *Coleman.*

## VI  FAILURE TO INTERVENE

### A.  Plaintiff Has Not Sued Strzelecki for Failure to Intervene.

As a threshold matter, Defendant asserts that there is no existing claim against him for failure to intervene, which is a distinct recognized claim in certain circumstances. Count I, alleging Fourth Amendment violations set forth in paragraphs 52 through 64 makes no assertion of such a claim. It instead refers to a stop, a seizure, and use of force through brandishing of weapons and handcuffs. Defendant could not possibly interpret this count as asserting a distinct claim for failure to intervene. Defendant, Strzelecki, clearly urges that by including substantive argument on this claim below, ***he does not waive that the claim is not properly pled or before this Court*** and, in fact, the only reason for including any argument is that Plaintiff's counsel posed some deposition questions to Strzelecki that made it appear that ***counsel might amend*** to frame such a claim in the future, but did not. *Rollins v. City of Hollywood*, 2018 WL 1628990, No. 16-62127-Civ-Dimitrouleas, Omnibus Order (S.D. Fla., January 5, 2018)(recognizing a count and claim for failure to intervene, when properly pled and set forth as a separate count); *Peterson v. Brooks,* 2023 WL 2363700 (N.D. Ala., January 10, 2023)(citing, *Alston v. Swarbrick,* 954 F.3d 1312, 1321 (11th Cir. 2020)(recognizing failure to intervene is a distinct claim).

### B. Without Waiving That No Claim Exists, Strzelecki is Entitled to Summary Judgment on the Merits.

**1. False Arrest/Imprisonment.**

As Judge Altman explained in *Rebalko v. City of Coral Springs*, 552 F.Supp.3d 1285, 1318 (S.D. Fla. 2020), the Eleventh Circuit has recognized a duty to intervene in excessive force cases. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 2007)(failure to intervene in unprovoked beating). But the Eleventh Circuit has taken a "decidedly more circumscribed view with respect to an officer's duty to intervene *in a false arrest."* Id. (emphasis in original). In the false arrest context, the non-intervening officer must be "part of the chain of command authorizing the arrest action." *Id.* (citing *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2020). Also, the plaintiff must show that that the non-arresting officer: (1) was present during the arrest; (2) knew that the arresting officer had no reasonable basis or probable cause: and (3) was sufficiently involved in the arrest. *Wilkerson v. Seymour*, 735 F.3d 974, 979 (11th Cir. 2013).

Here, no basis exists to allow a failure to intervene in arrest claim against Strzelecki. Strzelecki was not present when the decision to arrest was made. Gould was placed under arrest and transported from the scene to the Palm Beach Gardens Police Department without any knowledge or involvement by Strzelecki. Strzelecki left Gould's presence 90 seconds after Gould had been detained, and well before any officer told Gould he was being placed under arrest. In fact, Strzelecki's first encounter with Gould after the initial 90 seconds was at the police station over an hour later. Where Plaintiff cannot meet any elements of the claim or otherwise show that Strzelecki had a "reasonable opportunity" to intervene in the arrest decision of another officer, the claim fails. *Rebalko*, 552 F.Supp.3d at 1319. Gould did not arrest, was not present during the arrest, and had no authority (as a rookie officer who was not charged with supervising Guerriero) to override her arrest decision. See also, *Tarpley v. Miami-Dade Cty.*, 212 F.Supp.3d 1273, 1285

(S.D. Fla. 2016)(non-arresting officer not liable for failure to intervene);

Any notion that Strzelecki participated in the arrest because he completed paperwork would fail on two fronts. First, because Strzelecki only completed paperwork due to the unusual factual circumstance of the arresting officer being physically incapacitated and, second, because Strzelecki clearly articulated in the paperwork that it was Guerriero's probable cause, not his, that led to the arrest. For these reasons, even if the Court were to find that a claim exists in this case for failure to intervene in arrest, it fails.

