UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

RYAN GOULD,

    Plaintiff,

v.

BETHANY GUERRIERO, *et ano.*,

    Defendants.

Case No. 9:24-cv-80022-DMM

**PLAINTIFF'S OPPOSING STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule 56 and Local Rule 56.1(a), Plaintiff Ryan Gould responds to Defendant Joseph Strzelecki's Statement of Undisputed Material Facts [ECF No. 32], as follows:

1. Undisputed.

2. Undisputed that Plaintiff did not file an internal complaint against Strzelecki; however, Plaintiff named Strzelecki as a defendant in this lawsuit for alleged misconduct and the absence of a citizen complaint is not relevant to the claims asserted against him.

3. Disputed as to the substance of the dispute on May 9, 2023. Plaintiff was swimming laps at a community pool and was asked by the woman—who he did not know was pregnant at the time—to "swim differently" and there was no argument. [ECF No. 32-4 at 81:20–83:1]. Plaintiff continued swimming and then the woman's husband arrived and lifted his shirt revealing a firearm in his waist area, causing him to leave the pool and call 911. [*Id.* at 155:3-22]. Disputed as to Strzelecki's characterizations of the 911 call audio recordings, which speak for themselves.

4. Undisputed.

5. Undisputed that Strzelecki received a dispatch about a dispute at the community pool at Sabal Ridge. Disputed as to the characterization of the dispatches. In addition, they stated that the woman's husband had a gun in a holster in his groin area, that he displayed it to the man in the pool, and that the man with the gun was about 5'2" tall, weighed about 120 lbs., and had a beard; the dispatches indicated that the male individual at the pool who was threatened by the brandishing of the gun was in a multicolored swimsuit. [*See* ECF No. 39-1 at 00:00-2:20 (conventionally filed radio dispatch)]; *see also* Transcript of Deposition of Joseph Strzelecki [ECF No. 38-1 at 25:15–33:10]; [ECF No. 39-3 (Event Report)].

6. Undisputed.

7. Disputed. Dispatch stated that the individual with the gun was with his wife and

1

was a 5'2" male who was approximately 120 lbs. Dispatch also stated that the other party, who had been threatened with the brandishing of the gun, was separated and was wearing a multicolor swimsuit. Strzelecki did not perceive a safety threat during his encounter with Gould and was able to determine that Gould was unarmed because Gould was wearing only a bathing suit with no bulges or other indications that he was carrying a firearm. [*See* ECF No. 39-1 at 00:00-2:20 (conventionally filed)]; *see also* Transcript of Deposition of Joseph Strzelecki [ECF No. 38-1 at 25:15–33:10]; *see also* [ECF No. 39-3 (Event Report)]. Plaintiff is 6'4" tall and weighs approximately 205 lbs. [ECF No. 39-4 at Interrogatory Response No. 1].

8. Undisputed that information relayed from dispatch is not the universe of information available to an officer on scene.

9. Strzelecki's assertions that information relayed by dispatch is "often incorrect" is speculative and unsupported and therefore no response is required. *See Acosta v. Campbell*, 309 F. App'x 315, 318 (11th Cir. 2009) (per curiam); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 (11th Cir. 2005). To the extent a response is required, disputed.

10. Strzelecki's assertions about the general motivations of 911 callers are speculative and unsupported and therefore no response is required. *See Acosta,* 309 F. App'x at 318. Otherwise, disputed that information is often inconsistent, callers are often interested in seeking to impugn one side and exonerate themselves, and that officers assign no credit to information relayed by callers/dispatch. Undisputed that an officer should investigate the facts surrounding a 911 call.

11. Undisputed that dispatch first relayed information from the armed person. [ECF No. 39-1]. Disputed that Strzelecki heard the 911 calls or knew who called first. Any assertions that conflict with the recording itself are disputed. Undisputed that officers are generally required to continue investigating on scene. Disputed that the information relayed to Strzelecki suggested

that Plaintiff—who was only in a bathing suit and did not match the armed person's description—was armed/required additional investigation beyond visual assessment that he did not match the description and did not display any indication that he was armed. [ECF No. 38-1 at 29:16–33:2].

12. No response is required because Strzelecki's statements are general statements unrelated to the specific incident that took place on May 9, 2023. Strzelecki stated that prior to arriving at Sabal Ridge he did "not recall if [he] heard everything clearly. But the information was there." [*Id.*]. Disputed that not hearing a call is "not typical or reasonable." Disputed that dispatch information is of little or no value to the officer in responding to a call.

