UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80022-DMM

Ryan Gould,

    Plaintiff,

v.

Bethany Guerriero, *et ano.*,

    Defendants.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JOSEPH STRZELECKI'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ryan Gould ("Gould"), through his undersigned counsel, files this response in opposition to Defendant Joseph Strzelecki's ("Strzelecki") Motion for Summary Judgment. [ECF No. 31].[1] As grounds, Gould states:

### INTRODUCTION

On May 9, 2023, Gould was the victim of another person brandishing a firearm at him and threatening violence during a dispute at a community pool. Gould called the police to deescalate the situation and ensure that no one was hurt. Gould went to the parking lot, while the man with the gun stayed by the pool with his wife. The first officer to respond greeted Gould and then went to talk with the man who had the gun by the pool.

---

[1] Gould has also filed his opposing statement of facts ("OSOF") [ECF No. 40] in support of his position, as well as a declaration annexing certain evidence [ECF No. 39].

Officers Strzelecki and Bethany Guerriero ("Guerriero") were the next to arrive. On the radio, they received information that Gould was the victim and that the man with the gun was elsewhere. Gould was standing in the parking lot with only a bathing suit on. The officers knew that Gould was unarmed and was not the person with the gun. Guerriero made a friendly ask for Gould to keep his hands out of his pockets at approximately the same time that Gould grabbed his cell phone out of his pocket. Guerriero became enraged and started yelling at Gould.

After some yelling, Guerriero pulled out her lethal firearm and aimed it at Gould. For the second time, Gould was now threatened with deadly force. Strzelecki observed the events unfolding and decided not to deescalate or assist Gould. Instead, he pulled his taser out and aimed it as Gould to support Guerriero's threat of deadly force. He kept it trained on Gould while commanded Gould to get on the ground so that Gould could be handcuffed by Guerriero. Strzelecki and Guerriero placed Gould under arrest for obstructing officers, even though Gould did no such thing. Guerriero provided false information supporting an arrest for obstruction, and Strzelecki included that information in the probable cause statement he drafted to justify Gould's arrest.

Later, other officers obtained recordings of the incident and saw that Gould had not engaged in obstruction or done anything to justify having force threatened upon him. The other officers ordered Gould released from custody while Strzelecki was preparing documents for Gould to be formally charged.

Gould brings claims against Strzelecki and Guerriero for the unlawful force and arrest they subjected him to. Strzelecki participated in both the force and arrest and failed to intervene or correct misconduct. Caselaw supports Gould's ability to bring claims, and Gould should be permitted to have this matter heard at trial. Because Strzelecki violated Gould's Fourth

Amendment rights and subjected Gould to an unlawful arrest, Strzelecki's motion for summary judgment should be denied in its entirety.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a summary judgment motion must "draw all reasonable inferences in favor of the party opposing summary judgment." *Glasscox v. Argo*, 903 F.3d 1207, 1212 (11th Cir. 2018). Even when the parties agree on a set of facts, a court should deny summary judgment if "reasonable minds might differ on the inferences arising from undisputed facts." *Id*. (quotation omitted).

## ARGUMENT

Gould has asserted claims related to unlawful force and arrest during an encounter with officers Strzelecki and Guerriero. First, Gould has produced evidence and is entitled to inferences that support that Strzelecki participated in an unlawful arrest of Gould. Second, Strzelecki used unlawful force upon Gould when Strzelecki drew and aimed his taser to support the unlawful arrest. Third, the absence of any legal basis for the use of force or arrest support an inference that Strzelecki acted with malice, which permits a claim for tort liability. Finally, Strzelecki failed to intervene and cease Guerriero's unlawful force when she pointed a gun at Gould. Gould has produced sufficient evidence and is entitled to inferences that require Strzelecki's motion for summary judgment to be denied in its entirety. Gould should be permitted to have his claims heard at trial.

### I.   STRZELECKI UNLAWFULLY DETAINED AND ARRESTED GOULD.

Strzelecki's motion for summary judgment should be denied because Gould has put forth evidence and is entitled to inferences that support that Strzelecki violated Gould's Fourth

Amendment rights. First, Strzelecki and Guerriero arrested Gould when they held him at gunpoint, ordered him to the ground, and put him in handcuffs. Second, Strzelecki was a participant to that arrest, and Strzelecki failed to release Gould from custody in violation of Gould's Fourth Amendment rights. Third, Strzelecki lacked even arguable probable cause to arrest Gould for obstruction. Finally, even if Strzelecki had only detained Gould, that detention would have been unlawful and unreasonable even without an arrest.

