UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80022-DMM

RYAN GOULD,

    Plaintiff,

vs.

BETHANY GUERRIERO, and
JOSEPH STRZELECKI,

    Defendants.
_____/

### DEFENDANT, JOSEPH STRZELECKI'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE

Defendant, JOSEPH STRZELECKI, by and through his undersigned counsel, responds to Plaintiff's Motion in Limine, as follows:

Plaintiff posits that video depicting him both defiant and uninjured at his arrest scene should not be admissible at trial because it portrays him in an unflattering light. No doubt this is true. But that his pugnacious attitude, which included pleading with officers to arrest him (for which he now seeks damages, despite actively seeking it then) provides no legal basis to exclude this evidence when it is not only relevant, but indeed critical to defend the very damage claims advanced by Plaintiff.

**1. Injuries Occasioned by Being Placed on Hot Asphalt.**

In D.E. 1, Plaintiff alleges as a component of his injuries that he was "forced to lie on hot pavement…" and that this caused him to suffer "physical pain." ¶¶30, 35. Plaintiff doubled-down on this injury claim in his interrogatory answers, again noting that he was directed onto "hot asphalt." *Ex. A,* #5. Plaintiff then continued to make hot pavement an issue of this at his

deposition, "I was shoved onto the hard, hot cement.  I was forced to lay down with no clothing and scrapes." D.E. 32-4, 40:17-20.  He claims that he tried to get up when told to remain on the ground because, "I would say at that point I was trying [sic] get off the hot cement or pavement." *Id.*, 183:14-15.  He further testified in deposition that he was in so much pain he was yelling "in [his] head" about the hot pavement.  *Id.,* 184: 9-10.

Although Plaintiff claims to have suffered injury and scrapes from being placed on hot pavement without clothing, the conventionally filed "GouldVideo" shows otherwise.  It depicts Gould from the earliest parts of his detention by Officer Guerriero and for over an hour (with approximately 30 minutes on scene, mostly in the back of a police car) where he is engaged in near constant discourse with law enforcement officers; yet, not once does he mention that he was caused to endure even the slightest discomfort as a consequence of being forced to lie on hot pavement.  The video evidence further depicts the front of Plaintiff's body and chest area, and demonstrates the absence of any scrapes, redness or swelling occasioned by the pavement.

The video evidence that Plaintiff seeks to exclude plainly refutes claims for damage that he has elected to make a focus of his case.  This evidence is akin to surveillance video capturing someone running from an accident scene who testified that they could not walk.  It shows the absence of injury or complaint of injury.

**2. Plaintiff's Dispute that He Desired to Be Arrested So He Could Sue for Money.**

A jury must be able to consider that a plaintiff seeking monetary damages from an occurrence, expressly sought and desired that which he now claims injured him.   In this case, Plaintiff claims that being arrested and taken to jail has caused him to endure emotional distress and mental anguish.  Defendant conversely contends that Plaintiff suffered no emotional distress

from being arrested and taken to jail, and that Plaintiff, in fact, desired that very outcome so that he could seek monetary gain.  Plaintiff denies this.  The following colloquy from his deposition:

**Q.** **After you were placed in handcuffs, was it your desire to go to jail?**

A. No.

**Q.** **Did you want to go to jail?**

A. No.

**Q.** **Looking back at this event, would it have been your preference to go to jail or to have been released on scene?**

A. Be released.

\* \* \*

**Q.** **Did you want to go to jail so you'd have a lawsuit?**

A. No.

**Q.** **Do you agree with me that you, on multiple occasions that day, asked officers to arrest you and take you to jail?**

A. I don't know.  I don't know.

*Id.* 47:1-8, 18-20.

The video belies Plaintiff's assertions that he did not actively seek arrest in furtherance of a lawsuit/secondary gain.  The conventionally filed "GouldVideo" depicts Gould making the following statements at the corresponding marks of the video:

| **Time:** | **Gould Statements** |
|---|---|
| 0:00:40 | "Arrest me.  I want you…arrest me.  Go ahead and take me to jail.  Go ahead and take me to jail.  Take me to jail right now.  Pussy!" Take me to jail.  Do it.  Do it.  Do it.  I'm ready.  OK, I'm ready, let's go.  Let's go, I'm ready. |
| 0:01:16 | "Then to take me to jail. I'm ready. Let's go. That's fine. I'm ready. Take me. I'm ready to go to jail." |

0:01:49     "I'm not going to stop talking.  Arrest me.  I'm not going to stop talking.  Arrest me.  Arrest me.  Take me to jail."

0:06:30     *When asked if he wanted to get in trouble:* "Yeah, go ahead."

0:13:39     "I would love for you guys to arrest me right now."

0:13:46     "Can you arrest me?"

0:14:08     "If you are going to arrest me for resisting, I would love it."

Again, given Plaintiff's denial that he sought – and in fact, begged to endure -- the very damages he now aggrieves, the jury must be able to consider Plaintiff's statements to law enforcement that he wanted a lawsuit, rather than release.  Plaintiff cannot reasonably assert that being arrested caused him to suffer when he showed no aversion to arrest and, in fact, preferred that outcome to release, despite his disingenuous deposition denials.

