UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80022-DMM

RYAN GOULD,
        Plaintiff,

vs.

BETHANY GUERRIERO, and
JOSEPH STRZELECKI,
        Defendants
_____/

**DEFENDANT BETHANY GUERRIERO'S MOTION FOR SUMMARY JUDGEMENT,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, BETHANY GUERRIERO (hereinafter "Officer Guerriero"), by and through her undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, respectfully request the Court enter an Order granting summary judgement in her favor and against RYAN GOULD (hereinafter "GOULD"). In support thereof, Officer Guerriero states as follows:

**INTRODUCTION**

This civil rights action arises out of the arrest of Gould on May 9, 2023. Gould was arrested for resisting an officer pursuant to Fla. Stat. 843.02. (2023) As a result, Gould has filed a Complaint against Officer Guerriero and Officer Joseph Strzelecki ("Officer Strzelecki") alleging false arrest and excessive force, pursuant to 42 U.S.C. §1983, and false arrest and false imprisonment under Florida law. However, as demonstrated herein, Officer Guerriero is entitled to summary judgement as a matter of law because: (1) Officer Guerriero had probable cause to arrest Gould; (2) assuming arguendo that Officer Guerriero did not have probable cause to arrest Gould, at the very least, she

had arguable probable cause, entitling her to qualified immunity; and (3) there was no, or di minimis force used to effect the arrest of Gould.

## Legal Argument

### I.   Applicable legal standards for granting a motion for summary judgement

"Summary judgment is appropriate where, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law." Kirby v. Siegelman, 195 F .3d 1289 (11th Cir. 1999). As recognized by the Court in Chapman v. AI Transp., 229 F .3d 1012, 1023 (11th Cir. 2000) (en banc)):

> Summary judgement is appropriate if the evidence before the court shows that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law. In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing the summary judgment… The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

Id. at 1023 (quoting Haves v. City of Miami, 52F.3d 918, 921 (11th Cir. 1995)). Therefore, "[a] mere 'scintilla' of evidence supporting [Defendant's] position will not suffice, there must be enough of a showing that a jury could reasonably find for the [Defendant]. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511 91.L.Ed.2d 202 (1986)). The Anderson Court recognized that, "[t]he mere existence of some alleged factual dispute between the parties will not defeat and otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson 477 U.S. at 247-48 (emphasis in original). Consequently, [t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for the party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51.

## II. Guerriero did not violate Gould's constitutional rights during the detention of Gould

### A. Officer Guerriero had reasonable suspicion to detain Gould.

Officer Guerriero had reasonable suspicion to detain Gould. The officers responded to a high-risk call for service. *Arbitration Transcript, Vol I, Pg.96, Ln 3*. The officers were told by dispatch that one of the parties was armed with a firearm. *Conventionally filed audio[1]*, 03 G23-002514 911 **[DE 29]**. The dispatch of the call in pertinent part is as follows:

| | |
|---|---|
| **Dispatcher:** | Gardens Bravo 32 and 33 …65 22[2]? |
| **Officer Strzelecki:** | Send it, |
| **Dispatcher**: | Sable Ridge at 100 Sable Ridge Circle 100 Sable Ridge Circle Clubhouse pool, white male, brown hair multicolored suit. Advise a male is harassing his wife. Male calling the wife's name and telling people to get out of the pool. 54 signal zero, possible. 57. Caller 10-12.[3] Nothing further |
| **Officer Strzelecki:** | 51 |
| **Dispatch:** | Show Bravo 33 enroute for 94 at 1129. |
| | Bravo 2 is also route at 1129. |
| | Gardens. Bravo 32, just 14 for you. The male's now walking to the other side of the clubhouse. We also have the wife landline caller. He's CCCW and does have a signal zero on him. Advised he does have a signal zero in his holster in his groin area at this time.[4] |

---

[1] Defendant Guerriero will rely on evidence already made a part of the record by other parties for the sake of economy instead of filing duplicative exhibits; [Conventionally filed audio at **[DE 29]**.

[2] "65 22" is a shortened 10 code meaning 10-65 a sig 22, the actual meaning is can you copy (respond) to a disturbance.

