# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80022-DMM

RYAN GOULD,
    Plaintiff,

vs.

BETHANY GUERRIERO, and
JOSEPH STRZELECKI,

## DEFENDANT, BETHANY GUERRIERO'S NOTICE OF SERVING ANSWERS AND OBJECTIONS TO PLANTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant, BETHANY GUERRIERO ("GUERRIERO"), by and through its undersigned attorneys and files this Notice of Serving Answers and Objections to Plaintiff's First Set of Interrogatories certified as being served on April 1, 2024.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2024, the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

/s/ Ralph E. King III
Ralph E. King III. Esq.
King | Morse, P.L.L.C.
2240 Palm Beach Lakes Blvd., 300
West Palm Beach, FL 33409
(561) 557-1079
E-Mail: Rick@kingmorselaw.com
       Kristen@kingmorselaw.com
Florida Bar No.: 0090473
Attorney for Def. B. Guerriero

&

/s/ Gregory J. Morse
Gregory J. Morse, Esq.
King | Morse, P.L.L.C.
2240 Palm Bch lakes Blvd., 300
West Palm Beach, FL 33409
(561) 651-4145
E-Mail: greg@morselegal.com
       tiffany@morselegal.com
Florida Bar No.: 0505099
Attorney for Def. B. Guerriero

1

## SERVICE LIST

**Counsel for Plantiff**
**James M. Slater, Esq. (111779)**
Slater Legal, PLLC
113 S. Monroe Street
Tallahassee, FL 32301
Tel: 305.523.9023
james@slater.legal

---

**Counsel for Defendant, Strzelecki**
**Scott D. Alexander, Esq. (057207)**
Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
Tel: 954.463.0100
Fax: 954.463.2444
alexander@jambg.com
cintron@jambg.com ; andrews@jambg.com

**Counsel for Defendant, Guerriero**
**Gregory Morse, Esq. (0505099)**
**Ralph E. King III, Esq. (90473)**
KING|MORSE PLLC
2240 Palm Beach Lakes Blvd.
Suite 300
West Palm Beach, FL 33409
Tel: 561.557.1079
Tel: 561.651.4145
greg@morselegal.com
rick@kingmorselaw.com

## INTERROGATORIES

1. Please state the name and title of each person who participated in responding to these interrogatories and the interrogatory number(s) they participated in responding to.

   **Answer:** The following persons participated in the preparation of these responses. Bethany Guerriero, with the assistance of counsel.

2. State the name, address, and telephone number of each person likely to have discoverable information relevant to disputed facts alleged in this case. For each person identified in this answer, identify the subject(s) of the information likely to be known.

   **Answer:**
   a. Codefendant Joseph Strzelecki: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   b. Officer Glass: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   c. Officer Beath: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   d. Officer Valerio: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   e. Officer Pierce: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   f. Officer Stairs: Palm Beach Gardens PD 10500 N. Military Trail Palm Beach Gardens. Fl.,33410 – incident and arrest
   g. All individuals identified in IA-23-003 and PBGPD Case # 23-002514

3. Describe your educational history. Include the degree or certificate, if any, that you received from each such school, college, or specialized course.

   **ANSWER:**
   - I graduated HS from Sachem HS on Long Island NY in 1993.
   - I obtained an associate degree in criminal justice from Suffolk County Community College on Long Island NY in 1995.
   - Completed my EMT certification in 1994 while attending Suffolk County Community College.

- In 1996 I attended Northeastern in Boston (pre law program) for one year and returned to NY.

- I transferred to FAU (Florida Atlantic University) in 1999 and in 2003 I graduated with my Bachelor of Science degree in Criminal Justice. 1999 I took the certification classes at Palm Beach State College for EMT and got state certified.

- In 2015 I attended the Institute for Integrative Nutrition (online program overseen by NYU - New York University) and obtained a certification in 2016 as a certified coach for Holistic Nutrition.

