UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80022-DMM

Ryan Gould,

       Plaintiff,

v.

Bethany Guerriero, *et ano.*,

       Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
BETHANY GUERRIERO'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ryan Gould ("Gould"), through his undersigned counsel, files this response in opposition to Defendant Bethany Guerriero's ("Guerriero") Motion for Summary Judgment. [ECF No. 49].[1] As grounds, Gould states:

**INTRODUCTION**

On May 9, 2023, Gould was the victim of another person brandishing a firearm at him and threatening violence during a dispute at a community pool. Gould called the police to deescalate the situation and ensure that no one was hurt. Gould went to the parking lot, while the man with the gun stayed by the pool with his wife. The first officer to respond greeted Gould and then went to talk with the man who had the gun by the pool. [ECF No. 41]. Because Guerriero violated Gould's Fourth Amendment rights and subjected Gould to an unlawful arrest, Guerriero's motion for summary judgment should be denied in its entirety.

---

[1] Gould has also filed his opposing statement of facts ("OSOF") [ECF No. 53] in support of his position, as well as a declaration [ECF No. 52] ("Slater Decl.").

Officers Strzelecki and Bethany Guerriero ("Guerriero") were the next to arrive. On the radio, they received information that Gould was the victim and that the man with the gun was elsewhere. Gould was standing in the parking lot with only a bathing suit on. The officers knew that Gould was unarmed and was not the person with the gun. Guerriero made a "friendly ask" for Gould to keep his hands out of his pockets at approximately the same time that Gould grabbed his cell phone out of his pocket. Guerriero became enraged and started yelling at Gould.

After some yelling, Guerriero pulled out her lethal firearm and aimed it at Gould. For the second time, Gould was now threatened with deadly force. Strzelecki pulled his taser out and aimed it as Gould to support Guerriero's threat of deadly force. He kept it trained on Gould while Guerriero commanded Gould to get on the ground so that he could be handcuffed. Strzelecki and Guerriero placed Gould under arrest for obstructing officers, even though Gould did no such thing. Immediately after arresting Gould, Guerriero explained that she knew that Gould was the unarmed party who had been threatened by another person who had a gun. Guerriero provided false information supporting an arrest for obstruction, and Strzelecki included that information in the probable cause statement he drafted to justify Gould's arrest.

Later, other officers obtained recordings of the incident and saw that Gould had not engaged in obstruction or done anything to justify having force threatened upon him. The other officers ordered Gould released from custody while Strzelecki was preparing documents for Gould to be formally charged.

Gould brings claims against Strzelecki and Guerriero for the unlawful force and arrest they subjected him to. Strzelecki participated in both the force and arrest and failed to intervene or correct misconduct. Caselaw supports Gould's ability to bring claims, and Gould should be permitted to have this matter heard at trial. Because Guerriero violated Gould's Fourth

Amendment rights and subjected Gould to an unlawful arrest, Guerriero's motion for summary judgment should be denied in its entirety.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a summary judgment motion must "draw all reasonable inferences in favor of the party opposing summary judgment." *Glasscox v. Argo*, 903 F.3d 1207, 1212 (11th Cir. 2018). Even when the parties agree on a set of facts, a court should deny summary judgment if "reasonable minds might differ on the inferences arising from undisputed facts." *Id*. (quotation omitted).

## ARGUMENT

Guerriero drew her firearm and aimed it at Gould minutes after Gould had called police because he had been threatened by someone else with a gun. Gould was clearly unarmed, and Guerriero understood that the person with the gun was elsewhere. Angry with Gould, Guerriero arrested him based on false claims of resisting an officer while taunting and insulting Gould. Guerriero left shortly afterward due to a medical incident that left her unable to continue working.

Guerriero was subsequently terminated for her actions in this incident. Her superiors found that her conduct was improper and that Gould was arrested based on false information and without probable cause. Based on these undisputed facts, Gould has stated claims of misconduct that should be allowed to go to trial. Because Gould has stated meritorious claims and there are disputes of material facts, Guerriero's motion for summary judgment should be denied.

I.   **GUERRIERO IMPROPERLY RELIES ON MATERIALS THAT WERE NOT PRODUCED IN DISCOVERY.**

Federal Rule of Civil Procedure Rule 37(c)(1) directs that a party who fails to produce materials as required by Rule 26(a) or (e) may not use those materials in support of a motion.

