UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 24-80022-MIDDLEBROOKS

RYAN GOULD

      Plaintiff,

v.

BETHANY GUERRIERO and
JOSEPH STRZELECKI,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant Joseph Strzelecki's Motion for Summary Judgment, filed on June 5, 2024, (DE 31) and Defendant Bethany Guerriero's Motion for Summary Judgment, filed on July 11, 2024 (DE 49). Both Motions are fully briefed. (DE 41; DE 44; DE 54). For the reasons set forth below, the Motions are granted.

**I.  FACTS AND PROCEDURAL BACKGROUND[1]**

On May 9, 2023, Plaintiff Ryan Gould was using his community pool. (DE 40 at ¶3). Plaintiff claims to have been swimming when a woman told him to "swim differently." (*Id.*). The woman's husband then arrived at the pool area, lifted his shirt, and revealed a firearm to Plaintiff.

---

[1] Almost all facts are derived from Officer Guerriero's and Officer Strzelecki's body camera footage, footage from the parking lot camera at the scene, and Plaintiff's 911 dispatch call, except where otherwise noted. (DE 29; DE 38; DE 43). The body camera footage and 911 call were filed conventionally in the court record. (DE 29; DE 38; DE 43). The encounter between Plaintiff and Defendants, as captured in Officer Guerriero's and Officer Strzelecki's body camera footage, is a clear recording both as to video and audio. The same is true for the dialogue recorded during Plaintiff's 911 call. Yet the Parties characterize the incident differently, as reflected in Defendants' Statements of Material Facts (DE 39; DE 51) and Plaintiff's responses thereto (DE 40; DE 53). I do not rely on any disputed facts here. Rather, the statement of facts set forth below is derived almost exclusively from my own review of the body camera footage and 911 dispatch call.

(*Id.*). Plaintiff called 911 and reported that a man was threatening him with his gun. Plaintiff described the man as a white man, 5 foot 2, and approximately 120 pounds. Plaintiff also described him as not wearing shoes, having brown hair, and with a woman in a swimsuit. Finally, Plaintiff told the 911 dispatcher that the man was concealing his weapon and was still at the pool, where Plaintiff also remained. The 911 dispatcher informed Plaintiff that they had received another call about the incident.

Plaintiff then walked to the parking lot where he waited for the police. Plaintiff interacted first with Officer Michael Valerio who was the first officer to arrive on the scene. Officer Valerio and Plaintiff spoke briefly, and then Officer Valerio walked away from Plaintiff and towards the pool. Minutes later Officers Bethany Guerriero and Joseph Strzelecki drove up to the parking lot and exited their vehicle. Officer Guerriero walked up to Plaintiff, who was wearing swim trunks, flip flops, and no shirt. Plaintiff is a white man with brown hair.

Initially, Officer Guerriero says, "hey man, how you doing?" and "hands out of your pockets for me." Plaintiff responds, "I'm not the one with the gun." Plaintiff then puts his right hand into his right pocket of his swim trunks. Officer Guerriero now says in a louder voice, "keep your hands out of your pockets." Plaintiff pulls his cell phone out of his pocket and initially spreads his arms, holding his black cell phone in his right hand. Officer Guerriero, again in a louder voice, commands Plaintiff to "put the phone down." Plaintiff then, however, points his right index finger at Officer Guerriero, still holding his phone in his right hand, and says "I haven't done a crime. Don't talk to me like that." Officer Guerriero, while still walking closer to Plaintiff, responds, "Listen to me; I don't know you; put that down," referring to Plaintiff's phone. Plaintiff starts backing away from the officers, still holding his phone in his right hand, waving his arms. He responds, "I don't know you, you're the one with the gun," while still holding his phone in his

2

right hand. At that moment, Officer Guerriero draws her gun and points it at Plaintiff and commands that he "get down on the ground now." Plaintiff, while still responding that he was not the one who committed a crime and that he hasn't done anything wrong, lowers himself to the ground.

At the same time as Officer Guerriero has approached Plaintiff, Officer Strzelecki has also exited the same vehicle and is walking up towards Plaintiff behind Officer Guerriero. He walks a few steps behind Officer Guerriero and does not speak until Officer Guerriero has pulled her weapon and commands Plaintiff to get on the ground. At that time, Officer Strzelecki pulls his taser out and points it at Plaintiff. He also repeats "get down on the ground." Officer Strzelecki never touched Plaintiff. (DE 32 at ¶40); (DE 40 at ¶40).

