# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 03, 2025

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY ____ap____ D.C.

Jun 3, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number: 24-12818-DD
Case Style: Ryan Gould v. Bethany Guerriero
District Court Docket No: 9:24-cv-80022-DMM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12818

_____

RYAN GOULD,

                                                                       Plaintiff-Appellant,

*versus*

BETHANY GUERRIERO,

                                                        Defendant-Appellee,

JOSEPH STRZELECKI,
individually,

                                                                         Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                                                                 24-12818

D.C. Docket No. 9:24-cv-80022-DMM

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 5, 2025

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE: June 3, 2025

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12818

Non-Argument Calendar

_____

RYAN GOULD,

                Plaintiff-Appellant,

*versus*

BETHANY GUERRIERO,

                Defendant-Appellee,

JOSEPH STRZELECKI,
individually,

                Defendant.

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 5 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 2 of 14

2                     Opinion of the Court                     24-12818

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cv-80022-DMM

_____

Before NEWSOM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff Ryan Gould appeals the district court's grant of summary judgment on his federal and state claims for excessive force and false arrest against Officer Bethany Guerriero. Gould argues that Officer Guerriero engaged in excessive force when she drew her gun on Gould and effectuated a false arrest when she then put him in handcuffs. He also argues that Officer Guerriero is not entitled to qualified or sovereign immunity. After careful review, we affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 9, 2023, Gould was swimming laps at his community pool when a dispute with a female swimmer interrupted his routine. The woman eventually called over her husband, who showed Gould that he had a firearm in his waist area. Gould then left the pool area to call 911.

---

[1] Most of the facts outlined below and material to the parties' dispute are derived from officer bodycam footage, surveillance footage, and 911 dispatch calls.

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 6 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 3 of 14

24-12818               Opinion of the Court                3

In that call, Gould reported that a man at the pool had brandished a gun at him. Gould described the husband as a 5'2, 120-pound white male with a beard, brown hair, and no shoes. Gould further reported that both he and the husband were still at the pool and that the gun was concealed.

Around the same time, the husband also called 911. The husband reported that Gould was harassing his wife at the pool and that Gould seemed like he was on drugs. The husband described Gould as a 6'0 white male with brown hair clad in a multi-colored bathing suit. The husband said he did not think Gould was armed, but that he was armed, and, contrary to Gould's description of him, that he was 5'8.

Officer Michael Valerio arrived at the scene first. He spoke briefly with Gould, who was waiting for the police at the pool parking lot, and then walked away towards the pool. Gould remained in place, and shortly afterward additional police cars pulled up to the lot.

Officers Bethany Guerriero and Joseph Strzelecki exited the parked cars and approached Gould. Officer Guerriero said to Gould "hey man, how you doing?" and "hands out of your pockets for me." Gould, walking towards Officer Guerriero, responded "I'm not the one with the gun." He then reached into his swimsuit pocket with his right hand. Officer Guerriero more forcefully commanded Gould to "keep [his] hands out of [his] pockets." Gould then pulled a cell phone out of his pocket and initially spread his arms. In response, Officer Guerriero commanded Gould to "put

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 7 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 4 of 14

4                        Opinion of the Court                    24-12818

the phone down." Gould, hands no longer raised and still holding the phone, pointed his index finger at Officer Guerriero and said, "I haven't done a crime. Don't talk to me like that." Officer Guerriero responded, "Listen to me. I don't know you. Put that [phone] down." Phone still in hand, Gould countered, "I don't know you, you're the one with the gun." Officer Guerriero then drew her gun on Gould and commanded him to "get down on the ground now." Gould exclaimed "what the fuck is this" and acquiesced.

As Gould lowered himself to the parking lot pavement, Officer Guerriero explained that she told him "not to reach for anything." She then holstered her gun and handcuffed Gould. Officer Guerriero informed Gould that she was detaining him for not listening when she "told [him] keep [his] hands out of [his] pocket," that she doesn't "know [him]," and that she was "coming here for a gun." Gould protested that he doesn't have a gun, and Officer Strzelecki responded rhetorically, "Did we know that when we came?" As Gould lay handcuffed on the pavement, he and Officer Guerriero engaged in a heated exchange and traded insults. Gould continued to protest his detention and expressed a refusal to obey law enforcement commands. Other officers eventually transported Gould to the local jail, but he was ultimately released without charges.