### 2. Excessive Force.

Again, without waiver that the issue is not framed by the pleadings, Strzelecki cannot be held liable for the failure to intervene in the use of force by Officer Guerriero. First, Officer Guerriero did not utilize constitutionally excessive force while taking Gould into custody. But even if she did, her use of force was brief and not of the severity where Strzelecki reasonably could have intervened, and changed her course of action. The cases where this claim has been recognized have involved prolonged use of force, where an officer reasonably could have done something to stop the other. *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). But an officer is not required to anticipate another's force, and must actually be in a position, from a factual standpoint, to have prevented the force being utilized. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008);

Here, Officer Guerriero drew her gun for 12 seconds, ordered Plaintiff to the ground and handcuffed him. *Strzelecki Dec.*, ¶36. As Strzelecki has explained, he had neither a reasonable opportunity and no authority to stop this conduct if it is deemed by this court to be misconduct. *Id.*, ¶¶36-37. It would not only have been unwise, but dangerous for Strzelecki to physically

interfere with an officer that had a loaded gun in her hand. *Id.* Nor did he have the authority or ability to compel Guerriero to place her weapon back in its holster for the 12 seconds it was out.

Any other force, such as a light push back to the ground, occurred too quickly for any opportunity to intervene, and would fall squarely within non-actionable de minimis force (as explained above) anyway. Thus, Plaintiff cannot support any claim (even if pled) for failure to intervene in excessive force.

### 3. Qualified Immunity.

Finally, Strzelecki is entitled to assert qualified immunity on a failure to intervene claim. Having done so, the burden shifts to Plaintiff to demonstrate that Strzelecki, under these facts, violated clearly established law by not intervening in a 12-second gun unholster, slight push when Gould tried to get up, or in the arrest/imprisonment. Strzelecki need not show the absence of clearly established law, but instead may merely invoke his qualified immunity, challenge Plaintiff to meet his burden, and address Plaintiff's contentions in his Reply Memorandum. Strzelecki hereby invokes his qualified immunity, shifting the burden to Gould.

Based upon the foregoing, Defendant, Joseph Strzelecki, moves for the entry of summary final judgment, both on the merits of each claim, and on the grounds of immunity, both qualified (federal) and statutory (state).

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 5th day of June, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

                                                JOHNSON, ANSELMO, MURDOCH,
                                                BURKE, PIPER & HOCHMAN, P.A.
                                                ***Attorneys for Defendant, Strzelecki***
                                                2455 East Sunrise Blvd., Suite 1000
                                                Fort Lauderdale, Florida 33304
                                                (954) 463-0100 - Telephone
                                                (954) 463-2444 – Facsimile
                                                Alexander@jambg.com
                                                Cintron@jambg.com Andrews@jambg.com

                                                */s/ Scott D. Alexander*
                                                SCOTT D. ALEXANDER
                                                FLA. BAR NO. 057207

**SERVICE LIST**

*Counsel for Plaintiff*
**James M. Slater, Esq. (111779)**
Slater Legal, PLLC
9000 Dadeland Blvd., Suite 1500
Miami, FL 33156
Tel: 305.523.9023
james@slater.legal
alicia@slater.legal

*Co-Counsel for Plaintiff*
**Eric A. Rice, Esq.**
**Law Office of Eric A. Rice, LLC.**
1 W. Water Street, Suite 275
St. Paul, MN 55107
Tel: 651.998.9660
Fax: 651.344.0763
eric@ricedefense.com

*Counsel for Defendant, Guerriero*
**Gregory J. Morse, Esq. (0505099)**
**R.E. "Rick" King, III, Esq. (90473)**
King Morse PLLC
2240 Palm Beach Lakes Blvd., Suite 300
West Palm Beach, FL 33409
Tel: 561.651.4145 / 561.557.1079
greg@morselegal.com
rick@kingmorselaw.com
kristen@kingmorselaw.com

*Counsel for Defendant, Strzelecki*
**SCOTT D. ALEXANDER, ESQ. (057207)**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
Tel: 954.463.0100
Fax: 954.463.2444
Alexander@jambg.com
Cintron@jambg.com  Andrews@jambg.com