13. Undisputed that Strzelecki had the information in the first sentence prior to arriving. Disputed that such information was the entirety of the information he had prior to arriving. [*See id.*]. Undisputed that it is speculative that Strzelecki would have known whether the person with the gun kept it in the holster in the groin area as relayed on the dispatch. *See* [ECF No. 39-1 at 1:00-2:20]; [ECF No. 39-3]. Disputed that the facts known to Strzelecki at arrival would have supported the belief that Plaintiff possessed a firearm. [ECF No. 38-1 at 29:16–33:2; 133:6-9]; [ECF No. 39-2 (conventionally filed surveillance footage)].

14. Strzelecki's assertions about how other dispatch calls have concluded have no bearing on the events, including what occurred when Strzelecki arrived, where he believed Plaintiff possessed no threat [*Id.* at 133:6-9], therefore no response is required. *See Acosta,* 309 F. App'x at 318; *Wiand*, 2014 WL 1819616, at *3. To the extent a response is required, it is disputed that most calls Strzelecki has responded to have turned out differently from information provided by dispatch, that information provided about who possessed the firearm was different from what Strzelecki knew prior to and upon arriving at the scene, and that the information from dispatch provided to Strzelecki differed from circumstances on the scene. Undisputed that one goal in

3

arriving to the scene was to ensure that the person with the firearm could not use it. Disputed that Strzelecki believed or had a basis to believe that Plaintiff potentially possessed a firearm.

15. Undisputed.

16. Undisputed that the bodyworn camera footage provided to the Court depicts Guerriero speaking to Plaintiff. Disputed as to Strzelecki's characterizations of Guerriero's tone.

17. Disputed that Guerriero's statement "how are you doing, keep your hands out of your pockets for me" was conveyed as a directive. [ECF No. 38-1 at 98:15-21]. Disputed that officers had legal authority to command Plaintiff to keep his hands out of his pockets at the initial encounter. Disputed that officers perceived a safety threat from Plaintiff. [*Id.* at 133:6-9]. Disputed that Guerriero made the initial statement as a directive rather than a "friendly ask." [ECF No. 32-5 at 57:10-13, 58:19-59:1]. Disputed that Guerriero's statement was heard by Plaintiff. [ECF No. 32-4 at 83:3-10]. Disputed that Strzelecki believed Plaintiff was concealing a firearm in his bathing suit or on his body irrespective of the fact that firearms may be small and concealed in various places. [ECF No. 38-1 at 70:13-24]. Strzelecki's declaration [ECF No. 32-1 ¶¶ 19–20] should be disregarded here because it contradicts his clear, unambiguous answers in his deposition testimony. *Nguyen v. Biondo*, 508 Fed.Appx. 932, 936 (11th Cir. 2013) (citations omitted).

18. Undisputed that Plaintiff stated he did not have a gun. Disputed by the video evidence that Plaintiff "came closer to the police" at that time. [ECF 39-2 (conventionally filed surveillance footage)]. Disputed that Strzelecki (or Guerriero) believed that Plaintiff possessed a firearm. [ECF No. 38-1 at 70:13-24]; [ECF No. 32-5 at 91:20–92:6]. Undisputed that Plaintiff had not been physically searched at that time. Undisputed that the events would not have caused Strzelecki to believe that he was in fear for his safety.

19. Undisputed that Plaintiff placed his hand in his pocket. Disputed that Plaintiff heard

any command/request to keep his hands out of his pockets at that time. [ECF No. 32-4 at 83:3-10]. Disputed that Guerriero's first statement was a command. [ECF No. 38-1 at 98:15-21].

20. Disputed as to Strzelecki's characterizations of the video footage. Disputed as to Strzelecki's characterization of Plaintiff's testimony by using the word "now" to convey that Plaintiff's testimony is in any way inconsistent, inaccurate, or changed. Disputed that Strzelecki could not consider whether Guerriero's first statement was not heard by Plaintiff or that Plaintiff treated it as a consensual request that was not followed. Disputed that Guerriero's first statement was clear and audible to Plaintiff or that an officer could not consider whether Plaintiff did not hear the first statement. [ECF No. 38-1 at 98:15-21].

21. Undisputed that the video footage depicts Guerriero's second request or command as occurring after Plaintiff began placing his hand in his pocket. [*Id.* at 112:3-16]. As to Strzelecki's perceptions, disputed to the extent contradicted by the video footage. Disputed that Strzelecki reasonably perceived Plaintiff reaching into his pocket after the second statement. Strzelecki testified that his report may have not been accurate as to how many commands Plaintiff allegedly defied. [*Id.* at 118:3–119:20].

22. Disputed that Plaintiff was told to take his hand out of his pocket without anything in his hand. [*Id.* at 50:16-25; 53:2-6; 55:2-10]. Disputed that Strzelecki believed that Plaintiff pulling out his cell phone constituted a safety threat to him or Guerriero. [*Id.* at 55:2-10]. Disputed that Plaintiff had a legal responsibility or other obligation at this time.