> **A. Gould was arrested when Strzelecki and Guerriero held him at gunpoint, ordered him to the ground, and put him in handcuffs.**

To determine whether an encounter is an investigative detention or an arrest, a court should consider whether the suspect is "subjected to restraints comparable to those associated with a formal arrest." *United States v. Chaidez-Reyes*, 996 F. Supp. 2d 1321, 1335 (N.D. Ga. 2014) (citing *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir.2004)) (cleaned up). Officers can hold someone at gunpoint, order them to the ground, and handcuff them without converting a detention into an arrest in certain circumstances. *Id*. at 1335-36.

To determine whether an arrest occurred, courts should consider the following factors: "(1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursued their investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention." *United States v. Fields*, 178 Fed. Appx. 890, 893 (11th Cir. 2006). When an officer detains a suspect without attempting to investigate or to confirm or dispel suspicion, the detention should be treated as an arrest. *Kolin v. Dorsett*, Case No. 15-62728-CIV-ZLOCH, 2017 U.S. Dist. LEXIS 117938, at *12-13 (S.D. Fla. July 26, 2017). An officer should not receive the benefit of a lower standard merely by labelling an encounter as a detention when the decision to arrest has already been made. *Id*.

The facts here support that Strzelecki and Guerriero arrested Gould when they held him at gunpoint, ordered him to the ground, and placed him in handcuffs. *Chaidez-Reyes*, 996 F. Supp. 2d at 1335 (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)) (identifying nonexhaustive factors demonstrating arrest, such as: blocking the individual's path or impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual).

The only purpose to place Gould in handcuffs was to detain him so that he could be transported to jail. Officers did not attempt any investigation—not even a pat down—once Gould was in handcuffs further supporting that officers had determined that a sufficient basis existed to arrest Gould. *See United States v. Salman*, 286 F. Supp. 3d 1325, 1337 (M.D. Fla. 2018) (citing *United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002)) (explaining how a detention might not convert an encounter into an arrest where a limited stop is conducted to search outer clothing for weapons). Gould was forced to remain on the ground in handcuffs in only his bathing suit. The manner of detention was extremely intrusive and otherwise unnecessary because multiple officers were present, Gould was unarmed, and Gould gave no indication that he would flee or attack officers. Gould remained detained for a lengthy period *following* the investigation and resolution of the incident at the pool. *Cf. United States v. Williams*, 185 Fed. Appx. 866, 870 (11th Cir. 2006) (handcuffing and placing the defendant in the back of a patrol car during investigation where there were reports of a shotgun being fired at a residence was reasonable); *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) ("to maintain the safety of the officers and the ongoing investigation of the residence, handcuffing [the defendant] and detaining her in the back of the police car was reasonable"). Strzelecki himself drafted a probable cause statement to justify Gould's arrest and

later met Gould at a police facility. Gould remained in handcuffs throughout despite requests that they be removed.

Strzelecki argues that Gould's arrest was justified due to Gould reaching into his pocket to retrieve his cell phone. Strzelecki and Guerriero both observed that conduct and did not engage in any further investigation regarding Gould's conduct once Gould was placed in handcuffs. It is clear, even based on Strzelecki's claims, that officers arrested Gould for alleged obstruction during the initial phase of the encounter. Gould merely waited while officers eventually transported him and began processing him for formal charging. He was not released until several hours later despite the facts being known to the officers while still on scene at the community pool. *United States v. Partin*, 634 Fed. Appx. 740, 744 (11th Cir. 2015) (two hours of detention was "longer than the average *Terry* stop" but permissible because of the scope of the investigation).

Because officers did not engage in investigation or have any other reason to detain Gould, *see, e.g.*, *Gil*, 204 F.3d 1347, this Court should find that Gould was arrested when officers held him at gunpoint, ordered him to the ground, and handcuffed him.