**3.   Plaintiff's Claim of Fear of Police (Then and Continuing).**

Plaintiff claims that this encounter with police has caused him so much fear of Palm Beach Gardens Police officers that he relocated to Illinois.  D.E. 1, 50.  He has requested damages stemming from "emotional anguish" and "mental suffering.".  *Id.*, ¶77.  His sworn interrogatory responses claim that he "no longer resides in Florida due to the trauma" and that he "lives in a constant state of fear that he will be harmed" by law enforcement.  *Ex "A,"* #22, 25.  Plaintiff demonstrated no such fear or anguish on this challenged video.

When asked if his dialogue with police supported that he appeared fearful of police, he replied without equivocation, "Yes."  D.E. 32-4, 114:15-20.  When queried whether he feared officers ***while*** calling them "pussies" and "telling them to get a real job,", he replied, "Yes." *Id.,* 115:18-21.  When asked why he lied to police officers repeatedly, including his braggadocios but false touting of his large social media presence, ***and that he was a licensed attorney*** (he is not), Gould illogically explained his prevarication: "Because I was in fear for my life." *Id.*, 25:9-25.

The challenged video belies any notion that Gould feared these police officers, or that he fears police officers. He constantly laughed in their faces, refused to provide identification when asked (0:06:15), called them names such as "psycho" (0:14:10), mocked the officers over that he paid their salary while claiming that they did not pay taxes (0:15:25), accused them of violating rights of others (0:15:30), laughingly referred to himself as a "stud" (0:24:30), mocked an officer's military service (0:24:40) and then at one point engaged in banter concerning his own gun ownership. (0:24:40).

The depiction of Plaintiff captured on officer body worn camera stands in stark contrast to damage claims that the actions of the officers that day placed him in fear, and have caused him continued fear of police. The video instead depicts Gould as defiant, mocking the officers repeatedly (often while laughing) and that he was overly brazen, not fearful in the face of an adverse incident with officers. These contradictions are critical to defending his damage claims since they, for one, eviscerate Plaintiff's credibility on salient issues. That Plaintiff is shown in a poor light in video that refute his damages is not a basis to exclude the video at trial.

### Additional Legal Argument

Given Plaintiff's abhorrent representation of himself during and following his arrest, it is certainly no surprise that he seeks to keep evidence from the jury that tends to disprove his claims for damage. But motions in limine in this jurisdiction are generally disfavored. *Acevedo v. NCL (Bahamas) Ltd.*, 317 F.Supp.3d 1188 (S.D. Fla. 2017). Moreover, motions of this type require the plaintiff to show that the evidence would be "clearly inadmissible for any purpose." *Id.* at 1192.

Here, there are proper purposes for the presentation of the video, even if the post-arrest portion is not relevant to the issue of formulation of probable cause (liability). Liability is only part of his claims, and this video goes to the heart of claims for damages, and further bears on

Plaintiff's credibility since he is depicted providing false statements to law enforcement officers investigating a crime, which reflect on his credibility. *See,* Rule 608, *Fed.R.Evid.* (allowing cross-examination if probative of truthfulness or untruthfulness of a witness); *Magbegor v. Triplette*, 2016 WL 6562920 (N.D. Ga. 2016)(denying request to exclude evidence that was relevant to the plaintiff's credibility). Under our evidentiary rules, any evidence tending to make Plaintiff's claims less plausible are relevant and admissible unless another rule requires exclusion. *Arch Spec. Ins. Co. v. Balzebre*, No. 10-23775-Civ-Cooke, 2013 WL 120655533, Order on Motions in Limine (S.D. Fla., January 16, 2013). Here, the evidence Plaintiff challenges tends to make his damage claims less plausible, and no other rule requires its exclusion.

Plaintiff's Motion in Limine must be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
***Attorneys for Defendant, Strzelecki***
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
(954) 463-0100 - Telephone
(954) 463-2444 – Facsimile
Alexander@jambg.com
Cintron@jambg.com  Andrews@jambg.com

*/s/ Scott D. Alexander*
SCOTT D. ALEXANDER
FLA. BAR NO. 057207

**SERVICE LIST**

*Counsel for Plaintiff*
**James M. Slater, Esq. (111779)**
Slater Legal, PLLC
9000 Dadeland Blvd., Suite 1500
Miami, FL 33156
Tel: 305.523.9023
james@slater.legal
alicia@slater.legal

*Co-Counsel for Plaintiff*
**Eric A. Rice, Esq.**
**Law Office of Eric A. Rice, LLC.**
1 W. Water Street, Suite 275
St. Paul, MN 55107
Tel: 651.998.9660
Fax: 651.344.0763
eric@ricedefense.com

*Counsel for Defendant, Guerriero*
**Gregory J. Morse, Esq. (0505099)**
**R.E. "Rick" King, III, Esq. (90473)**
King Morse PLLC
2240 Palm Beach Lakes Blvd., Suite 300
West Palm Beach, FL 33409
Tel: 561.651.4145 / 561.557.1079
greg@morselegal.com
rick@kingmorselaw.com
kristen@kingmorselaw.com

*Counsel for Defendant, Strzelecki*
**SCOTT D. ALEXANDER, ESQ. (057207)**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
Tel: 954.463.0100
Fax: 954.463.2444
Alexander@jambg.com
Cintron@jambg.com Andrews@jambg.com