[3] 54 signal zero, possible. 57. Caller 10-12 is a shortened 10 code meaning No weapons, possible drugs and the caller is still with the subject.

[4] This is an example of how information changes. Dispatch at the end of the call now advised that someone is armed.

With this information the officers responded to the call for service. Officer Valerio was the first to respond. *BWC Officer Valerio[5]*. Officer Valerio met with Gould in the parking lot. *Id*. The record evidence from body worn camera ("BWC") and dispatch recordings is that Officer Valerio never informed Officer Guerriero and Officer Strzelecki that he met with Gould, or that Gould would be waiting in the parking lot. *Id*. Nor did Officer Valerio tell them that the weapon was secured or located. *Id.* Valerio's only transmission to the other responding officers was that he was "making contact on the other side of the pool." *Conventionally filed audio[6]*, *03 G23-002514 911.*

Officer Guerriero observed Gould as she drove into the parking lot. *BWC Officer Guerriero*. Officer Guerriero observed Gould to be wearing a multicolored bathing suit and no shirt when she arrived. *Guerriero Depo. Pg. 54, Ln.9.* The information the officers received was that the armed suspect was wearing a multicolored bathing suit. *Audio*. As Officer Guerriero exited her car, she observed Gould reaching into right pants pocket, and immediately told him to keep his hands out of his pockets. *BWC Officer Guerriero*. Gould almost immediately went back into his pocket and retrieved what was later determined to be a cellular phone. *Id*. Gould's defiance prompted a more strenuous direction from Guerriero; she ordered Gould to "keep your hands out of your pockets!" *Id.* Gould, now holding his cell phone refused two commands from Guerriero to put his phone down. *Id*. Gould proceeded to retreat toward an unidentified dark object on the ground[7] *Id*. Officer Guerriero then drew her firearm, ordered Gould to the ground and handcuffed him. *Id.*

---

[5] Defendant Guerriero will rely on evidence already made a part of the record by other parties for the sake of economy instead of filing duplicative exhibits; conventionally filed BWC Valerio at **[DE 29]**.

[6] Defendant Guerriero will rely on evidence already made a part of the record by other parties for the sake of economy instead of filing duplicative exhibits; [Conventionally filed audio at **[DE 29]**.
[7] The object was later found to be a towel.

The undisputed facts are:  The officers responded to a dispute involving a gun.  *Audio.*
Gould was not only involved in the dispute, but he was also one of the parties that summoned law
enforcement. *Id.* The officers had limited information when they arrived and could not determine
if Gould had a firearm on his person or nearby. *BWC Officer Guerriero; BWC Officer Strzelecki.*
Gould was wearing a multicolored bathing suit, which was the description of the armed individual
as described by the caller. *Audio.* Gould was not following commands, was defiant, and had started
to retreat. *BWC Officer Guerriero; BWC Officer Strzelecki.*  Gould was detained based on these
facts. This type of detention is also known as a Terry stop[8].

In cases involving an investigatory detention, it is necessary for the State to prove that the
officer had a reasonable suspicion of criminal activity that would support the detention. Id.; see
also J.H.M. v. State, 945 So.2d 642, 645 (Fla. 2d DCA 2006); J.R.P. v. State, 942 So.2d 452, 453-
54 (Fla. 2d DCA 2006); Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001); S.G.K v. State,
657 So.2d 1246, 1247 (Fla. 1st DCA 1995). Whether an officer's suspicion is reasonable is
determined by the totality of the circumstances which existed at the time of the stop and is based
solely on facts known to the officer before the stop. See Travers v. State, 739 So.2d 1262 (Fla. 2d
DCA 1999)

In determining the lawfulness of Officer Guerriero's actions a court must determine
whether there was reasonable suspicion to detain Gould and frisk him for weapons. Section
901.151(2), Florida Statutes (2023), which governs detentions, provides:

> Whenever any law enforcement officer of this state encounters any
> person under circumstances which reasonably indicate that such
> person has committed, is committing, or is about to commit a
> violation of the criminal laws of this state or the criminal ordinances
> of any municipality or county, the officer may temporarily detain

---

[8] Terry v. Ohio, 392 U.S. 1 88 S.Ct. 1868, 20L.Ed.2d 889(1968).