4. Describe your employment history since graduating high school, including the name and address of each company or agency, the time period of employment, the name of each supervisor, and the reason for leaving each such job.

    ANSWER:

    - Palm Beach Garden Police Department; Police Officer from January 2004 – August 2023.

    - Employed at Starboard Touch Yacht &amp; Auto Detailing from 06/2002-10/2003. Self- Owned company.

    - Employed at Lindburger's Resturant at 731 Northlake Blvd NPB, 33408 from 5/03-9/03. Supervisors name is Shawn Dainelson. Reason for leaving is Finishing School and self-owned business was getting busier.

    - Employed at Bethesda Memorial Hospital at 2815 S. Seacrest Blvd Boynton Beach, FL 33472 from 9/01-8/02. Supervisors name is Paula Friend. Reason for leaving is school and business.

    - Employed at Pfizer Inc. (Adams Division) at 235 East 42nd Street New York, New York 10017 from 4/99-10/01. Supervisors name is Richard Cunningham. Reason for leaving is National Layoff.

    - Employed at Enterprise-Rent-a-Car at 280 Toney Penna Dr. Jupiter, FL 33458 from 1/98-3/99. Supervisors name is Jesse Ostrum. Reason for leaving is school.

- Employed at Eckerd Pharmacy at 6358 Forest Hill Blvd. WPB, FL 33415 from 7/97-1/98. Supervisors name is Mary Pellicone. Reason for leaving is school and offered a job with more money and flexible hours.

- Employed at The Rinx at 660 Terry Rd. Hallppauge, NY 11788 from 6/93-1996. Supervisors name is Randy Nash and Tom Drum. Reason for leaving is going to school out of state.

- Employed at OB Davis Funeral Home at 4839 Nesconset Hwy Port Jefferson, NY 11776 from 5/94-1996. Supervisors name is Scott Kramer. Reason for leaving is going to school out of state.

- Employed at Sachem School District at 212 Smith Road Ronkonkoma, NY 11779 from 1995-1996. Supervisors name is Karen Peterson. Reason for leaving is going to school out of state.

- Employed at Brookhaven-Roe YMCA at 155 Buckley Rd. Hettsville, NY 11742 from 1994-1995. Supervisors name is Brian. Reason for leaving is school.

- Employed at The Bavarian Inn at 422 Smithtown Blvd. Lake Ronkonkoma, NY 11779 from 1993-1996. Supervisors name is Willlie Huber. Reason for leaving is going to school out of state.

5. With respect to your employment at PBGPD, please state: a. each position you held; b. the dates on which you were appointed to each position; c. each division or unit to which you were assigned; d. the date on which any assignment terminated and the reason it terminated; e. the dates you were promoted or demoted to each rank; and b. the dates of all education and training you received for your employment as a law enforcement officer/detention deputy with PBGPD, describing the nature of each such education or training.

**ANSWER:**

In June of 2004, I began my FTO program after being hired by the City of Palm Beach Gardens in October of 2003. I was sponsored by PBGPD to attend the Police Academy at Palm Beach State College. I graduated the Police Academy as the class leader.

2004 after completing the field training program, I worked on a midnight

shift.
2006 became an FTO (Field Training Officer)
2006 joined CNT/HNT (remained on team until termination in 2023)
2008 went to the TAC Unit (undercover work and surveillance)
2010 went to the Community Involvement Unit (ran Explorer Program, ran Juvenile First Offender Program)
2012 returned to road patrol and was reinstated as an FTO
2014 made the SWAT team (stayed on almost 2 years)
2021 made the EFF team (Emergency Field Force - Search & Rescue) held a position on the team up until termination.
Taught women's self-defense, was a CPR instructor, and was a member of the PAT unit (Physical Ability Testing Unit)

Numerous, numerous classes, certificates earned and trainings attended over the last 20 years.

Please refer to my training file, which was forwarded from HR and contains all classes, certifications, accommodations and awards complete with dates.