3

Guerriero failed to produce arbitration transcripts as required by Rule 26(a)(1)(A)(ii). [ECF No. 52, Slater Decl. at ¶¶ 9-10]. Due to Guerriero's failure to produce this information, Gould was unable to review them, investigate the assertions, or otherwise respond to the materials. [*Id*. at ¶¶ 11-12]. Accordingly, those exhibits [ECF Nos. 49-2 and 49-3] should be stricken.

## II.     GUERRIERO UNLAWFULLY DETAINED AND ARRESTED GOULD.

To determine whether an encounter is an investigative detention or an arrest, a court should consider whether the suspect is "subjected to restraints comparable to those associated with a formal arrest." *United States v. Chaidez-Reyes*, 996 F. Supp. 2d 1321, 1335 (N.D. Ga. 2014) (citing *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir.2004)) (cleaned up). Officers can hold someone at gunpoint, order them to the ground, and handcuff them without converting a detention into an arrest in certain circumstances. *Id*. at 1335-36.

To determine whether an arrest occurred, courts should consider the following factors: "(1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursued their investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention." *United States v. Fields*, 178 Fed. Appx. 890, 893 (11th Cir. 2006). When an officer detains a suspect without attempting to investigate or to confirm or dispel suspicion, the detention should be treated as an arrest. *Kolin v. Dorsett*, Case No. 15-62728-CIV-ZLOCH, 2017 U.S. Dist. LEXIS 117938, at *12-13 (S.D. Fla. July 26, 2017). An officer should not receive the benefit of a lower standard merely by labelling an encounter as a detention when the decision to arrest has already been made. *Id*.

The facts here support that Strzelecki and Guerriero arrested Gould when they held him at gunpoint, ordered him to the ground, and placed him in handcuffs. *Chaidez-Reyes*, 996 F. Supp. 2d at 1335 (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)) (identifying

nonexhaustive factors demonstrating arrest, such as: blocking the individual's path or impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual).

The only purpose to place Gould in handcuffs was to detain him so that he could be transported to jail. Officers did not attempt any investigation—not even a pat down—once Gould was in handcuffs further supporting that officers had determined that a sufficient basis existed to arrest Gould. *See United States v. Salman*, 286 F. Supp. 3d 1325, 1337 (M.D. Fla. 2018) (citing *United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002)) (explaining how a detention might not convert an encounter into an arrest where a limited stop is conducted to search outer clothing for weapons). Gould was forced to remain on the ground in handcuffs in only his bathing suit. The manner of detention was extremely intrusive and otherwise unnecessary because multiple officers were present, Gould was unarmed, and Gould gave no indication that he would flee or attack officers. Gould remained detained for a lengthy period *following* the investigation and resolution of the incident at the pool. *Cf. United States v. Williams*, 185 Fed. Appx. 866, 870 (11th Cir. 2006) (handcuffing and placing the defendant in the back of a patrol car during investigation where there were reports of a shotgun being fired at a residence was reasonable); *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) ("to maintain the safety of the officers and the ongoing investigation of the residence, handcuffing [the defendant] and detaining her in the back of the police car was reasonable"). Strzelecki drafted a probable cause statement to justify Gould's arrest and later met Gould at a police facility. Gould remained in handcuffs throughout despite requests that they be removed.

Because officers did not engage in investigation or have any other reason to detain Gould, *see, e.g.*, *Gil*, 204 F.3d 1347, this Court should find that Gould was arrested when officers held him at gunpoint, ordered him to the ground, and handcuffed him.

### A. Guerriero did not have reasonable suspicion to detain or frisk Gould.

Guerriero claims that her conduct was authorized by Florida Statutes § 910.151(2), which permits an officer to detain a person when they have reasonable suspicion that a crime has been committed. [ECF No. 49 at 5-6]. Guerriero has not produced any evidence that there was reasonable suspicion that Gould committed a crime or even posed a safety threat.