Plaintiff lowers himself to the ground and lies on the parking lot concrete. Both officers command him to put his arms to the sides. At that time, Officer Guerriero holsters her weapon and handcuffs Plaintiff. Once Plaintiff is in handcuffs, Officer Guerriero tells him he is being detained for not listening. Plaintiff then attempts to stand, and Officer Guerriero pushes him back down into a seated position by grabbing his right shoulder. Plaintiff then remains sitting on the ground of the parking lot, still shouting that he does not have to follow the officer's commands, that he has done nothing wrong, and that his arrest is unlawful. At one point, while Plaintiff remains in handcuffs and on the ground, Officer Guerriero says "your nail polish is cute." As other officers appear on the scene, Plaintiff continues to state that he will not listen to future commands and that the officers have no legal authority to detain him. Plaintiff was later transported to the Palm Beach Garden Police Department jail. (DE 32 at ¶59); (DE 40 at ¶59). Ultimately, however, Plaintiff was not charged with a crime and was not booked into the Palm Beach County Jail. (DE 32 at ¶¶60, 61); (DE 40 at ¶¶60, 61). At no point while at the pool did Plaintiff complain about the pavement being

3

hot. (DE 50 at ¶63); (DE 53 at ¶63). Plaintiff has not sought or received any medical treatment relating to this occurrence. (DE 32 at ¶63); (DE 40 at ¶63).

On January 10, 2024, Plaintiff filed a lawsuit against Officers Bethany Guerriero and Joseph Strzelecki. (DE 1). Plaintiff brought this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiff argues that the defendants' actions constituted excessive force and false arrest and that his constitutional rights and Florida law were violated. Plaintiff's claims survived Officer Guerriero's Motion to Dismiss because he alleged that he complied with the officer's commands, that it was clear that he was unarmed, that the officers nevertheless forcefully arrested, and that he was hurt. (DE 1 a ¶25). On summary judgment, the facts as established from the body camera footage are different.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the Court] do[es] not

determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." *Barnett v. PA Consulting Group, Inc*., 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. If the non-moving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment is warranted. *Id.* at 322. The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

### III. DISCUSSION

#### A. Excessive Force

Defendants both move for summary judgement, arguing that Plaintiff did not suffer a constitutional violation because they did not use excessive force. The use of excessive force in carrying out an arrest constitutes a Fourth Amendment violation. See *Graham v. Connor*, 490 U.S. 386, 394 (1989). However, an officer's use of force is not ipso facto excessive because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

5

physical coercion or threat thereof to effect it." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Instead, to be a constitutional violation, a plaintiff must establish that the police officer used "an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest." *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). The touchstone inquiry is a balancing test that accounts for the "reasonable officer on the scene with knowledge of the attendant circumstances and facts" weighed against "the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). "[U]nprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011).

The record before me includes Defendant Strzelecki's and Defendant Guerriero's body camera footage, which captured the entire incident. The record also includes Plaintiff's 911 call and footage from a camera overlooking the parking lot where the incident occurred. Having carefully considered the totality of the factual record, I do not find there to be a triable issue of fact as to whether the Defendants used excessive force. As to the need to use any force, Officers Guerriero and Strzelecki had been dispatched in light of a 911 call that a white male was armed with a firearm at the pool. Plaintiff, himself, described a white man carrying a concealed gun at the pool. When the officers arrived at the scene, they saw Plaintiff standing and waiting for them. Officer Guerriero initially told Plaintiff to keep his hands out of his pockets. Though the sequence of events happened rapidly over a few seconds, it is clear from the body camera footage that Plaintiff put his right hand into his right pocket <u>after</u> being instructed not to. At that point, any reasonable officer who was called to a scene due to a man brandishing a concealed weapon would

6

have been aware of the danger of a man reaching into his pocket after being instructed not to. Although Plaintiff did verbally tell the police officers that he was unarmed and had not committed a crime (actions that Plaintiff characterizes as an earnest attempt to diffuse any threat), it is significant that even as he was ostensibly assuring the officers that he had no weapon, he was simultaneously *disobeying* Officer Guerriero's direct commands by reaching into his pocket. And as Officer Guerriero was directing Plaintiff to put his phone down, which he never did, she and the other officers explained to Plaintiff that they did not know him and did not know he was not armed. Officer Guerriero's statements in this regard are important in that they reflect the state of mind of the officers, and they underscore the uncertainty and the risk involved in this encounter with Plaintiff. I also note that Plaintiff's conduct and tone were argumentative and confrontational. In the seconds that he and Officer Guerriero interacted prior to her pulling her firearm, he shouted back that Officer Guerriero could not speak to him like that and pointed his phone at the officers, all while disobeying direct verbal instructions.