On January 10, 2024, Gould sued Officer Guerriero[2] under 42 U.S.C. § 1983 and Florida law alleging excessive force and false

---

[2] Gould's suit first included Officer Strzelecki, but the parties reached a settlement and Office Strzelecki was dismissed from the case.

24-12818 Opinion of the Court 5

arrest.[3] On August 29, 2024, the district court granted Officer Guerriero's motion for summary judgment. The district court held that Officer Guerriero's actions did not constitute excessive force or a false arrest, and, alternatively, that she was entitled to qualified immunity. The district court then dismissed Gould's state-law claim on the same basis. Gould timely appealed.

## I. STANDARD OF REVIEW

We review de novo the district court's order denying summary judgment based on qualified immunity. *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1271 (11th Cir. 2021). When there is clear video evidence depicting the material events under dispute, we should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## II. ANALYSIS

Gould appeals the district court's dismissal of his § 1983 claims for excessive force and false arrest and his state-law claim for false arrest. We affirm the district court's dismissal of each claim.

### A. Excessive Force

---

[3] Gould also alleges false imprisonment, but the torts of false imprisonment and false arrest are "often 'distinguishable in terminology only'" and are treated as "the same tort when the issue involves an arrest and detention by a law enforcement officer." *Willingham v. City of Orlando*, 929 So.2d 43, 49–50 (Fla. Dist. Ct. App. 2006) (quoting *Johnson v. Weiner*, 19 So.2d 699, 700 (Fla. 1944)). We therefore treat Gould's state law claims as one.

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 9 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 6 of 14

6                          Opinion of the Court                    24-12818

On appeal, Gould contends that Officer Guerriero acted with excessive force by pointing her firearm at him without legitimate cause. "In deciding whether a police officer used excessive force, we pay 'careful attention to the facts and circumstances' of the case, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "In excessive force cases, we are mindful that officers make split-second decisions in tough and tense situations." *Id.*

Assuming, without deciding, that Officer Guerriero's decision to draw her firearm on Gould constituted excessive force, we agree with the district court that Officer Guerriero is still entitled to qualified immunity. *See Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (courts "may exercise our discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009))).

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "To be clearly established, a right must be well-established enough that every reasonable official would have understood that what he is doing violates that right," *Gates v.*

24-12818               Opinion of the Court                    7

*Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)), "in light of the specific context of the case, not as a broad general proposition," *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate' and thus given the official fair warning that his conduct violated the law." *Gates*, 884 F.3d at 1296 (quoting *Reichle*, 566 U.S. at 664). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotations omitted).

On the facts here, our precedent does not "place[]…beyond debate," *id.* (quoting *Riechle*, 566 U.S. at 664), that Officer Guerriero violated a clearly established right by drawing her firearm on Gould. While Gould is correct that we have clearly established that drawing a gun on a *compliant and non-threatening bystander* constitutes excessive force, *see, e.g.*, *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) ("An officer's decision to point a gun at an unarmed civilian who objectively poses no threat to the officer or the public can certainly sustain a claim of excessive force."); *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."), the indisputable video footage of

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 11 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 8 of 14

8                          Opinion of the Court                   24-12818

Gould's interaction with Officer Guerriero establishes that he was no compliant bystander.

Gould disregarded no less than three clear commands from Officer Guerriero before she drew her gun on him: He placed his hands in his pocket despite being instructed not to, and he twice ignored Officer Guerriero's directive to drop the phone he had retrieved from his pocket after disregarding her initial command. The context of the interaction is also noteworthy. Officer Guerriero arrived at a crime scene where a gun was reported present but not yet secured. And as the bodycam footage indicates, Officer Guerriero made clear to Gould that she did not know who he was and could not take his protestations of innocence at face value.