23. Undisputed.

24. Strzelecki's statements are speculative and no response is required to his question as to why Plaintiff would have pulled out his phone. As to why, Strzelecki answers that question in the footnote to this paragraph, though it is undisputed that Strzelecki would not have known

5

Plaintiff's specific motivation for taking his phone out of his pocket. Disputed that Plaintiff pulled out his phone after two requests to keep his hands out of his pockets. Disputed that it would be unusual for someone to take a phone out of their pocket during an encounter with officers.

25. Disputed as to Strzelecki's characterization of the video footage.

26. Undisputed that Strzelecki believed that Plaintiff was involved in the incident precipitating the 911 calls, but disputed that Strzelecki believed Plaintiff was the individual with the firearm such that it was reasonable for Guerriero to order him to remove his hands from his pockets or subsequently point her firearm at him. [ECF No. 38-1 at 29:16–33:2; 133:6-9]; [ECF No. 29 (conventionally filed bodyworn camera footage). Strzelecki's statements as to whether telling someone to remove their hands from their pockets intrudes on their freedom is his own conjecture and no response is required. Disputed that Plaintiff would have approached and spoken with officers as easily without his phone or after having been commanded to keep his hands out of his pockets. Undisputed that the officers came to Plaintiff in part due at Plaintiff's request.

27. Undisputed that Guerriero was the senior officer on scene and was taking the lead. Undisputed that Strzelecki was taking cues from Guerriero but disputed that any of those facts would affect or diminish Strzelecki's obligations or duties. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007); *Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013).

28. Undisputed. However, Strzelecki's role as backup did not diminish his obligations.

29. Undisputed that four statements were made by Guerriero on scene to Plaintiff. Disputed as to whether "all four were not complied with"; the video footage speaks for itself.

30. Undisputed that Guerriero testified that she had a basis to draw her firearm, order Plaintiff to the ground, and detain him. Disputed that any such basis existed. [ECF No. 38-1 at 29:16–33:2; 55:2-10; 133:6-9]; [ECF No. 29].

31. Undisputed that Guerriero had more training and experience than Strzelecki at the time. Disputed that Strzelecki could not observe what Guerriero was observing. [ECF No. 29]. Disputed that Strzelecki could not question Guerriero's observations. [ECF No. 38-1 at 55:2-10]. Disputed that Strzelecki was relieved of any responsibility to prevent the use of unlawful force by another officer due to Guerriero's training and experience and position during the encounter.

32. Disputed as to Strzelecki's characterization of the events and Plaintiff's behavior/demeanor. The video footage speaks for itself. Disputed that Strzelecki could not have reasonably intervened. [*Id.* at 74:18–75:6]. Undisputed that he would not have intervened.

33. Disputed. The law requires officers to intervene to stop unlawful use of force and acts, including arrest and detention. *Velazquez*, 484 F.3d at 1341; *Wilkerson*, 736 F.3d at 979. Whether Strzelecki perceived his obligations under the law as imprudent is not relevant to whether he had a duty. [ECF No. 38-1 at 74:18–75:6]. Disputed/legal argument that the period in which Guerriero had her gun drawn was too short to intervene.

34. Undisputed as to the first sentence to the extent it accurately reflects the video footage. Disputed that Strzelecki was unaware of possible methods to intervene to deescalate the encounter or cause Guerriero to stop aiming her gun at Plaintiff. Disputed as to whether Strzelecki could have intervened to stop Guerriero's actions. [*Id.* at 74:18–75:6].

35. No response is required to the first sentence because it is a legal conclusion as to an officer's obligation to intervene to prevent unlawful force or arrest. *Velazquez*, 484 F.3d at 1341; *Wilkerson*, 736 F.3d at 979. To the extent a response is required, disputed. [ECF No. 32-5 at 28:19–29:14]; [ECF No. 38-1 at 16:24–17:9]. No response is required to the second sentence because it is mere speculation as to what Guerriero would/could have done if Strzelecki intervened. To the extent a response is required, disputed. [ECF No. 32-5 at 154:1-5 (Guerriero having to

7

intervene to "calm a situation down before human emotions completely took over, . . .")].

36. Disputed as to Strzelecki's characterizations of the video footage or that he could not fully observe Plaintiff. Disputed that Strzelecki had any basis to believe Plaintiff was a threat or possessed a firearm. [ECF No. 38-1 at 70:13-24; 133:6-9]. Disputed that Strzelecki believed Guerriero could see a potential threat that he could not as contradicted by the video evidence.

37. No response is required regarding how Tasers are designed or the degree to which they inflict injury because those are unsupported conclusions. Disputed that Strzelecki should have covered Guerriero if the circumstances were not reasonable [ECF No. 38-1 at 65:18-66:17].

38. Disputed as to Strzelecki's characterizations of the video footage. Disputed that Plaintiff "commended" Strzelecki drawing his Taser; the footage speaks for itself.