Strzelecki's arguments that officers were uncertain about the situation and needed to detain Gould pending investigation are contrary to undisputed facts and inferences in Gould's favor. Undisputed facts and inferences in Gould's favor support the following: Strzelecki and Guerriero received information before getting out of their vehicles that Gould was the person who was threatened by another person who was carrying a gun. OSOF ¶¶ 5, 7, 26. Strzelecki and Guerriero knew that Gould was unarmed because they could see he was only wearing a bathing suit and had no bulges or other indication that he had a firearm on his person. *Id.* Neither Strzelecki nor Guerriero feared for their safety when encountering Gould. *Id.* at ¶ 18. Although Guerriero requested that Gould keep his hands out of his pockets when they first approached, the officers

understood that that statement could be considered a request, not a lawful command, and officers understood that Gould may not have heard it. *Id.* at ¶¶ 17 & 19. After initially grabbing his cell phone, Gould was compliant, showed his hands to officers, and abided by all requests from officers. *Id.* at ¶ 32; [*see also* ECF Nos. 29 & 39-2].

Based on the undisputed facts and inferences in favor of Gould, officers had no basis to detain Gould in handcuffs. The officers' failure to conduct any further investigation once Gould was detained supports that Gould was arrested by Guerriero and Strzelecki.

### B. Strzelecki participated in Gould's arrest.

An officer can be liable for an unlawful arrest even if they are not the primary arresting officer. *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). If an officer participates in an arrest in any way and knows that the arrest lacks a constitutional basis, that officer can be liable for unlawful arrest. *Id*. An officer who helps seize a suspect and observes an unlawful arrest can be liable under Section 1983. *Johnson v. DeKalb Cty.*, 391 F. Supp. 3d 1224, 1246 (N.D. Ga. 2019).

Strzelecki participated in the arrest in multiple ways. He ordered Gould to get on the ground. [ECF No. 29 (Strzelecki BWC) at 11:33:28]. He aimed his taser at Gould to assist Guerriero while she handcuffed Gould. [*Id*. at 11:33:40]. For approximately one minute, Strzelecki observed Gould in handcuffs and made no effort to pat Gould down or otherwise engage in any investigation regarding Gould. [*Id*.]. Later, Strzelecki drafted a report alleging probable cause to support Gould's arrest. OSOF ¶¶ 57-58. Strzelecki met Gould while he was detained at another location and transported Gould in handcuffs. Strzelecki completed additional paperwork at the facility to prepare Gould for formal charging. Throughout all of this, Strzelecki knew that there was no basis supporting Gould's arrest. Because Strzelecki participated in an unlawful arrest, knew

that it was unlawful, and failed to release Gould from custody, Strzelecki is liable for the unlawful arrest of Gould.

### C. Strzelecki did not have probable cause to arrest Gould.

An arrest without probable cause is unlawful. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). If probable cause did not in fact exist, qualified immunity may apply if arguable probable cause existed. *Id*. If the law was unclear about whether probable cause existed for certain conduct and a reasonable officer could reasonably conclude that probable cause existed based on the circumstances encountered, qualified immunity should apply. *Id*. If existing precedent establishes that circumstances would not constitute probable cause, however, qualified immunity should not apply. *Id*. at 1187.

Strzelecki argues that probable cause existed to arrest Gould for obstructing an officer without violence in violation of Florida Statute § 843.02. That statute makes it a crime for someone to "resist, obstruct, or oppose" an officer "in the lawful execution of any legal duty." Fla. Stat. § 843.02. Not all disobedient conduct constitutes a violation, however.

Criminal obstruction has two elements: (1) an officer engaged in the lawful execution of a legal duty and (2) an action by a person that obstructs or resists that lawful duty. *R.E.D. v. State*, 903 So. 2d 206, 207 (Fla. Dist. Ct. App. 2004). Regarding the first element, there is a difference between an officer who is engaged in the execution of a legal duty and one who is "merely on the job." *C.W. v. State*, 76 So. 3d 1093, 1095 (Fla. Dist. Ct. App. 2011). When an officer has no legal duty to insist on compliance and enforce the insistence, disobedient conduct is not criminal obstruction. *Id*. at 1095-96.

An officer who is only responding to a call is not engaged in a legal duty that supports criminal obstruction for disobedience. *Ghandour v. City of Miami*, Case No. 23-21970-CIV-ALTONAGA/Damian, 2024 U.S. Dist. LEXIS 4333, at *12-13 (S.D. Fla. Jan. 9, 2024). Consensual requests from officers can be ignored. *Ford v. City of Boynton Beach*, 323 So. 3d 215, 228 (Fla. Dist. Ct. App. 2021). Conduct that does not obstruct or impede the officer's legal duty does not constitute criminal obstruction. *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1312 (S.D. Fla. 2020).