> such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.

The founded suspicion needed to justify an investigatory stop is fact specific to each case, but it is to be based upon the totality of the circumstances as viewed by an experienced police officer…Additionally, the officer may detain the individual even at gunpoint and/or by handcuffs for the officer's safety without converting the Terry stop into a formal arrest. Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000).

"The ultimate standard set forth in the Fourth Amendment is reasonableness." Hilliard v. State, 285 So. 3d 1022, 1024 (Fla. 1st DCA 2019) (quoting Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action." State v. Johnson, 208 So. 3d 843, 845 n.2 (Fla. 1st DCA 2017) (alteration in original) (quoting Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 164 L.Ed.2d 650 (2006)).

In this case it was reasonable for Officer Guerriero to be on heightened awareness while responding to a gun call. It was also reasonable for Officer Guerriero to require Gould to refrain from putting his hands in his pockets, as she cannot see what is in his pockets. That fact was readily apparent when Gould produced a phone from within his pocket. It's reasonable for Officer Guerriero to fear that Gould may have a firearm concealed on his person. Guerriero could not see if Gould possessed a firearm in the small of his back or in his pockets . In response to Guerriero's commands for Gould not to conceal his hands, Gould became argumentative and began to walk backwards.

A factor in determining whether an officer had reasonable suspicion, includes the suspects behavior or anything unusual about the situation based on the officer's experience. Calhoun v State, 308 So.3d 1110, (Fla. 3rd DCA, 2020) quoting Huffman v. State, 937 So. 2d 202, 206 (Fla. 1st DCA 2006). Seemingly innocent behavior can provide the basis for reasonable suspicion Id. Guerriero in her declaration stated that she had never had a "victim" behave in the manner Gould behaved. Guerriero Dec. ¶27.  Gould failed to dispel Officer Guerriero's fear that he was not armed. Instead of complying with the command not to put his hands in his pockets, Gould defiantly challenged her authority claiming she wasn't his mommy. *BWC Guerriero*. Instead of immediately dropping his cellphone as ordered Gould debated the appropriateness of the order. Id. While ignoring the commands of Officer Guerriero, he began to retreat, looking like he might be moving toward the black object on the ground. Id. Given the circumstances, reasonable suspicion objectively existed to justify a Terry[9] stop of Gould to investigate whether he was the armed party in the disturbance. Because reasonable suspicion existed, the officers could lawfully detain Gould to ascertain his identity and ensure their safety by determining he was not armed[10]. See Fla. Stat. § 901.151(2).

## B.  Officer Guerriero had probable cause to arrest Gould

Officer Guerriero had probable cause to arrest Gould. Under federal law, "cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003)). The Eleventh Circuit further recognized that:

> This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy

---

[9] Terry v. Ohio, 392 U.S. 1 88 S.Ct. 1868, 20L.Ed.2d 889(1968).
[10] This incident occurred prior to the legislation taking effect in the state of Florida which authorized a person to carry a concealed weapon or firearm without a concealed weapons license.

information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Id. (internal citation omitted).

Therefore, "[a]lthough probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Id. (citing Lee v. Ferraro, 284 F. 3d 1188, 1190 (11th Cir. 2002.))

Consistent with federal law, Florida law provides that, "probable cause to arrest exists when a reasonable man [or woman], having the specialized training of a police officer, in reviewing the facts known to the arresting officer prior to the actual time of arrest, would come to the conclusion that a felony is being, or has been, committed by the person to be arrested." State of Florida v. Profera, 239 So.2d 867, 868-69 (Fla. 4th DCA 1970) (citing Rogers v. State, 30 So.2d 629 (Fla. 1947) and Diaz v. State, 43 So.2d 13 (Fla. 1949)). The court in Profera recognized that:

> [P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime has been committed by the person to be arrested. Id. (quoting Jackson v. United States, 302 F.2d 194 (D.C.Cir. 1962)); see also State v. Riehl, 504 So.2d 798,800 (Fla. 2d DCA 1987) (holding that "[i]n order to establish the probable cause necessary to make a valid arrest, however, it is not necessary to eliminate all possible defenses"). Furthermore, the court noted that "[t]he test of probable cause is not what reaction victims – or judges – might have, but what the totality of the circumstances means to police officers. Conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." Id. (quoting Davis v. United States, 409 F.2d 458 (D.C.Cir. 1969)).