6. Identify all persons with whom you spoke in person, on the radio, or on the phone immediately before, during, and immediately after the incident on May 9, 2023, involving Gould (the "Incident"). For each such person identified a. state your relationship to such person, and b. state the substance of your conversation(s) with each such person.

   **ANSWER:**

   - Immediately before the incident I was with Officer Strzelecki. Ofc. Strzelecki is a co-worker. I don't recall the conversation prior to the incident but would characterize it as small talk.

   - In the wake of the incident, I spoke with Sgt. Glass. I have known Sgt. Glass for close to twenty years. We are co-workers. The substance of the conversation was captured on the BWC but was about the incident and then my medical condition.

   - I spoke Sgt. Beath, at about the same time I spoke to Sgt. Glass. I. have known Sgt. Beath for approximately nineteen years. I would characterize our relationship as "friends." The substance of the conversation was captured on the BWC but was about the incident and then my medical condition. Later at the hospital, Sgt. Beath told

6

me that they un-arrested Mr. Gould and that I was in trouble. He later told me that he would bet $20 that the case wouldn't get to IA.

- Sgt. Pearce was the last to arrive. Sgt. Pearce and I were hired together. I would characterize our relationship as "friends." The substance of the conversation was captured on the BWC but was about the incident and then my medical condition.

- I spoke with K-9 Officer Mike Valerio. I would characterize our relationship as "friends." The substance of the conversation was captured on the BWC but was about the incident and then my medical condition. He also called me the day following to check on my medical condition.

- I spoke with Ofc. Drew Bradley and asked him to call my wife. Ofc. Bradley is a friend. The conversation was just having him tell my wife to come to the hospital.

- I spoke to my wife Rachel Lively – the content of the conversation is privileged.

- I also spoke with Kellen Stairs. I would characterize our relationship as "friends." The substance of the conversation was captured on the BWC but was about the incident.

- I spoke with Dispatch regarding the call over the radio. The contents are captured on the radio recording.

7. Describe in detail everything that happened during the Incident. Please begin your answer at the moment you either arrived at the Incident location, or first learned that there was an Incident that occurred on May 9, 2023, whichever occurred first, until the time you left the incident location. Your answer should include information you know from your own personal knowledge as well as information you learned from others and should state the source of such information. Include everything you heard, saw, said, and did. If you heard another person speak, include the name of the person if you know the person's name or a description of the person speaking if you do not know the person's name. Include the time and place that each event occurred to the best of your recollection. A copy of an incident report or the text of a report narrative is not a sufficient response to this interrogatory.

ANSWER: Objection. The requirement that Officer Guerriero provide a step-by-step analysis of her actions that were captured on video is overbroad and unduly burdensome. Without waiving that objection, I was at district park with Officer Strzelecki when we received a call from dispatch regarding an armed assault at a community pool. Officer Strzelecki was the primary I was dispatched as a backup. Over the radio I heard that K-9 Valerio was close to the call and also responding. I heard Valerio say over the radio that he was 10-12 (meaning he was with someone) by the pool. He did not clarify who he was with, nor that a firearm or other weapon was secured. As I arrived at the development, I saw on my computer screen, and I recall reading that "…wearing a multicolored bathing suit – gun in groin area."

I parked parallel to Ofc Valerio's K-9 vehicle and as I was getting out of my vehicle, I saw in my left peripheral view a w/m wearing multicolored shorts (later identified as Mr. Gould.) emerge from the area of the community office where the pool is located. I noticed something black by the parking stop, I did not know if it was a bag or clothing. As I looked over the hood of the police Tahoe, I see both of Mr. Gould's hands disappear below the Tahoe level. I respond by saying, "Hey man, do me a favor, and take your hands out of your pockets." Mr. Gould disregarded my command and immediately places his right hand in his pocket, while simultaneously stating that he was not the one with "the fucking gun!"