First, there is undisputed evidence that Guerriero understood that Gould had recently been threatened with a firearm and was unarmed himself. [ECF No. 29 Guerriero BWC at 5:20; ECF No. 32-5 at 113:12-118:11]. Guerriero also understood that the person with the firearm was elsewhere. [*Id*.]. Guerriero did not see a bulge in Gould's swimsuit and otherwise had no basis to believe that he was armed or posed a safety threat to officers. [ECF No. 32-5 at 91:20-92:6]. Guerriero declined to search Gould for weapons or further investigate whether he posed a safety threat. [*Id*. at 134:7-13]. In sum, Guerriero knew that Gould was unarmed and a victim of being threatened with a gun. Because she was angry with Gould, though, she held him at gunpoint and arrested him without cause.

### B. Guerriero did not have probable cause, or even arguable probable cause, to arrest Gould.

Guerriero next claims that she had probable cause to arrest Gould. [ECF No. 49 at 7]. As a factual matter, this is disputed because Gould asserts that Guerriero arrested him because she was angry with him and made false claims to unlawfully cause him to be arrested. Another officer, Seargeant Glass, saw the encounter on a recording and had the opinion that probable cause did not exist to arrest Gould. [ECF No. 49-1 at 14].

6

Legally, Guerriero agrees that criminal resistance under Florida law does not apply to any disobedience to an officer. [ECF No. 49 at 10]. Officers merely responding to a call or consensually talking with civilians are not engaged in a lawful duty that would support criminal resistance for disobedience. *Ghandour v. City of Miami*, Case No. 23-21970-CIV-ALTONAGA/Damian, 2024 U.S. Dist. LEXIS 4333, at *12-13 (S.D. Fla. Jan. 9, 2024); *Ford v. City of Boynton Beach*, 323 So. 3d 215, 228 (Fla. Dist. Ct. App. 2021); *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1312 (S.D. Fla. 2020).

Guerriero first argues that she was investigating the unlawful display of a firearm that Gould himself called in. [ECF No. 49 at 10-11]. The facts about what Guerriero knew and why she was responding are disputed. In this lawsuit, Guerriero has claimed that she had very little information about why she was responding. [ECF No. 32-5 at 40:20-41:1]. On the scene, Guerriero appeared to know that Gould was the unarmed party and actually was the victim. [ECF No. 29 Guerriero BWC at 5:20; ECF No. 32-5 at 113:12-118:11]. In her motion, Guerriero suggests that she had knowledge of the individual 911 calls and exited the car specifically investigating a known crime. [ECF No. 49 at 11].

The facts support either that Guerriero had no information about a potential crime and was merely responding to a location and not yet engaged in a lawful duty or she knew that Gould was unarmed and the victim. Neither scenario supports even arguable probable cause that Gould criminally resisted officers when Guerriero made a "friendly ask" that he keep his hands out of his pockets when she initially arrived. [ECF No. 32-5 at 57:10-13].

Guerriero tries to strengthen her argument by offering irrelevant and mischaracterized assertions regarding Gould's post-arrest conduct. Information outside of Guerriero's perception or occurring after Gould's arrest cannot be a lawful basis for Guerriero's arrest of Gould. Guerriero

mischaracterizes the appropriate evidence for this motion, ignoring her actual knowledge that Gould was unarmed and claiming that, at best, it was ambiguous whether Gould was armed. [ECF No. 49 at 14]. Guerriero demonstrates that there are at least several disputed material facts, which requires that her motion for summary judgment be denied.

### III.   GUERRIERO USED UNREASONABLE FORCE AGAINST GOULD IN VIOLATION OF GOULD'S FOURTH AMENDMENT RIGHTS.

An officer's display of their weapon and threat to use force is analyzed under the Fourth Amendment to determine whether it is reasonable conduct. *Jones v. Walsh*, 711 Fed. Appx. 504, 507 (11th Cir. 2017). When an officer draws their weapon, it must be reasonably necessary for protection or maintenance of order. *Id*. (citing *Courson v. McMillian*, 939 F.2d 1479, 1494-95 (11th Cir. 1991)). An officer's display of a weapon and threat of force is unreasonable when not necessary based on the nature of the stop. *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) (citing, *inter alia*, *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)). There is a robust consensus across circuits that an officer who brandishes a weapon at a bystander or compliant subject is objectively unreasonable under the *Graham* factors. *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *8-9 (W.D. Tex. Jan. 31, 2020) (denying qualified immunity based on collection of precedent clearly establishing that it is excessive force to brandish a gun at a compliant person).