Officer Guerriero was arguably aggressive in handcuffing Plaintiff and forcing him back into a seated position, and she did make a flippant and unnecessary comment about his nail polish during the encounter. But case after case in the Eleventh Circuit, on facts substantially worse, indicate that her conduct does not rise to the level of a constitutional violation. For example, in *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000), the Eleventh Circuit considered force to be "de minimis" when "an officer grabbed the plaintiff from behind the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." In *Bryan v. Spillman*, 217 Fed. Appx. 882, 886 (11th Cir. 2007), the Eleventh Circuit held in an unpublished, per curiam opinion that conducting "a rough search of [plaintiff's] genitals, push[ing] him against

7

a patrol car, and 'holding' his head down" constituted de minimis force. And in *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011), the Court upheld a grant of summary judgment in the defendant's favor and against the plaintiff, an "elderly woman" who was "known by the officers to be infirm." *Id.* At 1251. In that case, the arresting officer had pushed the plaintiff "to the ground from her squatting position and [held] her there with a foot (or knee) in the back for up to ten minutes," and the Eleventh Circuit still held that the "de minimus" force used by law enforcement was lawful. *Id.* at 1253.

Alternatively, *even if* there were a triable issue of fact as to whether the force used was excessive, both Defendants would be entitled to qualified immunity because their conduct did not violate clearly established law.  Unless an officer violates clearly established constitutional or federal law, she is entitled to qualified immunity for actions taken in her discretionary capacity. See *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Meaning that even if Plaintiff can point to a triable issue of fact as to the use of excessive force in a particular situation, a Defendant might still be entitled to qualified immunity if he did not use force in a way that was "sufficiently clear that every reasonable official would have understood that what he [was] doing violate[d] that [Fourth Amendment] right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); see *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Courts are free to answer the constitutional question or the immunity question in either order. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Whether an officer is entitled to qualified immunity for an alleged constitutional violation is a legal determination capable of adjudication at summary judgment. See *Courson v. McMillian*, 939 F.2d 1479, 1486–88 (11th Cir. 1991).

Viewed in the light most favorable to Plaintiff, Officer Guerriero might have possibly used *unnecessary* force by pulling a gun on unarmed Plaintiff and forcing him onto the ground. But Plaintiff cannot show that this amount of force, even if unnecessary, was plainly unlawful or violated clearly established law. "[A] minimal amount of force and injury, as present in the facts of this case, will not defeat an officer's qualified immunity in an excessive force case." *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000). Moreover, once Plaintiff was handcuffed and sitting on the pavement, Officer Guerriero put her gun away and Officer Strzelecki put his taser away. Plaintiff did not complain of any discomfort during the interaction or later seek any medical treatment. Accordingly, on this factual record, no reasonable jury could find that Plaintiff was physically injured from the interaction, or that either of the Defendants did anything to cause the type of physical harm that would suggest use of excessive force. In fact, Officer Strzelecki never touched Plaintiff, and Officer Guerriero only made physical contact with him when putting the handcuffs on him and pushing on his shoulder to place him back into a seated position. At most, Plaintiff experienced some discomfort from the hot pavement, something he only alleged after the fact and never expressed to the officers while he was in handcuffs. Plaintiff cannot show that the law clearly establishes that being threatened with a firearm and being grabbed on the shoulder is excessive as the only efforts taken to restrain a possibly armed man who was disobeying verbal commands. *Compare Lee v. Ferraro*, 284 F.3d 1188, 1191 (11th Cir. 2002) (where the Eleventh Circuit concluded that slamming a non-resisting criminal suspect's head onto the hood of a car constituted excessive force); *Hadley,* 526 F.3d at 1334 (where the Eleventh Circuit affirmed a denial of qualified immunity when an officer "punched" a man in the stomach after he was handcuffed and not resisting arrest). Here the Officers did not apply any force to Plaintiff once he was handcuffed and sitting on the ground, even though he continued to verbally resist arrest and

9

their authority. Officer Strezlecki never even touched Plaintiff, and Plaintiff cannot establish that he was in fact injured. Therefore, in the alternative, Officer Guerriero and Officer Strzelecki both are entitled to qualified immunity from Plaintiff's excessive force claims.

### B. False Arrest

Defendants also both move for summary judgment on Plaintiff's false arrest claim. That claim, like his excessive force claim, is also brought under section 1983, and is premised upon Plaintiff's allegation that Defendants did not have probable cause to arrest him, and therefore that the Defendants violated his constitutional rights under the Fourth Amendment when they handcuffed and detained him.

"When a false arrest claim and a genuine excessive force claim arise out of the same incident, the false arrest and excessive force claims 'must be analyzed independently.'" *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (citing *Lee*, 284 F.3d at 1197). To succeed on a false arrest claim, "a plaintiff must establish (1) a lack of probable cause and (2) an arrest. An arrest—the quintessential seizure of a person—occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes." *Richmond*, 47 F.4th at 1180. Probable cause exists when "a reasonable officer could conclude ... that there [is] a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (internal citations omitted).

Both Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because probable cause existed to arrest Plaintiff. Alternatively, they argue that they are entitled to qualified immunity. In Fourth Amendment terminology, an arrest is a seizure of the person. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991). The "reasonableness" of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest. *Skop v. City of*

*Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir.2002) (per curiam) (quotation marks omitted). The standard is "practical," "non-technical," and requires an evaluation using the "totality of the circumstances." *Skop,* 485 F.3d 1130.