Commanding Gould not to put his hand in his pocket and to drop the phone he had retrieved after ignoring her were reasonable commands that Gould should have followed, particularly under these circumstances. *See Croom*, 645 F.3d at 1253 (noting that the Supreme Court has "stress[ed] that the risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" (quoting *Muehler v. Mena*, 544 U.S. 93, 99 (2005))). It is not clearly established law that drawing a gun on an unidentified individual thrice disobeying the reasonable commands of an officer attempting to secure a crime scene with a gun present constitutes excessive force. *See Courson v. McMillian*, 939 F.2d 1479, 1494–95 (11th Cir. 1991) ("Clearly, this circuit condoned officers' having drawn weapons when approaching and

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 12 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 9 of 14

24-12818                Opinion of the Court                9

holding individuals for an investigatory stop . . . when reasonably necessary for protecting an officer or maintaining order.").

None of the cases Gould relies on suggest otherwise. In *Smith v. Mattox*, we held that an officer was not entitled to qualified immunity when he broke the arm of an individual "offering no resistance at all." 127 F.3d 1416, 1419–20 (11th Cir. 1997). And even there, we caveated that the officer's conduct "barely" crossed the border between excessive and acceptable force given that the now "docile" arrestee had been previously resistant. *Id.* at 1419. In *Hadley v. Gutierrez*, we held that qualified immunity did not shield an officer's use of excessive force where the officer punched a non-resistant, handcuffed individual in the stomach. 526 F.3d 1324, 1330 (11th Cir. 2008). And in *Croom v. Balkwill*, we noted that "an officer's decision to point a gun at an unarmed civilian who objectively poses no threat to the officer or the public can certainly sustain a claim of excessive force." 645 F.3d at 1252 n.17.[4]

---

[4] Gould cites several other cases he contends establish that Officer Guerriero's actions constituted a violation of his constitutional rights. Like the three primary cases he relies on, they are all distinguishable. *See Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (obvious excessive force where officer tasered a compliant bystander "as many as eleven or twelve times," including "while he was writhing in pain on the hot pavement" and "had gone limp and immobilized"); *Glasscox v. Argo, City of*, 903 F.3d 1207, 1213–16 (11th Cir. 2018), *abrogated on other grounds by Gilmore v. Georgia Dep't of Corr.*, 111 F.4th 1118 (11th Cir. 2024) (obvious excessive force where officer repeatedly and in rapid succession tasered a non-resistant arrestee); *Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011) (obvious excessive force where individual was tasered "even though…he did not resist arrest; he did not threaten anyone; and he did not disobey any instructions (for none were given)"); *Stephens v. DeGiovanni*,

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 13 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 10 of 14

10                        Opinion of the Court                    24-12818

In sum, while we agree with Gould that pointing a gun at a non-threatening, fully compliant individual likely constitutes a form of excessive force not shielded by qualified immunity, that is not this case. Here, Gould, who was not identified as the victim of the reported crime, disobeyed three reasonable commands from an officer attempting to secure and investigate a crime scene where a gun had been reported as present. We sympathize with the unfortunate position Gould ended up in, but under these circumstances it was not clearly established that Officer Guerriero committed excessive force by drawing her gun to ensure Gould's compliance and maintain order at the crime scene.

### B. False Arrest

An officer violates an individual's Fourth Amendment right against unreasonable seizures "if the officer[] arrest[s] that person without probable cause to make the arrest." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "The correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude…that there was a substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)). We have emphasized that this inquiry "is not a high bar." *Id.* at 899 (quoting *Wesby*, 583 U.S. at 57). Reflecting this lenient standard, "innocent behavior frequently

---

852 F.3d 1298, 1322–23 (11th Cir. 2017) (obvious excessive force where officer repeatedly and forcefully struck a compliant arrestee in the chest).