39. Undisputed.

40. Undisputed.

41. The video footage speaks for itself as to how long Strzelecki's Taser was unholstered during the incident. Otherwise, undisputed.

42. Disputed as to Strzelecki's characterizations of the video footage; it speaks for itself. Plaintiff's post-arrest statements to Guerriero are not relevant.

43. Disputed as to Strzelecki's characterizations of the video footage.

44. Disputed as to Strzelecki's characterizations of the video footage. Plaintiff's post-arrest statements are not relevant.

45. Disputed as to Strzelecki's characterizations of the video footage.

46. Disputed as to Strzelecki's characterizations of the video footage. Disputed that the officers did not know that Plaintiff did not have a firearm or had a basis to believe he was armed. [ECF No. 38-1 at 70:13-24]; [ECF No. 32-5 at 91:20–92:6].

47. Disputed as to Strzelecki's characterizations of the video footage.

48. Undisputed.

49. The post-arrest video footage is not relevant to any legal argument addressed in Strzelecki's motion and therefore it should not be considered. *Washington v. Hawkins*, 2011 WL 13183235, at *1 (M.D. Fla. Sept. 14, 2011) ("If the evidence is not relevant, it is not admissible.").

50. Undisputed as to the first sentence. Disputed that Strzelecki did not arrest Plaintiff or that the arrest occurred after Strzelecki's departure from the area.

51. Undisputed that Plaintiff was detained [*see* ECF No. 32-3 at 182:4-14 (Guerriero stating she is detaining Plaintiff "because you don't want to listen")], though Strzelecki's statements require no response because they are legal conclusions. *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, 2012 WL 1570057, at *3 n. 8 (S.D. Fla. May 2, 2012). To the extent a response is required, Plaintiff disputes Strzelecki's statements, [*see* ECF No. 32-3 at 114:10-14], and that Strzelecki did not participate in Plaintiff's detention or arrest, footage of which is on file.

52. Undisputed that at some point Strzelecki left the area. Undisputed that the events that transpired while Strzelecki was there would not have established sufficient cause to arrest Plaintiff. Disputed that any decision to arrest Plaintiff occurred without Strzelecki's participation. Strzelecki was tasked with writing the report and setting forth probable cause, which detail only events that occurred in his presence. [ECF No. 32-3 at 7]; [ECF No. 38-1 at 119:2-24]. Therefore, disputed that Strzelecki was unable to make a probable cause determination.

53. Disputed. [ECF No. 38-1 at 120:18–21:1]; [*see also id.* at 77:10-18].

54. Undisputed.

55. Undisputed.

56. Undisputed as to the quotation. Disputed that Strzelecki did not make a probable

cause determination at the time. [ECF No. 38-1 at 120:18–21:1]; [*see also id.* at 77:10-18].

57.     Undisputed that the report concludes Guerriero believed probable cause existed because Plaintiff reached into his pocket. Disputed that was the only basis asserted for probable cause as the report also indicates Plaintiff "was argumentative" as a basis. [ECF No. 32-3 at 7]. Disputed that any refusal by Plaintiff to identify himself after handcuffed, if true, was a basis for probable cause to arrest Plaintiff in the first instance. [*See id.* (not identifying that basis)].

58.     Disputed. Strzelecki's statements are presented as speculation as to what he would have done had he determined that probable cause existed at the time. Those statements are disputed by his deposition testimony in which he stated that the absence of language in the report as to whether he made any probable cause determination was not dispositive of whether he made any probable cause determination on scene. [ECF No. 38-1 at 120:18–21:1]; [*see also id.* at 77:10-18]. Strzelecki's report vouched for Guerriero's claims regarding events that he personally witnessed.

59.     Undisputed as to the first sentence and that Strzelecki was not a supervisor. Otherwise, no response is required because Strzelecki's statements constitute legal argument.

60.     Undisputed that Plaintiff was the victim of a crime on the date of the incident. The remainder of Strzelecki's statements are speculative and constitute inadmissible hearsay.

61.     Undisputed as to the first sentence. Otherwise, no response is required to Strzelecki's conclusory statements.

62.     Undisputed.

63.     Undisputed that Plaintiff did not seek medical treatment related to the incident or verbalize his complaints about the hot pavement while on scene (but disputed he did not experience pain). [ECF No. 32-4 at 186:1-14]; [ECF No. 39-4 at Interrogatory Responses Nos. 6, 22 & 25].

64.     Undisputed.

Dated: June 18, 2024.

                                                Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@slater.legal

Eric Rice (admitted *pro hac vice*)
Law Office of Eric A. Rice LLC
1 West Water Street, Suite 275
St. Paul, Minnesota 55107
Tel.: (651) 998-9660
eric@ricedefense.com

*Attorneys for Plaintiff*