Strzelecki did not have even arguable probable cause to arrest Gould. When Gould retrieved his cell phone, Strzelecki and Guerriero were merely responding to a call and not yet engaged in a legal duty that would trigger obstruction due to disobedience. The officers knew that Gould was unarmed and that the person with the gun was elsewhere. The officers did not inform Gould that he was detained or otherwise attempt to detain Gould before he grabbed his cellphone. Thus, officers lacked a legal basis at that point to command Gould to refrain from putting his hand in his pocket or take action if Gould disobeyed. Even Guerriero admitted that her first statement was essentially a "friendly ask" and that it would have been reasonable for Gould to interpret her statement as a request—not a legal command. OSOF ¶ 17. Under Florida law, Gould was free to disregard an officer's request during a consensual encounter.

Strzelecki admits that the initial encounter was a consensual interaction and "one desired and requested by Plaintiff himself." [ECF No. 31, Strzelecki Mem. at 2]. It was only *after* Gould retrieved his cell phone that officers attempted to transition the consensual encounter to a detention: "It was then [after Guerriero's request] that Officer Guerriero detained Plaintiff, ordered him to the ground, and handcuffed him, with Officer Strzelecki serving as a backup." (*Id*. at 3.) Strzelecki admits that Gould retrieving his phone caused officers to attempt to detain him—Gould

9

did grab his phone during an attempted detention. (*Id*. at 4.) Thus, even Strzelecki concedes that the detention, which permitted officers to undertake a legal duty, occurred *after* the request that Gould keep his hands out of his pockets. It would be paradoxical to find that Gould retrieving his phone was both the cause of and an impediment to an attempted detention by officers.

Gould did not engage in any conduct that impeded officers' legal duties. Their investigation was not disrupted by Gould's conduct. Even Gould's detention and arrest was unimpeded—Gould complied with officers' commands to get on the ground and allowed himself to be handcuffed. Even if Gould had resisted arrest, though, it would have been lawful because resistance is not criminal when it is in response to unlawful police activity. *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1346 (S.D. Fla. 2011). Here, however, there was no resistance at all; thus, there was not even arguable probable cause that Gould committed criminal obstruction.

Strzelecki's reliance on the Georgia decision *Edwards v. State*, 253 Ga. App. 837 (Ga. Ct. App. 2002) is misplaced. [ECF No. 31, Strzelecki Mem. at 6]. That decision interpreted Georgia's criminal obstruction statute, which is not at issue here. *Edwards*, 253 Ga. App. at 837-38. Additionally, the suspect in that case refused to show his hands to officers after several requests and the conduct occurred after officers had engaged in a *Terry* investigative detention. *Id*. In that case, unlike here, officers explicitly ordered the suspects to stop, informing them that they were detained. *Id*. at 837. Here, Gould was not detained when he grabbed his phone, and he did not refuse multiple requests or otherwise impede officers in their duties.

Because Strzelecki lacked even arguable probable cause to arrest Gould, his motion for summary judgment should be denied.

### D. Even an investigative detention of Gould would have been unreasonable.

Even if officers had detained and not arrested Gould, such a detention would have been unlawful. An investigative detention requires reasonable suspicion supported by articulable facts that criminal activity is present. *United States v. Jones*, 752 Fed. Appx. 810, 812 (11th Cir. 2018). A detaining officer must articulate facts that provide at least a minimal objective justification for the stop. *Id*. The manner of the stop must be reasonable. Although officers can use handcuffs during an investigative detention, officers must have more than mere suspicion that criminal activity has occurred; officers must have safety or flight risk concerns supporting the need for handcuffs. *Gray v. Bostic*, 458 F.3d 1295, 1305-06 (11th Cir. 2006). The use of handcuffs without these concerns violates the Fourth Amendment. *Id*.

Strzelecki initially had no reasonable suspicion that Gould was engaged in criminal activity. The radio calls informed Strzelecki that Gould was the victim of someone else brandishing a gun. As described above, Strzelecki also lacked reasonable suspicion that Gould obstructed officers in their legal duties. There was also no safety threat supporting the display of weapons or use of handcuffs. Strzelecki admitted that he felt no safety threat during the encounter, and it was clear to officers that Gould was unarmed. Finally, Gould was not a flight risk. Strzelecki admits that it was Gould who requested officers, and Gould did not attempt flee or terminate the encounter before being placed in handcuffs. Despite the complete absence of reasonable suspicion or safety or flight risks, Strzelecki brandished his weapon and assisted Guerriero in having Gould put in handcuffs. The detention itself, as well as the manner of the detention, violated Gould's clearly established Fourth Amendment rights.

In his arguments, Strzelecki improperly disputes Gould's evidence and draws inferences in the moving party's favor. For example, Strzelecki argues that officers did not know who had a gun and had reasonable safety fears regarding Gould. This contradicts even Strzelecki's statements that he did *not* have safety fears during his encounter with Gould. Further, Gould has provided evidence that supports and inference that Strzelecki and Guerriero knew that Gould was unarmed and that the person with the gun was elsewhere.

Finally, Strzelecki cites numerous obstruction cases from other jurisdictions to support reasonable suspicion to detain Gould. [ECF No. 31, Strzelecki Mem. at 6]. Those cases do not interpret the Florida Statute at issue here, which has requirements that officers be performing a lawful duty and that a person do something to impede that duty. The caselaw cited by Strzelecki does not remedy the fatal issues that officers here were not engaged in a lawful duty during the initial part of the encounter and that Gould did nothing to impede officers' lawful duties. Accordingly, this Court should deny Strzelecki's motion for summary judgment regarding the detention and arrest of Gould.

## II. STRZELECKI USED UNREASONABLE FORCE AGAINST GOULD IN VIOLATION OF GOULD'S FOURTH AMENDMENT RIGHTS.

Strzelecki's drawing of his taser and threat of force is subject to Fourth Amendment reasonableness. Because the threatened use of the taser was unnecessary, it violated Gould's constitutional rights. Even if that threat constituted *de minimis* force, precedent establishes that it violates a compliant and subdued person's constitutional right. Finally, caselaw clearly established that Strzelecki's conduct was unlawful before the date of the incident, so qualified immunity should not apply.

**A. Strzelecki's threat of force violated Gould's Fourth Amendment rights.**

An officer's display of their weapon and threat to use force is analyzed under the Fourth Amendment to determine whether it is reasonable conduct. *Jones v. Walsh*, 711 Fed. Appx. 504, 507 (11th Cir. 2017). When an officer draws their weapon, it must be reasonably necessary for protection or maintenance of order. *Id*. (citing *Courson v. McMillian*, 939 F.2d 1479, 1494-95 (11th Cir. 1991)). An officer's display of a weapon and threat of force is unreasonable when not necessary based on the nature of the stop. *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) (citing, *inter alia*, *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)). There is a robust consensus across circuits that an officer who brandishes a weapon at a bystander or compliant subject is objectively unreasonable under the *Graham* factors. *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *8-9 (W.D. Tex. Jan. 31, 2020) (denying qualified immunity based on collection of precedent clearly establishing that it is excessive force to brandish a gun at a compliant person).

Strzlecki's display of his taser was objectively unreasonable. During the incident, Gould did not engage in criminal conduct, officers did not perceive any safety threats requiring threat of force, and Gould complied with commands that he be detained and handcuffed. The use of force without any need was unreasonable and violated Gould's constitutional rights.

Cases cited by Strzelecki where use of a taser was considered reasonable are distinguishable from this matter. In *Edwards v. Giles*, the court held that the Fourth Amendment did not apply at all because the officer's display of his weapon did not cause the suspect to submit to the officer's authority. 51 F.3d 155, 157 (8th Cir. 1995). In dicta, the court reasoned that the display would have been objectively reasonable, however, because the suspect had committed a felony, fled officers, and hid to evade capture. *Id*. None of those facts apply to Gould here.

13

Ultimately, Strzelecki fails to provide support that drawing and aiming a taser is *per se* outside the purview of Fourth Amendment considerations. Although other decisions have found that the threatened use of a taser was objectively reasonable when a suspect poses a safety threat or attempts to evade officers, caselaw does not justify Strzelecki's conduct when those factors are absent. The threat of the taser contributed to Gould's submission during his arrest, so the conduct falls within the ambit of the Fourth Amendment. The Fourth Amendment prohibits threatened force without a basis to justify its needs. Accordingly, Strzelecki's conduct was unreasonable under the Fourth Amendment.

### B. Even if the threat of force was *de minimis*, it violated Gould's Fourth Amendment rights.

Force used to effectuate an unlawful detention or arrest violates the Fourth Amendment, even if the force is *de minimis*. *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008). When it is disputed whether a detention or arrest was proper, a court should refrain from resolving a claim based on the use of *de minimis* force. *Yessin v. City of Tampa*, 613 Fed. Appx. 906, 908 (11th Cir. 2015). *De minimis* force used against a compliant and subdued suspect is actionable. *Saunders v. Duke*, 766 F.3d 1262, 1269-70 (11th Cir. 2014). Unlawful *de minimis* force would entitle the plaintiff to at least nominal damages. *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

When Strzelecki drew his taser, Gould was compliant and submitting to officers' authority. Gould remained compliant and was handcuffed while Strzelecki kept his taser aimed at Gould. The display of the taser, combined with Guerriero's display of her lethal firearm, caused Gould significant emotional distress. Under these facts, there is a dispute whether the combined display of force was *de minimis* given Gould's apparent emotional distress. Even if the force was legally *de minimis*, however, Gould can still proceed on his claim because it occurred in the context of an unlawful detention and arrest of a compliant and subdued person.

14

### C. Qualified immunity should not apply.

Caselaw is clear that even the display of a weapon without a need violates the Fourth Amendment. *Flores*, 2020 WL 563799, at *8-9 (collecting cases). The display of a taser is analyzed under Fourth Amendment principles like the display of other weapons. *Jones*, 711 Fed. Appx. at 507.

It is not disputed that Strzelecki's display of his taser was subject to Fourth Amendment reasonableness standards. Strzelecki himself understood that even displaying a weapon was subject to restrictions and was required to be reasonable. OSOF ¶ 37. Strzelecki understood that in absence of a threat, an officer must cease holding someone at gunpoint, even if there was an earlier basis to display force. [*Id.*]. Strzelecki understood that holding someone with threat of force without a proper basis would not be legal. [*Id.*]. Strzelecki's continued display of force, even after Gould had fully submitted and was detained, violated principles that Strzelecki himself understood.

"The touchstone of qualified immunity is that officers must be on notice that their conduct is unlawful before being held personally liable for a constitutional violation." *Garcia*, 75 F.4th 1176 at 1186. Here, where it is well-established that display of a weapon must comply with Fourth Amendment standards and where Strzelecki personally knew that expectation, qualified immunity should not immunize Strzelecki from conduct that he knew was unlawful.

### III. STRZELECKI ACTED WITH SUFFICIENT MALICE AND IS NOT IMMUNE FROM TORT LIABILITY UNDER FLORIDA LAW.

Strzelecki's participation in the unlawful arrest of Gould has been discussed extensively above and is incorporated here without repetition to support a claim for false arrest. In addition to the unlawful arrest, Strzelecki acted with malicious subjective intent, so he is not immune from tort liability.

Under Florida law, an officer is immune from tort liability unless they act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety. *Coleman v. Hillsborough County*, 41 F.4th 1319, 1325 (11th Cir. 2022). The first two categories are synonymous and require actual malice. *Id*. The third category requires conduct "much more reprehensible and unacceptable than mere intentional conduct." *Id*. (cleaned up). Unprovoked aggression, arrest without cause, and unnecessary force permit a jury to infer actual malice. *Hill v. Mull*, Case No. 5:04-CV-329 (DF), 2006 U.S. Dist. LEXIS 77330, at *37 (M.D. Ga. Oct. 23, 2006).

Inferences drawn in favor of Gould support actual malice by Strzelecki during the encounter. Strzelecki knew that Gould was unarmed and had recently been the victim of having a gun brandished at him. Despite this knowledge, Strzelecki supported Guerriero brandishing her firearm and threatened use of his weapon toward Gould. Strzelecki did so without legal basis or need. Strzelecki and Guerriero arrested Gould using false claims of obstruction to punish Gould for conduct that angered Guerriero. The officers' threat of force and arrest of Gould was otherwise unnecessary, and it is reasonable to infer that that conduct was motivated by malice.

Because a factual dispute exists regarding Strzelecki's subjective intent, his motion for summary judgment should be denied.

### IV. GOULD HAS STATED A CLAIM FOR STRZELECKI'S FAILURE TO INTEREVENE.

A failure to intervene claim is dependent upon and related to an excessive force claim. *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). An officer who fails to intervene to prevent unlawful force can be liable for violation of a person's Fourth Amendment rights. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). An observing officer must have the opportunity

to intervene and be in a position to intervene. *Johnson v. White*, 725 Fed. Appx. 868, 878 (11th Cir. 2018).

### A. Gould properly pleaded a claim for failing to intervene as a Fourth Amendment violation.

In his Complaint, Gould specifically alleged that "neither defendant intervened to stop the other's unjustified use of force." [ECF No. 1, Compl. at ¶ 31]. Gould alleged general Fourth Amendment violations, incorporating that allegation, as well as others. [*Id*. at ¶ 51]. In the Fourth Amendment count, Gould specifically alleged that each officer "failed or refused to intervene" to prevent the other's use of force. [*Id*. at ¶ 59]. All allegations in that Count seek relief pursuant to Section 1983 for violation of Gould's Fourth Amendment rights.

If this Court finds that the pleadings are inadequate, Gould must be afforded an opportunity to amend his Complaint to remedy the issue. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("In the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to sua sponte allow a litigant one chance to remedy such deficiencies."). Strzelecki was clearly on notice that his failure to intervene would be an issue in this litigation, and he has not previously raised the issue to permit Gould an opportunity to amend. *See Finch v. Carnival Corp.*, No. 23-CV-21704, 2023 WL 7299780, at *4 (S.D. Fla. Nov. 6, 2023) (shotgun complaints fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Thus, Gould should at least be permitted an opportunity to amend his Complaint if the Court finds that a failure to intervene count should be separated from other Fourth Amendment violation claims.

Strzelecki has not identified any precedent that requires a failure to intervene claim to be pleaded separately from the underlying excessive force to which it is related. While caselaw supports that a plaintiff can choose to separate those Fourth Amendment violations into discrete counts, *see, e.g.*, *Spung v. Fairwinds Fin. Servs., LLC*, No. 6:06-CV-756-ORL19KRS, 2006 WL 2048291, at *2 (M.D. Fla. July 20, 2006) ("Plaintiff is not barred from alleging multiple claims in a single count and may state as many separate claims or defenses as he has, regardless of consistency"), Strzelecki has not identified any authority that requires separation. Gould pleaded that he sought relief due to Fourth Amendment violations, which included the defendants' failure to intervene. Gould should be permitted to proceed with his claim. Alternatively, he should be permitted to replead his claim, as he expressed in response to the pending motion to dismiss filed by Guerriero. [ECF Nos. 15 & 18]. Because that alternative request to amend remains pending, Gould does not again seek leave to amend—or concede that amendment is necessary—as it would be superfluous.

### B. Strzelecki violated Gould's Fourth Amendment rights when Strzelecki failed to intervene and prevent Guerriero's unlawful force.

Strzlecki's participation in Gould's arrest and Strzelecki's failure to terminate the unlawful arrest is addressed above. That discussion is incorporated here and will not be repeated.

Strzelecki failed to intervene to prevent Guerriero's excessive force. Although Strzelecki may not have been able to anticipate that Guerriero would draw her firearm—it was unexpected because circumstances did not justify the threat of deadly force—Strzelecki had 12 seconds to intervene and cause Guerriero holster her weapon. Not only did Strzelecki fail to prevent the continuing unlawful force, Strzelecki provided complicit support by drawing his less-lethal taser. Strzelecki could have told Guerriero to put her weapon away or attempted to deescalate the

encounter as Guerriero grew increasingly agitated. Strzelecki failed to do so, however. By refusing to intervene, Strzelecki violated Gould's Fourth Amendment rights.

Strzelecki's qualified immunity argument is unavailing. It is long and clearly established that an officer has a constitutional responsibility to intervene if they observe unlawful force and have an opportunity to terminate it. *Ensley*, 142 F.3d at 1407. Here, Strzelecki observed Guerriero's unlawful force and decided to join it rather than terminate it. Gould's failure to intervene claims should be permitted to proceed.

## CONCLUSION

Gould has put forth evidence and is entitled to inferences that support liability on the claims asserted. Caselaw and the facts in this matter do not support immunity for Strzelecki. Accordingly, Strzelecki's motion for summary judgment should be denied in its entirety, and Gould should be permitted to proceed on his claims at trial.

Dated: June 18, 2024

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
Email: james@slater.legal

**Eric Rice**
Eric Rice (admitted *pro hac vice*)
Law Office of Eric A. Rice LLC
1 West Water Street, Suite 275
St. Paul, Minnesota 55107
Tel.: (651) 998-9660
Email: eric@ricedefense.com

*Attorneys for Plaintiff*