A review of the evidence in this matter clearly reveals that Officer Guerriero had probable cause to arrest Gould. Both of Guerriero's supervisors who responded to the scene and viewed the videotaped evidence agreed that probable cause existed for the arrest. *Beath, Arbitration Transcript, Vol I, Pg.116, Ln 19*; *Glass, Arbitration Transcript, Vol II, Pg.163, Ln 9*. Sergeant Beath gave sworn testimony in an arbitration hearing held following the incident. In the hearing, Beath stated:

> Q   And the elements of that are resist, obstruct and oppose.  Correct?
> A   Yes
> Q   The lawful execution of any legal duty.  I shortened it a little bit but that's the crux.  Right?
> A.  Yes
> Q   And we can, I think you and I can agree that her responding to a call was a legal call for duty. Correct?
> A   Yes.
> Q   And it was a gun call.  Right?
> A   Yes.
> Q   And when she walked up, whether his hand was near or in his pocket, she gave him an order not to do that.  Correct?
> A   Yes.
> Q   And he then subsequently immediately defied that order.  Correct?
> A   Yes.
> Q   He went to his pocket?
> A   Yes.
> Q   And then he -- we talked about he bladed, dropped his left hand?
> A   Yes.
> Q   And then he pointed at her with the object in the right hand?
> A   Yes.
> Q   Which was the phone.  All right?  And that violates the statute, doesn't it?
> A   Yes.
> Q   The letter of the statute.  Correct?
> A   Yes.

Beath, *Arbitration Transcript, Vol I, Pg.118, Ln*.

In the same arbitration Sergeant Glass stated:

> Q   And would you agree with me that under resisting an officer's lawful command, that statute, technically speaking under the letter of the law, he just violated the law by not listening to her initial command?
> A   On the initial command?
> Q   Yes.

A    Yes.  Under the letter of the law.

Gould was charged with violating Florida Statute § 843.02. "[T]o support a conviction for obstruction without violence [under § 843.02], the State must prove two elements: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So.3d 1181, 1185-86 (Fla. 2009).

In this matter, the Palm Beach Gardens Police Department ("PBGPD") received three calls about the disturbance, one from Gould, one from Benedetto Salvia ("Salvia") and one from Anna Ivanova. *Audio.* Gould called to report that Salvia threatened him with a gun, and Salvia called to report Gould was harassing his wife. *Id.* In determining whether an officer was engaged in the lawful execution of a legal duty, courts must apply the standards governing the officer's duty at the point that the resistance occurs. See Tillman v. State, 934 So.2d 1263, 1271 (Fla. 2006).

The term lawful execution of duty essentially requires the officer be engaged in a substantive responsibility, such as conducting a criminal investigation or making an arrest. Simply driving around on patrol and making contact with people and asking for their names to check for warrants on the person is insufficient.  The officer must be executing an arrest based on probable cause or conducting a specific criminal investigation where he has reasonable suspicion to detain the defendant. See Steel v. State, 537 So. 2d 711 (Fla 5th DCA, 1989). The investigation of a crime by a police officer is an execution of a legal duty.  V.L. a child, v. State, 790 So. 2d 1140 (Fla. 5th DCA, 2001)

Officer Guerriero was responding to a 911 call for service. *Audio.* Both Gould and Salvia had called 911 accusing the other of committing crimes. *Id.* Officer Guerriero was investigating the allegations of both Gould and Salvia. *Id.*  Gould's call to the police is significant in the analysis

because the mere possession of a firearm is not a crime in Florida. Had the officers not been investigating a crime, for purposes of Fla. Stat. §843.02, they would merely be "on the job." However, Gould was reporting (at the minimum) the crime of reckless display and potentially the felony of aggravated assault. _Audio_. It follows that since Gould was reporting a crime, the responding officers were investigating a crime which places them in the execution of a legal duty.

The next step in the analysis, is Gould's conduct. To satisfy the statute, Gould's conduct must create an obstruction of a legal duty. Fla. Stat. §843.02 (2023). Gould's actions, by his words, conduct, or a combination thereof, constituted obstruction or resistance of a lawful duty.

In N.H. v. State, police officers heard a sound "like a loud yell" emanating from a female voice in the school parking lot. N.H. v. State, 890 So.2d 514, 515 (Fla 3rd DCA, 2005). The officers observed N.H. running away from the lot and attempted to catch up with N.H., but N.H. continued to run, changing directions and darting through moving traffic when he saw the police in pursuit. Id. When eventually stopped, N.H. refused to provide his name or answer any other questions. Id. N.H. was very aggressive and agitated, cursing and being otherwise disruptive. Id. He also refused a police request to sit down so that the police could attempt to accomplish their investigatory duty Id. N.H. was arrested for resisting an officer without violence in violation of Fla. Stat. § 843.02. Id. at 516. The District Court, on appeal, held that the totality of N.H.'s conduct toward the police (i.e., refusing to identify himself, refusing to sit and thus comport himself so that the officers could investigate and finally physically threatening them) was sufficient to support the trial courts determination that N.H. had resisted without violence. Id. at 516.

In Zivojinovich v. Barner, Zivojinovich was asked by the law enforcement officers to accompany them to a back hallway while they issued him a trespass warning. Zivojinovich v.

Barner, 525 F. 3rd 1059, 1071, (11th Cir., 2008) Before escorting Justin out, the deputies told him to sit. He did for a moment, but then he stood up again. Id.  The Court held,

> "Like the defendant in N.H., Justin [Zivojinovich] disobeyed a command by members of law enforcement to sit while they executed their lawful duties. Although Justin's actions were not as egregious as those of the defendant in N.H., the standard for probable cause is significantly lower than the proof-beyond-a-reasonable-doubt standard applied to convictions." Id. at 1072.

In this case, Officers were responding to investigate a disturbance involving a firearm. Audio.  As officers arrived on the scene, they didn't know who the parties were, but they were told that at least one of the parties had a firearm. Id. It is undisputed that Officer Valerio did not tell the arriving officers that he met with Gould in the parking lot, and he was unarmed. Id.; BWC Valerio. Gould matched the last description that officers were given of the armed party. Audio. When the officers arrived, Gould ignored commands to keep his hands out of his pocket and put down his cellphone. BWC Officer Guerriero; BWC Officer Strzelecki.  Similar to both N.H and Zivojinovich, once detained Gould attempted to get up after being ordered to sit down. Id. Gould also refused several requests to identify himself.  Id. (See K.A.C. v. State, 707 So.2d 1175 (Fla. 3rd DCA 1998) (failure of juvenile who was the subject of a lawful investigatory stop for possible truancy violation to identify himself and reveal where he went to school sufficient to constitute a violation of § 843.02). Additionally, Gould's combative nature was also exhibited when he disparaged officer's military service, lied and claimed he was a lawyer and asked to be arrested multiple times. Gould Deposition, pg.30, Ln 1, pg.25, Ln.4., BWC Officer Guerriero.

**C. Even if Officer Guerriero did not have probable cause for the arrest, she had arguable probable cause, thereby and entitling her to qualified immunity.**

A finding of "arguable probable cause" is sufficient to invoke the defense of qualified immunity. Von Stein v. Brescher, 904 F2d 572, 579 (11th Cir. 1990) ("[i]n determining whether

qualified immunity exists, the issue is not probable cause in fact, but arguable probable cause"). The "arguable probable cause" standard is well established as an appropriate reference point for measuring qualified immunity:

> In making this determination, [entitlement to qualified immunity] the central issue is whether…the officer had arguable probable cause…[t]he standard arguable probable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.' As we have emphasized before, arguable probable cause is distinct from actual probable cause.

Gold v. City of Miami, 121 F.3d 1442, 1446 (11ᵗʰ Cir. 1997) (internal citations omitted); see also, Knight v. Jacobson, 300 F.3d 1272 (11ᵗʰ Cir. 2002) ("[a]n officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was arguable probable cause for the arrest, which is a more lenient standard than probable cause"). Moreover, "this accommodation for reasonable error exists because officials should not err on the side of caution because they fear being sued." Gold at 1446. Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. Skop v. City of Atlanta, 485 F.3d 1130, 1137–38 (11th Cir.2007) Showing arguable probable cause does not, however, require proving every element of a crime. Scarbrough v. Myles, 245 F.3d 1299, 1302–03 (11th Cir.2001). If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply. *Skop, 485 F.3d at 1138.*

Officer Guerriero had, at a minimum, arguable probable cause, but according to her supervisors, she had actual probable cause. *See Beath and Glass Arbitration supra,* Both police sergeants testified under oath, that Officer Guerriero had probable cause to make the arrest under the letter of the law. It is undisputed that officer Guerrero was executing a legal duty. Under Florida law, responding to a call for service involving a crime is executing a legal duty. Francis v. State,

736 So. 2d 97 (Fla. Dist. Ct. App. 1999). The facts most favorable to Gould are as follows: Officer Guerrero was responding to a dispatched call of a disturbance involving a gun. *Audio*. Officer Guerriero gave Gould a command to refrain from reaching into his pocket. *Id*. A command that is reasonable, considering someone is reportedly threatening another person with a firearm. *Id*. Assuming arguendo that Gould misunderstood Officer Guerriero's command as a request, or a favor, - those facts do not undermine Officer Guerriero to claim immunity. The obstruction goes beyond Gould's refusal to keep his hands visible. The obstruction begins at the refusal to not conceal his hands but as in N.H., it's the totality of the defiance to follow any commands during the investigation.

### D.  <u>Gould's excessive force claims fail as a matter of law</u>

Gould alleges that Officer Guerriero used excessive force to affect his arrest. However, Officer Guerriero is entitled to the defense of qualified immunity as no excessive force was required or utilized. There has been no evidence that excessive force was used other than Gould's allegations in the complaint. Gould has sought no treatment for any injury, mental or physical. *Gould Depo. Pg. 109, Ln. 24*.  Gould was handcuffed and taken into custody without the use of any force. As such, Officer Guerriero is entitled to the defense of qualified immunity.

Courts have held that an officer's drawing a weapon and ordering a person stopped, to lie on the ground does not necessarily constitute excessive force during an investigatory stop. See <u>Courson v. McMillian,</u> 939 F.2d 1479 (11th Cir.1991) (holding that a deputy did not use excessive force during an investigatory stop in requiring the female companion plaintiff, who was never arrested, and the two males, who were later arrested, to lie face down on the ground with a shotgun pointed at them).

In <u>Courson</u>, the three detainees had not exited the vehicle when first instructed to and had difficulty getting out of the car; one male was verbally abusive and challenged the deputy's authority to conduct the stop. <u>Id</u>. at1496. While waiting for backup and while the two males were arrested, handcuffed and taken away, the deputy with a shotgun still required the plaintiff female to lie on the ground for about thirty minutes even though ultimately, she was told she was free to go. <u>Id</u>. Reversing the district court's denial of qualified immunity, this Court held that the deputy was "acting under the exigencies of the immediate situation," and "used no unreasonable force" with respect to the plaintiff or her male companions. <u>Id</u>.

In this case, after refusing commands to not reach into his pockets, and appearing to retreat backwards from the scene toward an object, Gould was directed by Officer Guerriero at gun point to lie on the ground. *BWC Guerriero; BWC Strzelecki.*  It is not objectively unreasonable to point a firearm at a non-compliant person suspected to be armed during the investigation of a gun call. Gould was not acting like a victim. *Guerriero Dec ¶27.*  Gould was in the prone position for less than thirty (30) seconds before he was handcuffed and moved to the seated position. *BWC Guerriero.* While handcuffed, Gould continued to be defiant, by refusing to answer questions, taunting the officers with insults and demanding to be arrested. *BWC Guerriero; BWC Strzelecki.* Gould was ultimately placed in a police car by responding officers while the officers completed their investigation. *BWC Guerriero.*

### E. <u>Guerriero is entitled to qualified immunity on the false arrest/ false imprisonment claim.</u>

Officer Guerriero initially detained Gould while investigating a disturbance, where one party was said to be armed. *BWC Guerriero.*  Based on his conduct, discussed in section B, Gould was ultimately arrested for Resisting an Officer. *Guerriero Dec ¶44.* To prevail on a claim for

false imprisonment or false arrest, a plaintiff must show that he was "unlawfully restrained under color of authority." Everett v. Fla. Inst. of Tech., 503 So.2d 1382, 1383 (Fla. 5th DCA 1987). The existence of probable cause is a defense to false imprisonment. See Daniel v. Vill. of Royal Palm Beach, 889 So.2d 988, 990 (Fla. 4th DCA 2004).

To state a claim for false arrest under § 1983, a plaintiff must show that his warrantless arrest was made without probable cause. Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990) ("A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."). "The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest." Id., at 1505-06. As demonstrated supra, Gould's arrest was based on probable cause in compliance with Florida statute. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. Dempsey v. Vaughn, 6:21-cv-1763-PGB-LHP (M.D. Fla. Oct. 3, 2023).

Here, there is no question that Officer Guerriero was engaged in the lawful execution of a legal duty - it is undisputed that she was dispatched to investigate a potential criminal offense following a call by Gould, Salvia and Salvia's wife. _Audio_. Officer Guerriero's interactions with Gould were during an attempt to investigate the potential crimes. _See_ Francis v. State, 736 So.2d 97, 99 n.1 (Fla. 4th DCA, 1999) (holding that an officer's investigation of a 911 call constitutes the lawful execution of a legal duty). Gould's conduct discussed in Section "B" _supra_ obstructed Officer Guerriero in that lawful duty.

When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had "arguable" reasonable suspicion to support an investigatory stop. See Williamson v. Mills, 65 F.3d 155, 157 (11th Cir.1995) The standard to be

applied is not whether a reasonable officer faced with the same circumstances would have believed that reasonable suspicion existed, but merely whether a reasonable officer could have so believed. Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). Whether the officer's suspicion ends up being mistaken is immaterial so long as it was reasonable. Id. at 1304. A police officer who conducts a pat-down search or who applies handcuffs during an investigatory stop must be able to articulate specific, objective facts which, when considered with the totality of the surrounding circumstances, would cause a reasonably prudent person to believe that the individual is dangerous. United States v. White, 593 F.3d 1199, 1202-03 (11th Cir. 2010). Although a police officer who conducts a pat-down search or utilizes handcuffs during an investigatory stop without reasonable suspicion violates the Fourth Amendment, he is nevertheless entitled to qualified immunity from civil liability if he had arguable reasonable suspicion. See Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

Officer Guerriero had arguable reasonable suspicion to conduct an investigatory stop of Gould. Officer Guerrero was responding to a call for service that described one of the parties as possessing a firearm. *Audio*. Upon Officer Guerriero's arrival she was unaware if Gould was the party with the firearm. *Id.* Gould refused to keep his hands out of his pockets, refused to follow commands, and argued with Officer Guerrero challenging her authority. *Id*. Gould's detention was permissible to insure the safety of the officers on scene.

### F. Guerriero is entitled to immunity pursuant to Fla Stat. §768.28(9)(a)

Florida Statute Section 768.28(9)(a) provides generally that no officer of the state or its subdivisions shall be held personally liable in tort for any injury or damage suffered as a result of any act in the scope of his employment unless the officer acted in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property.

Fla. Stat § 768.28 (2023).

Again, Officer Guerriero had actual, if not arguable probable cause to arrest Gould for resisting an officer pursuant to Fla. Stat. § 843.02. But probable cause notwithstanding, the Eleventh Circuit has noted that Florida courts equate bad faith with the actual malice standard. Gurrera v. Palm Beach County Sheriff's Office, 657 Fed Appx. 886, 892 (11th Cir. 2016) (citing, Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ., 724 So.2d 163, 167 (Fla. Dist. Ct. App. 1998).   The standard has been interpreted as "conduct much more reprehensible than mere intentional conduct" and conduct worse than gross negligence.   Coleman v. Hillsborough County, 41 F.4th 1319, 1325 (11th Cir. 2022) (granting summary judgment on an arrest claim where no reasonable jury could find that the officers acted with actual malice or wanton and willful disregard in arresting an individual, even if they lacked probable cause.) To meet the outrageousness standard, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" such as would lead "an average member of the community" to exclaim, "Outrageous!" Tarantino v. Citrus Cnty. Gov't, No. 5:12-CV-434-OC-32PRL, 2014 WL 4385550, at *16 (M.D. Fla. Sept. 4, 2014)

Officer Guerriero was responding to an armed disturbance. *Audio*.   Based on Gould's conduct, as discussed in section B, Gould was ultimately arrested for Resisting an Officer. *Guerriero Dec¶ 44*.   Gould's arrest was based on (at a minimum) arguable probable cause. Nothing about the actions of Officer Guerriero were sufficiently aggravated to satisfy the willful and wanton standard.   In the BWC recordings of the incident it does not appear that Officer Guerriero's actions were totally unprovoked, as Gould appears to be uncooperative and resistant. *BWC Guerriero*.

### G.  Officer Guerriero is entitled to qualified immunity

It is well established that "[q]ualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lumley v. City of Dade City, Florida, 327 F.3d 1186, 1193-1194 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). In order to receive qualified immunity, an "official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (quoting Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). "Once the defendants establish that they were acting in their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Id. (citing Vineyard, 311 F.3d at 1364(emphasis added)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." Mikko v. City of Atlanta, Ga., 857 F.3d 1136, 1144 (11th Cir. 2017) (citing Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."

In this case, Officer Guerriero was acting in the scope of her discretionary authority.  A police officer's "decision of whether to enforce the law by making an arrest is a basic judgmental

or discretionary function that is immune from suit." <u>Peguero v. Delaurentos,</u> No. 11-20069-CIV, 2011 WL 13223704, at *2 (S.D. Fla. May 12, 2011). Officer Guerriero's decision to detain, or even arrest Gould was a discretionary function.

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets its burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Moreover, courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either."The facts of this case are clear.  Officer Guerriero had at a minimum, arguable probable cause to arrest Gould and did not violate any constitutional right.

For an asserted right to be clearly established for purposes of qualified immunity, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what [the officer] is doing' violates federal law." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1164–65 (11th Cir. 2000). The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity. <u>Id</u>. A reasonable officer's awareness of the existence of an abstract right, such as a right to be free of excessive force or an investigatory stop without reasonable suspicion, does not equate to knowledge that his conduct infringes the right. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." <u>Id</u>. A

police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred. Id.

Officer Guerriero was on a high-risk gun call. Gould refused a reasonable command to not reach in his pockets and continued to defy commands. *BWC Guerriero*. There is no clearly established law that establishes this conduct is not an interference with an officer's execution of a legal duty. Officer Guerriero is entitled to qualified immunity based on her arguable probable cause.

## CONCLUISION

Based on arguments presented herein, Officer Guerriero respectfully requests the Court grant final summary judgment in her favor on all counts set forth against her in Gould's Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2024, I electronically filed the foregoing Motion for Summary Judgement with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties listed below via electronic mail.

| | |
|---|---|
| /s/ Ralph E. King III | /s/ Gregory J. Morse |
| Ralph E. King III. Esq. | Gregory J. Morse, Esq. |
| King \| Morse, P.L.L.C. | King \| Morse, P.L.L.C. |
| 2240 Palm Beach Lakes Blvd., 300   & | 2240 Palm Bch lakes Blvd., 300 |
| West Palm Beach, FL 33409 | West Palm Beach, FL 33409 |
| (561) 557-1079 | (561) 651-4145 |
| E-Mail: Rick@kingmorselaw.com | E-Mail: greg@morselegal.com |
| Kristen@kingmorselaw.com | tiffany@morselegal.com |
| Florida Bar No.: 0090473 | Florida Bar No.: 0505099 |
| Attorney for Def. B. Guerriero | Attorney for Def. B. Guerriero |