Mr. Gould then bladed his body and began to back away. I presented my service weapon and directed him to get on the ground. He continued his verbal defiance but ultimately complied. Mr. Gould assumed a proned position and was placed into handcuffs. I then assisted him into a seated position and told him to sit up. Mr. Gould defied my direction to sit and attempted to stand up by pushing against my legs with his back. I again instructed him to sit down. Mr. Gould and I engaged in some verbal banter while awaiting a supervisor.

I spoke with Sergeant Glass and explained the situation to him. Sgt. Glass directed me to go and speak with the female complainant (Ana Ivanova). I walked to the pool area with Ofc. Stairs. Once at the pool area, K9 Valerio provided the information he obtained from Ms. Ivanova and her husband Migliore Salvia. I then spoke with Mr. Migliore Salvia who provided information about his encounter with Mr. Gould. I left the pool area and was met by Sgt. Beath on the other side of the building. Sgt. Beath, Sgt. Glass

and possibly Ofc. Kellen and I went into the community office to retrieve the community pool video. Once inside my watch indicated that my heart rate was elevated, and I began to feel a severe crushing sharp pain in my left chest. My breathing became labored, and Sgt. Glass called the medics. I left the scene in an ambulance.

8. Identify all written statements, memoranda, and notes, including drafts, and any oral reports or statements you have made to any person regarding the Incident. For each such report or other account, please state: a. the date, time, and place of each such report or other account; b. each person to whom you made each such report or account; c. the nature and substance of each such report or account; and d. the name and address of the custodian of each such report or other account.

   **ANSWER: There are no written statements, memoranda or notes including drafts regarding this matter. There are statements that are captured in my BWC the date of the incident. The only official oral statement that I made was to Sgt. Grossman in internal affairs on July 28, 2023. The PBGPD is the custodian of that record.**

9. State everything you heard Gould say and everything you or any other person said to him during any portion of the Incident. Please include: a. each statement made to the best of your recollection; b. the time and place of each statement; c. identify each person present when the statement was made; and d. if the statement was recorded in any manner, identify the documents in which it was recorded.

   **ANSWER: The best evidence of what Gould said is what is captured on the BWC.**

10. Identify all communications regarding the Incident, whether written or oral, that you have had with any member of PBGPD or any other persons from the date of Incident to the present, including but not limited to communications with Migliore Salvia and Anna Ivanova. This includes in-person conversations, telephone calls, emails, text messages, and any form of electronic communication. Identify all materials or documents that you have sent to or received from any such person regarding the incident.

    **ANSWER: During the incident my interactions with other PBGPD officers were captured on my (and their) BWC. As I recall I spoke with Sgt. Beath, Sgt. Glass, Sgt. Pearce, Ofc. Stairs, Following the incident I spoke with**

9

**Sergeant Grossman Chief Shannon I and received an email from Sgt. Beath and Captain Garcia.**

11. At the time of the Incident, please identify all training, instruction, orders, bulletins, Policies, or other information you received as a PBGPD employee, whether formal or informal, verbal or written, concerning crisis intervention training or similar mental health intervention.

    **ANSWER: During my tenure with the PBGPD I have attended many trainings the documentation is included within the provided training file.**

12. At the time of the Incident, please identify all training, instruction, orders, bulletins, polices, or other information you received as a PBGPD employee, whether formal or informal, verbal or written, concerning use of force, whether organized or reactionary.

    **ANSWER: During my tenure with the PBGPD I have attended many trainings the documentation is included within the provided training file.**

13. If during your employment as a law enforcement officer or detention deputy you have ever been the subject of an internal investigation, administrative action, disciplinary action, citizen's complaint, or notice sent pursuant to section 768.28, Florida Statutes, state for each such incident: a. the date of the Incident; b. the substance of the charge or allegation of misconduct made against you; c. the date the initial charge or claim of misconduct was made; d. the name and address of all persons making the complaint; e. the outcome of each such charge or allegation of misconduct, including the date and nature of final disposition; and, f. if any disciplinary action was taken against you as a result of the charge or allegation of misconduct, the nature of such disciplinary action and the name and address of the person administering such disciplinary action.

    - **July 2019
      Allegation: Missed overtime detail
      Complainant: Sergeant Cooper
      Discipline: None**

    - **November 2019; Violation of Rules and Regulations
      Allegation: Misuse of Police Databases.
      Complainant: Nicole Guerriero (former spouse)
      Discipline: Two Day suspension from agency (30-day suspension by FDLE)**

- September 2019
  Allegation: Violation of Rules re: Conduct (i.e. inappropriate language)
  Complainant: Unknown
  Discipline: Written Reprimand

- December 2022
  Allegation: Violation of Rules and Regulations (i.e. assigned vehicle policy) Left equipment in car that was vandalized.
  Complainant; N/A
  Discipline: Written Reprimand

14. Please identify all lawsuits, administrative actions, investigations, and disciplinary charges that have been made against you since May 9, 2023. For each such matter, state the case or investigation number, caption, and how the matter was resolved if not currently pending.

    ANSWER:
    IA Case No.: 23-003 The agency sustained allegations and terminated Bethany Guerriero's employment for:
    Police Policy 4. 2. 1. 1— Response to Resistance
    Police Policy 2. 3. 12. 3 — Conduct Unbecoming
    Police Policy 2. 3. 12. 2 — Conduct
    Police Policy 2. 3. 16. 16 — Making a False Statement, Report, Communications Report Into Any Official Police Record, or Other Official or Required Report on Record

15. If you have ever been charged or convicted of a crime or arrested, please state the offense, the court and docket number, and the final disposition of such charge or arrest.

    ANSWER: On 3/28/2109 arrested for Stalking, County Court, Palm Beach County Case #2019MM003721, The matter was "Nolle Prosse" by the State Attorney on 5/19/2024.

16. Describe all facts related to your assertion that any show of or use of force toward the Plaintiff was legally authorized.
    ANSWER: Objection. Calls for a legal conclusion. I responded to a call where one of the individuals involved was armed with a handgun. Under the use of force policy, I am permitted to show force when confronted with a subject who may possibly be armed and is not complying with my direct commands. I gave Mr. Gould a direct command to not put his hands in his

11

pockets and he almost immediately defied that order by placing his right hand in his pocket. He retrieved an object that appeared to be a cell phone. I instructed him again, not to place, his hands in his pockets, and he began to slowly walk backwards. At that point, I drew my handgun and directed him to get on the ground as to detain him to assure he had no weapons.

17. Describe all facts related to your assertion that the arrest of the Plaintiff was legally justified.
ANSWER: Objection. This question calls for a legal conclusion. Without waiving that objection, Mr. Gould was arrested for violating FSS 843.02 resisting officer without violence to his or her person. Mr. Gould defied my direct order to not place his hands in his pockets while myself and other officers were investigating a gun call.

18. Describe any mental or physical condition that affected your actions or perceptions during the Incident.

ANSWER: I experienced chest pain at some point during the encounter and was treated at the hospital for what was explained as some type of cardiac event.

IN WITNESS WHEREOF, BETHANY GUERRIERO, has executed the foregoing answers to interrogatories and states are true and correct to the best of the undersigned's knowledge and belief.

_____
BETHANY GUERRIERO

STATE OF FLORIDA
COUNTY OF PALM BEACH

BEFORE ME, the undersigned authority, personally appeared Bethany Guerriero who is personally known to me or has produced _____ as identification, being first duly sworn according to law, deposes and says that she executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my office; in the County and State last aforesaid, this 1 day of April, 2024.

_____
NOTARY PUBLIC,
State of Florida at Large

GREGORY J. MORSE
Commission # GG 948045
Expires July 8, 2024
Bonded Thru Troy Fain Insurance 800-365-7019

13