Here, Guerriero knew that Gould was unarmed and was the victim of being threatened by another person with a firearm. She made a friendly ask that Gould keep his hands out of his pockets, and Gould grabbed his cell phone. Guerriero and Gould continued talking for several more seconds when Guerriero grew agitated and drew her weapon out of anger. At no point during the encounter did officers have an objective basis to believe that Gould posed a safety threat. Absent an appropriate justification, the Fourth Amendment does not permit an officer to draw a

weapon out of anger and order a victim to the ground. Accordingly, Guerriero's summary judgment motion regarding her excessive force must be denied.

## IV.    GUERRIERO IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Guerriero was on notice that detaining Gould required the existence of a safety threat or other objective basis. *United States v. Jones*, 752 Fed. Appx. 810, 812 (11th Cir. 2018). An arrest of Gould required probable cause. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). Guerriero was on notice that she could neither detain nor arrest Gould merely because she was angry with him, nor could she use unreasonable force. Guerriero demonstrated awareness of these requirements when she falsely claimed that Gould refused to comply with multiple commands and posed a safety threat to officers. As discussed above, Guerriero knew that Gould was unarmed and was the victim. Gould did not engage in criminal resistance, and Guerriero's detention and arrest of Gould violated clearly-established Fourth Amendment principles.

Guerriero was also on notice that she could not draw her gun on a person without a safety threat justifying its need. *Walsh*, 711 Fed. Appx. at 507. Guerriero knew that she could not draw her weapon merely because her argument with Gould escalated and she was angry. The absence of a safety threat is further demonstrated by the fact that Guerriero made no effort search Gould or determine whether he was actually armed because she already knew that he was not.

In *Hadley v. Gutierrez*, for example, the Eleventh Circuit held that a police officer who punched an arrestee in the stomach used excessive force because the arrestee was handcuffed and not struggling or resisting. 526 F.3d 1324, 1330 (11th Cir. 2008). There, the court explained that the officer was "not entitled to use any force" because the arrestee "neither resisted arrest nor posed a danger to [the officer]." *Id.*  In *Croom*, the Eleventh Circuit also held, prior to the circumstances in this case, that brandishing a weapon is unreasonable force when there are no circumstances

justifying it. Guerriero was on notice that she could not point her firearm at Gould when she knew that he was not a safety threat, yet she ignored clearly established precedent in doing so simply because she was angry.

As to the arrest and detention, the lack of arguable probable cause dooms Guerriero's invocation of qualified immunity. *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010). Qualified immunity should not prevent Gould from having his claims heard against Guerriero based on clearly-established Fourth Amendment violations.

## V. GUERRIERO IS NOT IMMUNE FROM TORT LIABILITY UNDER FLORIDA LAW.

Under Florida law, an officer is immune from tort liability unless they act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety. *Coleman v. Hillsborough County*, 41 F.4th 1319, 1325 (11th Cir. 2022). The first two categories are synonymous and require actual malice. *Id*. The third category requires conduct "much more reprehensible and unacceptable than mere intentional conduct." *Id*. (cleaned up). Unprovoked aggression, arrest without cause, and unnecessary force permit a jury to infer actual malice. *Hill v. Mull*, Case No. 5:04-CV-329 (DF), 2006 U.S. Dist. LEXIS 77330, at *37 (M.D. Ga. Oct. 23, 2006).

Guerriero acted without legal basis as described above. She drew her weapon on Gould and arrested him because she was angry with him. Guerriero's malicious intent is precisely the conduct that supports tort liability for her improper conduct. Accordingly, Guerriero's summary judgment motion should be denied with respect to Gould's tort claim.

## CONCLUSION

Gould has produced sufficient evidence to place in dispute whether Guerriero acted lawfully. The facts support that Guerreiro knew that Gould was unarmed and a victim, yet drew

10

her weapon on him and arrested him because she was angry with him. This conduct is not permitted under the U.S. Constitution or Florida law. Accordingly, Guerriero's motion for summary judgment should be denied in its entirety.

Dated: July 25, 2024

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
Email: james@slater.legal

**Eric Rice**
Eric Rice (admitted *pro hac vice*)
Law Office of Eric A. Rice LLC
1 West Water Street, Suite 275
St. Paul, Minnesota 55107
Tel.: (651) 998-9660
Email: eric@ricedefense.com

*Attorneys for Plaintiff*