First, it is not clear that Plaintiff was ever actually arrested. Upon arriving at jail to be processed, Plaintiff was released and told that he would not be charged. (DE 32 at ¶¶60, 61); (DE 40 at ¶¶60, 61). Instead, Plaintiff argues that the Court should find that he was arrested because he was "seized" when the officers held him at gunpoint, ordered him to the ground, and handcuffed him. (DE 54 at 6). Even if I were to find that Plaintiff was in fact arrested, I find that Defendants had probable cause to do so.

Both Defendants argue that Plaintiff's "arrest" was lawful because there was probable cause to arrest him for the crime of obstruction. "An arrest is lawful so long as there is probable cause to support an arrest for any offense, even if probable cause does not exist for the offense announced at the time of the arrest." *Cottam v. City of Wildwood*, 750 F. App'x 791, 793 (11th Cir. 2018). "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime." *Skop,* 485 F.3d at 1137-38. Florida courts have interpreted the crime of obstruction as having two elements: (1) "the officer was engaged in the lawful execution of a legal duty"; and (2) "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *Baxter v. Roberts*, 54 F.4th 1241, 1266 (11th Cir. 2022) (citing *C.E.L. v. State*, 24 So.3d 1181, 1185-86 (Fla. 2009)).

11

The undisputed facts conclusively establish that both elements of the crime of obstruction are met here. Defendants were responding to a 911 police call about an armed male with a concealed weapon and were confronted by a man that disobeyed their lawful commands to keep his hands out of his pockets and put his phone on the ground. Plaintiff continued to express, even after he was handcuffed and on the ground, that he did not believe he had to listen to the officers. A reasonable officer in the same circumstances would have believed Plaintiff's words and conduct constituted resistance to that officer being able to carry out her duties and therefore established a probability of the crime of obstruction. *Compare Skop*, 485 F.3d at 1140 (finding that there was no probable cause to arrest a woman for obstruction when the officer was parked in front of her driveway during a thunderstorm and she was asking him to move his car so that she could access her own driveway.) It was not necessary for Officer Guerriero to announce to Plaintiff that he was being arrested for obstruction when she initially handcuffed him. The only inquiry is whether there was probable cause for *any* arrest, and here the facts establish probable cause for obstruction. Because there was probable cause to arrest Plaintiff, Plaintiff's arrest was lawful. Therefore, Plaintiff's section 1983 false arrest claim fails as a matter of law. In so finding, I do not need to reach Defendants' alternative argument for qualified immunity, which only requires a showing of "arguable probable cause." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998).

### C. State Law Claims

Plaintiff also brings claims of false arrest and false imprisonment under Florida Law against Defendants. Both Defendants assert individual immunity under Florida's sovereign immunity statute. Fla. Stat. § 768.28(9)(a). Under Florida law,

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or

> his employment or function, unless such officer, employee or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Although the statute does not define "bad faith," in its text, "[b]ad faith has been equated with the actual malice standard." *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. Dist. Ct. App. 1998). Plaintiff argues that Officer Guerriero drew her weapon on him and arrested him because she was angry with Plaintiff. (DE 54 at 10). Plaintiff argues summarily that because Officer Guerriero acted without legal basis her "malicious is intent is precisely the conduct that supports tort liability" in Florida. (*Id.*). However, "[t]he existence of probable cause contradicts any suggestion of malicious intent or bad faith." *Cottam*, 750 F. App'x at 795; see also *Fernander v. Bonis*, 947 So. 2d 584, 589 (Fla. 4th DCA 2007). As I already found that there was probable cause for Plaintiff's arrest, I find that the Defendants also are shielded by Florida's immunity statute as a matter of law. *Cottam*, 570 Fed. Appx. at 795 (affirming that an officer was entitled to immunity under Florida law because he had arguable probable cause to make an arrest).

## IV. CONCLUSION

It is unfortunate that Plaintiff, who made a 911 call about having a gun pulled on him, was met with officers who also pulled out their firearm and taser. However, as a matter of law, Plaintiff is not entitled to recuperate from the officers. Neither officer used excessive force, as defined by law, against Plaintiff, and the officers had probable cause to arrest him. Moreover, both officers are entitled to both qualified immunity and immunity under Florida law for their actions. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1) Defendant Officer Joseph Strzelecki's Motion for Summary Judgment (DE 31) is **GRANTED.**

2) Defendant Officer Bethany Guerriero's Motion for Summary Judgment (DE 49) is **GRANTED.**

3) I will enter Final Judgment by separate order.

**SIGNED** in Chambers at West Palm Beach, Florida this 29th day of August, 2024.

_____
Donald M. Middlebrooks
United States District Judge

cc: Counsel of record