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 14 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 11 of 14

24-12818                Opinion of the Court                        11

will provide the basis for a showing of probable cause." *Gates*, 884 F.3d at 1298 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

Further, because Officer Guerriero invokes qualified immunity, she need only establish "arguable probable cause" to have arrested Gould. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* (quoting *Wesby*, 583 U.S. at 68). On the other hand, an officer lacks arguable probable cause only if "the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Id.* (quoting *Washington*, 25 F.4th at 903) (alteration adopted). So "the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted." *Id.* (quoting *Gates*, 884 F.3d at 1303).

We agree with the district court that Officer Guerriero had probable cause (and by extension arguable probable cause) to arrest Gould for obstructing her investigation. "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime." *Skop*, 485 F.3d at 1137. Under Florida law, "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty,

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 15 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 12 of 14

12                Opinion of the Court                24-12818

without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 843.02. The Florida Supreme Court has explained that § 843.02 contains two elements: "(1) 'the officer was engaged in the lawful execution of a legal duty'; and (2) 'the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.'" *Baxter v. Roberts*, 54 F.4th 1241, 1266 (11th Cir. 2022) (quoting *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009)).

Officer Guerriero easily satisfies the first element because "[r]esponding to a 911 call" and "investigat[ing] a crime" are "clearly…legal dut[ies] of an officer." *Johnston v. State*, 357 So. 3d 156, 163 (Fla. Dist. Ct. App. 2023); *see A.R. v. State*, 127 So. 3d 650, 654 (Fla. Dist. Ct. App. 2013) ("[A]n officer's investigation of a 911 call constitutes the lawful execution of a legal duty."). Officer Guerriero arrived at the crime scene, encountered an unidentified individual (Gould), and proceeded to direct him to comply with her commands in furtherance of her criminal investigation. *See Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 909 (11th Cir. 2006) ("[The officer] was investigating the situation—that is, he was performing his legal duty as a police officer.").

And a reasonable officer could interpret Gould's actions as obstructing Officer Guerriero's criminal investigation and efforts to secure the crime scene. Dispatched to investigate a crime committed by a male armed with a concealed weapon, Officer Guerriero was confronted by an unidentified male who disobeyed her

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 16 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 13 of 14

24-12818               Opinion of the Court                13

reasonable commands and expressed continued defiance as the encounter prolonged. While Gould's verbal protestations alone may not constitute obstruction, his verbal defiance coupled with his defiant conduct impeded Officer Guerriero's investigation and provided probable cause for his arrest under Fla. Stat. § 843.02. *See, e.g.*, *Francis v. State*, 736 So. 2d 97, 99 (Fla. Dist. Ct. App. 1999) (finding probable cause for obstruction where a woman blocked an officer's path and told him, "[I]t's okay; we don't need you," when the officer was investigating a 911 call (alteration in original)); *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (finding probable cause for obstruction where individual "disobeyed a command by members of law enforcement to sit while they executed their lawful duties"); *Alston v. Swarbrick*, 954 F.3d 1312, 1319 (11th Cir. 2020) (contrasting "mere words" (not obstruction) with "prevent[ing] [an officer] from conducting his investigation" (obstruction)).

### C. Florida Law False Arrest

Officer Guerriero invokes Florida's sovereign immunity statute on Gould's state-law false arrest claim. Florida's sovereign immunity statute provides:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious

Case 9:24-cv-80022-DMM   Document 71   Entered on FLSD Docket 06/04/2025   Page 17 of 19
USCA11 Case: 24-12818   Document: 30-1   Date Filed: 05/05/2025   Page: 14 of 14

14               Opinion of the Court                24-12818

> purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

The existence of probable cause negates any inference of malicious intent or bad faith and "constitutes an absolute bar to both state and § 1983 claims alleging false arrest." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *see Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment[.]"). Because we find that Officer Guerriero had probable cause to arrest Gould, we affirm the district court's dismissal of his state false arrest claim as well.

### III.   CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment on Gould's claims.

**AFFIRMED.**

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 05, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-12818-DD
Case Style: Ryan Gould v. Bethany Guerriero
District Court Docket No: 9:24-cv-80022-DMM

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion